1   HENNIGAN, BENNETT & DORMAN LLP
    RODERICK G. DORMAN (SBN 96908)
2   dormanr@hbdlawyers.com
    LAWRENCE M. HADLEY (SBN 157728)
3   hadleyl@hbdlawyers.com
    MIEKE K. MALMBERG (SBN 209992)
4   malmbergm@hbdlawyers.com
    865 South Figueroa Street, Suite 2900
5   Los Angeles, California 90017
    Telephone: (213) 694-1200
6   Fax: (213) 694-1234

7   Attorneys for Plaintiff
    JOLTID LIMITED

8

9                    UNITED STATES DISTRICT COURT

10               NORTHERN DISTRICT OF CALIFORNIA

11

12   JOLTID LIMITED,                    Case 09        4299

13                 Plaintiff,       )
                                     )
14        vs.                       )   COMPLAINT FOR COPYRIGHT
                                     )   INFRINGEMENT
15   SKYPE TECHNOLOGIES S.A.; SKYPE  )
     INC.; eBAY INC.; SILVER LAKE    )   DEMAND FOR JURY TRIAL
16   PARTNERS; INDEX VENTURES        )
     MANAGEMENT, S.A.; MICHAELANGELO )
17   ("MIKE") VOLPI; ANDREESSEN      )
     HOROWITZ LLC; CANADA PENSION    )
18   PLAN INVESTMENT BOARD; DOES 1-10,)
                                     )
19                 Defendants.      )
                                     )
20                                   )
                                     )
21                                   )
                                     )
22                                   )
                                     )
23                                   )

24

25

26

27

28

Case No.                              Complaint for Copyright Infringement
757764.3



1    This case involves the impermissible use by the Skype entities, eBay, Michaelangelo Volpi

2    and the defendant co-conspirators of Plaintiff's Global Index Software which powers the hugely

3    successful Internet telephony application known as Skype.  For its complaint against Defendants

4    Skype Technologies S.A.; Skype Inc.; eBay, Inc.; Silver Lake Partners; Index Ventures

5    Management, S.A.; Michaelangelo Volpi ("Volpi"); Andreessen Horowitz LLC; Canada Pension

6    Plan Investment Board; and DOES 1-10 (hereinafter collectively "Defendants"), Plaintiff Joltid

7    Limited ("Joltid" or "Plaintiff") alleges as follows:

## SUMMARY OF ACTION

9    1.      Joltid, Limited, is a company that develops and provides peer-to-peer based software

10   products.  As the world's leading developer of peer-to-peer technologies, in 2003 Joltid created a

11   new software technology known as Global Index ("GI Software").  The GI Software, Joltid's

12   flagship product, is the world's most technologically advanced, scalable and field-tested peer-to-

13   peer technology.  Peer-to-peer technology involves computer architechture that eschews a central

14   database server configuration in favor of a distributed system that harnesses the collective

15   computing power of client computers utilizing the Internet worldwide.  GI Software creates a self-

16   organizing and self-healing distributed storage, transportation and data object management system

17   that eliminates the costs of traditional datacenter solutions and enables a range of applications from

18   communications to broadcasting and beyond.  Joltid owns all intellectual property in the GI

19   Software, including copyrights and patents.

20   2.      Since the early days of the Internet, engineers recognized that Internet

21   communications protocols could be used for voice communications.  Engineers named this process

22   Voice over Internet Protocol ("VoIP").  IP telephony and Internet telephony are other terms

23   frequently encountered and synonymous with VoIP.  Internet telephony refers to communications

24   services — voice, facsimile, and/or voice-messaging applications — that are transported via the

25   Internet rather than through the public switched telephone network ("PSTN").  Most basically, an

26   Internet telephone call is achieved by converting an analog voice signal to digital format and then

27   compressing and translating that signal into Internet protocol (IP) packets for transmission over the

28   Internet.  The process is then reversed so the communication can be audibly heard at the receiving

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

Case No.                                                                    Complaint for Copyright Infringement
757764.3

1    end.

2        3.    Around 2002, the founders of Skype set out to create a peer-to-peer Internet

3    telephony system that would deliver telephone service at significantly reduced costs.  The founders

4    subsequently named the resulting Internet telephony application "Skyper" (later changed to

5    "Skype"), and a company was formed called "Skyper" (later changed to "Skype") to launch the new

6    peer-to-peer VoIP telephony service.

7        4.    Skype developers recognized that Joltid's GI Software would provide the most

8    effective, and perhaps the only, workable, peer-to-peer infrastructure application for the new

9    Internet telephony service.  In November, 2003, after evaluating and working with Joltid's GI

10    Software in Skype "Beta" releases, Skype licensed Joltid's GI Software for its new Internet

11    telephony service ("License Agreement").  Under the License Agreement, Joltid agreed to provide

12    Skype with the GI Software in "executable" form, together with appropriate interfaces, so that

13    Skype could build its Internet telephony application on top of the GI Software application base.

14    Accordingly, Joltid retained sole control over the GI Software source code, and requested

15    modifications to the GI Software source code could only be made by or at the direction of Joltid.

16        5.    Skype offered its application to the public for download in 2003, and it has been

17    wildly popular ever since.  Today, it is estimated that, worldwide, six people every second download

18    Skype.  In 2005, eBay purchased Skype for $2.6 billion plus an earn out component.  At the peak of

19    each day, more than 16 million users to connect with one another through Skype.

20        6.    In 2007, Joltid learned that Skype had acquired unauthorized versions of the GI

21    Software source code, and subsequently learned that Skype had created unauthorized modifications

22    of the GI Software source code for new Skype versions.  Joltid further learned that Skype had

23    disclosed the GI Software source code to third persons.  Joltid demanded that Skype immediately

24    return all versions of the GI Software source code, including any modified versions.  Skype refused.

25        7.    As a result, Joltid terminated the License Agreement with Skype and demanded that

26    Skype cease using, duplicating, and distributing the GI Software, including making the GI Software

27    available for download through its Skype application.  Despite Joltid's demands, Skype has

28    continued to make its application available for download, including the GI Software, and has

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-3-

1   continued to promote Skype downloading unabated.  Currently, Joltid believes that its copyrighted

2   GI Software, through the activities of the Skype application, is being infringed by those who

3   download and use Skype in the United States at least 100,000 times each day.

4        8.      On or about September 1, 2009, Joltid learned that an investor group had signed an

5   agreement to purchase Skype from eBay.  By the terms of the Purchase Agreement, the new owners

6   required that Skype continue to make its application, including the GI Software, available for

7   download until closing of the deal, expected by year end.  The terms of the Purchase Agreement

8   thereby contractually required the Skype entities and eBay to continue to infringe Joltid's

9   copyrights.  Additionally, the Purchase Agreement reportedly provided that certain members of the

10  investor group will provide operational control over the Skype Companies until closing, thereby

11  making members of the investor group culpable for the ongoing copyright infringement.

12       9.      Joltid brings this action for copyright infringement against Skype, its current eBay

13  owner, and the new owner/operator investor group to protect its intellectual property rights in the GI

14  Software.  Joltid seeks actual and statutory damages for infringement (which Joltid reasonably

15  believes are amassing at a rate of more than $75 million daily) and an injunction to stop the

16  infringement.

17                          **JURISDICTION AND VENUE**

18       10.     This is a civil action seeking damages and declaratory and injunctive relief for

19  copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et. seq.*

20       11.     This Court has original subject matter jurisdiction over all claims pursuant to 28

21  U.S.C. §§ 1331 and 1338(a).

22       12.     Venue is proper under 28 U.S.C. §§ 1391(b), (c) and (d) and 1400(a).

23       13.     This Court has personal jurisdiction over Defendants:

24            a.      Skype Technologies S.A. conducts continuous and systematic business in

25                    California and in this District through its website located at

26                    http://www.skype.com.  Furthermore, Skype Technologies S.A. negotiated,

27                    executed  and/or caused to be executed agreements relating to the Skype 2009

28                    sale (collectively, "Skype 2009 Purchase Agreement") in California and in

-4-

Case No.                                              Complaint for Copyright Infringement

this District.

b.    Skype, Inc. is a wholly owned subsidiary of Skype Technologies S.A., located in San Jose, California.  Skype, Inc. is a party to the Skype 2009 Purchase Agreement, and negotiated, executed and/or caused the Skype 2009 Purchase Agreement to be executed in California and in this District.

c.    eBay, Inc. ("eBay")  conducts continuous and systematic business in California and in this District, in part through its website located at http://www.ebay.com.  eBay maintains an office and employs personnel in California and in this District, and is licensed by the California Secretary of State to do business in this State.  Furthermore, eBay is a party to the Skype 2009 Purchase Agreement and negotiated, executed and/or caused the Purchase Agreement to be executed in California and in this District.

d.    Silver Lake Partners conducts business in California and in this District and also maintains offices and employs personnel in California and in this District.  Silverlake Partners is a party to the Skype 2009 Purchase Agreement and negotiated, executed and/or caused the Skype 2009 Purchase Agreement to be executed in California and in this District.

e.    Index Ventures Management S.A. ("Index Ventures") is a party to the Skype 2009 Purchase Agreement and negotiated, executed and/or caused the Skype 2009 Purchase Agreement to be executed in California and in this District.

f.    Michaelangelo Volpi ("Volpi") is a partner with Index Ventures, a party to the Skype 2009 Purchase Agreement.  Volpi, on behalf of himself and Index Ventures, negotiated, executed and/or caused the Skype 2009 Purchase Agreement to be executed in California and in this District.  Volpi personally also owns real property in California and in this District.

g.    Andreessen Horowitz LLC ("Andreessen Horowitz") conducts business in California and in this District and also maintains offices and employs personnel in California and in this District.  Andreessen Horowitz is a party to

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

Case No.                                                                 Complaint for Copyright Infringement

1    the Skype 2009 Purchase Agreement and negotiated, executed and/or caused

2    the Skype 2009 Purchase Agreement to be executed in California and in this

3    District.

4    h.    Canada Pension Plan Investment Board is a party to the Skype 2009 Purchase

5    Agreement and negotiated, executed and/or caused the Skype 2009 Purchase

6    Agreement to be executed in California and in this District.

### THE PARTIES

7    

8    14.    Plaintiff Joltid Limited ("Joltid" or "Plaintiff") is a company duly organized in the

9    British Virgin Islands.

10   15.    Defendant Skype Technologies S.A. is a company duly organized in Luxembourg

11   ("Skype S.A."). Skype S.A. maintains an office located at 22/24 Boulevard Royal, 6e etage,

12   L-2449, Luxembourg. Upon information and belief, Skype S.A. also maintains offices in California.

13   16.    Defendant Skype Inc. is a company duly organized under the laws of the State of

14   Delaware ("Skype Inc."). Skype Inc. maintains its place of business at 2145 Hamilton Ave., San

15   Jose, CA 95125. Collectively, Skype SA and Skype Inc. are referred to as the "Skype Companies."

16   17.    Defendant eBay, Inc. ("eBay") is a corporation duly organized under the laws of the

17   State of Delaware. eBay maintains its principal place of business at 2145 Hamilton Ave., San Jose,

18   CA 95125.

19   18.    Defendant Silverlake Partners is an investment fund with offices located in

20   Cupertino, San Francisco, Menlo Park, and New York, among other locations. Silverlake Partners'

21   Menlo Park office is located at 2775 Sand Hill Road, Suite 100, Menlo Park, CA 94025.

22   19.    Defendant Index Ventures Management S.A. is a venture capital investment firm

23   incorporated in Geneva, Switzerland. Index Ventures maintains offices in Geneva, Switzerland,

24   London, England, and the Bailiwick of Jersey, a British Crown Dependency located in the Channel

25   Islands. Index Ventures manages and operates a compilation of venture capital funds, including

26   three limited partnerships organized under the laws of the State of Delaware: Index Ventures I

27   (Delaware), L.P., Index Ventures II (Delaware), L.P., and Index Ventures III (Delaware), L.P.

28   Index Ventures also manages and operates Index Ventures Growth I, L.P., a member of the investor

-6-

Case No.                                                    Complaint for Copyright Infringement

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1 | consortium purchaser of the Skype Companies. Index Ventures' London office is located at 52 53

2 | Conduit Street, London, United Kingdom W1S 2YX.

3 |     20.    Defendant Volpi is a natural person and partner with Index Ventures. Volpi's office

4 | is located at Index Ventures' London office, listed above. Volpi also owns and/or resides at 210

5 | Alta Vista Ave. #8, Los Altos, CA 94022. Volpi also maintains several other addresses in Santa

6 | Clara County.

7 |     21.    Defendant Andreessen Horowitz is a limited liability company duly organized under

8 | the laws of the State of Delaware. Andreessen Horowitz maintains its place of business at 1801

9 | Page Mill Road, Palo Alto, CA 94304.

10 |     22.    Defendant Canada Pension Plan Investment Board ("CPP Investment Board") is

11 | headquartered in Toronto, with offices in London and Hong Kong. The CPP Investment Board

12 | maintains an office at One Queen St. East, Suite 2600, P.O. Box 101, Toronto, Ontario M5C 2W5,

13 | Canada.

14 |     23.    Joltid is ignorant of the true names or capacities of all of the defendants sued herein

15 | under the fictitious names of DOES 1-10. DOES 1-10 are reserved for as yet unnamed and

16 | unknown members of the investor group discussed, in part, in paragraph 8 of this Complaint. The

17 | DOE Members of the investor group, like the named members, are liable for contributory, vicarious

18 | and/or inducing the direct infringement of Joltid's Copyrighted Works by the Skype Companies

19 | and/or unknown users of Skype's software who reproduce Joltid's Copyrighted Works without

20 | authorization by downloading and using the Skype application.

21 | **PLAINTIFF JOLTID'S COPYRIGHTED WORKS**

22 |     24.    Plaintiff Joltid is the developer and licensor of the intellectual property rights in and

23 | to computer software relating to peer-to-peer communication between computers. One suite of such

24 | computer programs owned by Joltid is known as the "Global Index Software" or "GI".

25 |     25.    Plaintiff Joltid owns all right, title and interest to the United States copyright created

26 | when Joltid's GI Software source code was first created and fixed in tangible form. Joltid's GI

27 | Software source code was first created and fixed in tangible form at least as early as 2003.

28 |     26.    On September 1, 2009, Joltid registered its copyright to Joltid's Global Index

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-7-

1  Software source code with the United States Copyright Office when it delivered to the United States

2  Copyright Office its application, fee and deposit.  Attached hereto as Exhibit 1 is a true and correct

3  copy of the email from the United States Copyright Office confirming receipt of the application

4  filing fee and deposit of Joltid's Global Index Software source code.

5       27.     Between 2003 and approximately August 31, 2007, Joltid's Global Index Software

6  source code underwent certain modifications ("Modified Global Index Software").  A number of the

7  modifications were made under Joltid's authorization and direction at Skype's request.  Joltid owns

8  all right, title and interest in the United States copyright created when Joltid's Modified Global

9  Index Software source code was first created and fixed in tangible form.  Joltid's Modified Global

10  Index Software source code was first created and fixed in tangible form at least as early as August

11  31, 2007.

12       28.     On September 15, 2009, Joltid registered its copyright in Joltid's Modified Global

13  Index Software source code with the United States Copyright Office when it delivered to the United

14  States Copyright Office its application, fee and deposit.  Attached hereto as Exhibit 2 is a true and

15  correct copy of the email from the United States Copyright Office confirming receipt of the

16  application filing fee and deposit of Joltid's Modified Global Index Software source code.

17       29.     Under Section 106 of the Copyright Act of 1976, 17 U.S.C. § 101 et. seq. (the

18  "Copyright Act"), Plaintiff Joltid has distinct, severable and exclusive rights to, among other things,

19  reproduce, prepare derivative works, and distribute their copyrighted works, including Joltid's

20  Global Index Software, Joltid's Modified Global Index software source codes, and all object code

21  and related data thereof in compiled, assembled, or executable file formats (collectively, the

22  "Copyrighted Works"). 17 U.S.C. §§ 106(1)-(3).

23        **THE SKYPE COMPANIES' BUSINESS**

24       30.     The Defendant Skype Companies provide an Internet telephony software application

25  that allows users to, among other things, make voice calls and video calls over the Internet.  The

26  Skype Companies make its telephony software application available to Internet users (including

27  individuals and businesses) for download from websites, one of which Skype operates at

28  http://www.skype.com.

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-8-

                     Complaint for Copyright Infringement

1    31.    Joltid's Copyrighted Works are incorporated into the Skype Companies' telephony

2    software application and each time a Skype user downloads and/or uses Skype's telephony software

3    application, the user also downloads and/or uses Joltid's Copyrighted Works.

4    32.    The Skype application generates revenue in several ways.  Paid monthly

5    subscriptions enable a Skype user to make calls using the Skype application.  Subscriptions range

6    from $2.95 per month for unlimited calls within the United States and Canada, up to $12.95 a month

7    for unlimited world calls.  A Skype user can also purchase "Skype Credits" which can be used on an

8    as-needed basis.  Skype also generates revenue from the sale of products on its websites, including

9    www.skype.com.  Products sold through Skype include accessories such as phones, web cams and

10   headsets, as well as the sale of so-called "extras", such as facsimile add-ons, call recorders, games,

11   applications, images, ring tones, etc.  Skype also generates revenue through sponsored advertising

12   and partnerships.

13   33.    Skype's telephony software application is ultimately responsible for all of the

14   revenue received by the Skype Companies.  In short, without Skype's telephony software

15   application drawing users and potential users to Skype's websites, the Skype Companies would

16   receive little or no revenue.

17   **THE SKYPE COMPANIES' UNAUTHORIZED AND INFRINGING**

18   **USES OF JOLTID'S COPYRIGHTED WORKS**

19   34.    Because Joltid's Copyrighted Works are proprietary and subject to intellectual

20   property rights owned by Joltid, in November of 2003, the Skype Companies executed an agreement

21   to license Joltid's Copyrighted Works, as well as other intellectual property rights owned or

22   controlled by Joltid.  The November 20, 2003 Joltid Global Index Software License Agreement

23   ("License Agreement") between Skype and Joltid provided the terms under which Skype could

24   permissibly use Joltid's intellectual property rights, including Joltid's Copyrighted Works, for use in

25   Skype's business.

26   35.    The License Agreement between Joltid and Skype licensed Skype to use the object

27   code of the Copyrighted Works in executable form only.  This means that the Skype Companies

28   could only create software that uses the Joltid's Copyrighted Works, in its existing form, much like

-9-

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1    a software developer can obtain permission to write program that run on the Microsoft Windows

2    platform without receiving the right to change the Windows application. The License Agreement

3    did not allow Skype itself to copy, distribute, modify or use the source code relating to any version

4    of Joltid's Copyrighted Works. To the extent Skype required modifications of the GI code, all such

5    requests for modifications were to be made to and authorized by Joltid and its software contractors.

6        36.    Despite the requirements of the License Agreement, Skype used the source code

7    relating to Joltid's Copyrighted Works in manners unauthorized by Joltid. Skype's unauthorized

8    uses of Joltid's Copyrighted Works included the unauthorized distribution of Joltid's Copyrighted

9    Works by making Skype's telephony software application (including Joltid's Copyrighted Works)

10   available to third parties. Additionally, Skype prepared derivative works based upon Joltid's

11   Copyrighted Works by modifying Joltid's Copyrighted Works without permission and distributing

12   and reproducing the derivative works. Skype further obtained and made copies of the source code

13   for Joltid's Copyrighted Works. Skype was notified multiple times by Joltid that its unauthorized

14   uses of Joltid's Copyrighted Works were in contravention to the License Agreement and that such

15   uses should be terminated. Throughout the latter part of 2007, Joltid wrote to Skype, informing

16   Skype that Joltid had not authorized possession of Joltid's Copyrighted Works and furthermore

17   specifically instructed Skype that it could not disclose Joltid's Copyrighted Works to third parties.

18   Despite Joltid's express instructions, Skype continued its unauthorized acts, including the disclosure

19   of Joltid's Copyrighted Works to third parties and the modification of the Copyrighted Works

20   without Joltid's permission.

21       37.    As a result of Skype's unauthorized uses of Joltid's Copyrighted Works, Joltid

22   terminated the License Agreement in accordance with its terms.

23       38.    The termination of the License Agreement was effective as of March 12, 2009. Since

24   that date the Skype Companies use, reproduction, distribution and preparation and modification of

25   Joltid's Copyrighted Works has continued without permission or license.

26       39.    Skype's breach of the License Agreement and the legal effect of Joltid's termination

27   of the License Agreement is currently the subject of litigation in the United Kingdom High Court of

28   Justice, Chancery Division Intellectual Property, in a matter styled as *Skype Technologies SA and*

-10-

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1  *Joltid Limited*, Claim No. HC09C00756 (the "U.K. Litigation").

2      40.     Prior to and since March 12, 2009, Skype has continued to make its telephony

3  software application, which includes Joltid's Copyrighted Works, available to the public. As a

4  result, Skype has reproduced Joltid's Copyrighted Works without authority to do so by, among other

5  things, incorporating the Copyrighted Works into Skype's Internet telephony software application

6  and making the Skype Internet telephony software available to third parties for download and use.

7  Additionally, Skype continues to prepare derivative works based upon Joltid's Copyrighted Works

8  by modifying Joltid's Copyrighted Works without permission and both distributing and reproducing

9  those derivative works.

10      41.     When the Skype Companies offer the Skype application to a consumer, that user

11  consents to Skype's End User License Agreement.

12      42.     Skype's End User License Agreement purports to, without authority, grant licenses to

13  certain of Plaintiff's Copyrighted Works – namely, the GI object code. The End User License

14  Agreement grants Skype's users limited, personal, non-commercial, non-exclusive, non-

15  sublicensable, non-assignable, free of charge license to download, install and use the Skype

16  telephony application (and any software distributed by Skype) on the user's computer, phone or

17  PDA. The End User License Agreement contains no exception to the object code format of

18  Plaintiff's Copyrighted Works and in fact states that third party software or technology that is

19  incorporated into the Skype telephony application falls under the scope of the End User License

20  Agreement.

21      43.     The Skype Companies continue to promote the use and downloading of Skype's

22  telephony software to registered and potential users. Skype maintains and promotes an "Affiliate

23  Program" wherein individuals and/or businesses can make money by directing traffic to Skype. As

24  an addendum to its End User License Agreement, in a document entitled "Promotional Terms," the

25  Skype Companies granted an automatic non-transferable license so that users or others may promote

26  Skype, Skype's telephony software, Skype's website, or other Skype products on their own

27  websites.

28  **DEFENDANT EBAY AND ITS PURCHASE OF THE SKYPE COMPANIES**

-11-

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

44. Based in part on the Skype application's early popularity, Defendant eBay, the well-known online auctioneer and owner of Pay-Pal, saw great value in Skype. Hoping to enhance the auction experience of its eBay application by facilitating low-cost or cost-free communication between sellers and potential buyers of auction items on eBay, eBay purchased the Skype Companies, together with the Skype Internet telephony software, in October 2005, for $2.6 billion plus an earn-out. As a result of the purchase, the Skype Companies became wholly owned subsidiaries of Defendant eBay and remained under the complete control and direction of Defendant eBay.

45. As part of the negotiations for the purchase of the Skype Companies, eBay sought to purchase Joltid. Alternatively, eBay sought to purchase or license Joltid's GI source code. Joltid declined to either sell its intellectual property rights in GI or to sell or license the GI source code. Accordingly, eBay purchased the Skype Companies subject to the terms of the License Agreement that then existed between the Skype Companies and Joltid, which remained a license limited to executable GI object code. The later breach of the License Agreement by the Skype Companies directed by eBay amounted to a unilateral confiscation of the same code that Joltid had earlier refused to sell to eBay.

46. Defendant eBay reports on the Skype Companies' operations in its public filings with the Securities and Exchange Commission ("SEC"). eBay describes the Skype Companies as the "Communications" branch of eBay's business. Furthermore, eBay publicly states in its SEC filings that eBay launched several promotions with Skype, "which drove significant user growth in registered users."

47. Skype's telephony software application has become hugely popular. From 2003 to 2008, registered Skype users have reached over 405 million in number, with some sources (including Wikipedia) estimating the number of users currently as high as 481 million. As a result of eBay's strong oversight and control over its investment, registered Skype users increased 47 percent between 2007 and 2008 alone. eBay press releases boast that "Skype is attracting hundreds of thousands of new users each week." Skype itself claims that approximately 6 new users register and download Skype's telephony software application (and, consequently, Joltid's Copyrighted

-12-

1   Works) every second of every day.

2       48.    As a result of the success of the Skype telephony software application (including

3   Joltid's Copyrighted Works), Skype is hugely profitable, generating a significant portion of eBay's

4   total revenue. eBay press releases state that "Skype generated revenues of $551 million, a 44

5   percent increase compared to 2007. Total eBay Inc. revenues for 2008 were $8.5 billion." eBay

6   publicly anticipates Skype to generate one billion dollars in revenue in the year 2011.

7       49.    At all times since October, 2005 up to, and including September 1, 2009, Defendant

8   eBay, as Skype's sole shareholder, exercised full operational control over Skype's unauthorized

9   reproduction, distribution, preparation of derivative works and/or modifications of Joltid's

10  Copyrighted Works. As sole shareholder of Skype, and having conducted extensive due diligence

11  into Skype's business activities and licensing agreements in preparation for its more than three

12  billion dollar acquisition of Skype, Defendant eBay was at all times aware of Skype's unauthorized

13  and infringing uses of Joltid's Copyrighted Works.

14      50.    In fact, early on eBay recognized the importance of Joltid's Copyrighted Works in

15  Skype's telephony software application, stating in an SEC filing that "Skype licenses technology

16  underlying certain key components of its software from third parties it does not control, including

17  the technology underlying its peer-to-peer architecture and firewall traversal technology, and the

18  audio and video compression/decompression used to provide high sound and video quality.

19  Although Skype has contracts in place with its third party technology providers, there can be no

20  assurance that the licensed technology or other technology that we may seek to license in the future

21  will continue to be available on commercially reasonable terms, or at all. The loss of, or inability to

22  maintain, existing licenses could result in a decrease in service quality until equivalent technology or

23  suitable alternatives can be developed, identified, licensed and integrated. Any failure to maintain

24  these licenses on commercially reasonable terms or to license or develop alternative technologies

25  would harm Skype's business."

26      51.    Later, recognizing the importance of Joltid's Copyrighted Works in Skype's

27  telephony software application and eBay's liability exposure for unauthorized uses of Joltid's

28  Copyrighted Works, eBay disclosed in an SEC filing a summary of the details surrounding the U.K.

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-13-

1    Litigation and stated that "if Skype was to lose the right to use the Joltid software as the result of the

2    litigation, and if alternative software was not available, Skype would be severely and adversely

3    affected and the continued operation of Skype's business as currently conducted would likely not be

4    possible." eBay has further publicly described the potential loss of use of Joltid's Copyrighted

5    Works as "devastating."

6           52.     Although eBay was actually and constructively aware that the Skype Companies and

7    the users of the Skype application continued to infringe Joltid's Copyrighted Works, eBay failed to

8    cease all infringing activities and use, reproduction, and promotion of Joltid's Copyrighted Works,

9    as part of Skype' telephony software application, following Joltid's termination of the License

10   Agreement. In fact, eBay continued to promote and to allow the infringements of Joltid's

11   Copyrighted Works in order to realize eBay's goals of generating extraordinary revenue from the

12   Skype telephony software application.

## THE 2009 SALE OF A 65% CONTROLLING INTEREST IN SKYPE
## TO AN INVESTOR GROUP

15          53.     On September 1, 2009, in press releases from Menlo Park, California, the Skype

16   Companies and an investor group led by Silver Lake Partners announced that they had negotiated

17   and executed and/or caused to be executed a definitive agreement ("Purchase Agreement") in which

18   the investor group purchased a 65 percent controlling interest in the Skype Companies from

19   Defendant eBay, Inc.

20          54.     According to public information, the conditions of the Skype 2009 Purchase

21   Agreement includes covenants and conditions that the purchasers must continue operating Skype in

22   the normal course of business, consistent with Skype's past practices.

23          55.     Skype's normal business operations and past practices include reproducing, without

24   permission, Joltid's Copyrighted Works and unauthorized derivative works based upon Joltid's

25   Copyrighted Works. Those normal business operations and past practices also include distributing,

26   without permission, Joltid's Copyrighted Works and unauthorized derivative works based upon

27   Joltid's Copyrighted Works through the Skype telephony software application to new and registered

28   Skype users. Additionally, upon information and belief, Skype, in the normal course of its business,

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-14-

1   will also impermissibly continue to modify and prepare unauthorized derivative works of Joltid's

2   Copyrighted Works.

3       56.     Members of the investor group purchasing a 65% controlling interest in Skype from

4   Defendant eBay pursuant to the Skype 2009 Purchase Agreement includes the following named

5   investors:  Silver Lake Partners, Index Ventures, Andreessen Horowitz, and the Canada Pension

6   Plan Investment Board.

7       57.     Upon information and belief each of Silver Lake Partners, Index Ventures,

8   Andreessen Horowitz and the Canada Pension Plan Investment Board contributed the funds and

9   coordinated and participated in the negotiations, as well as negotiated, executed and/or caused to be

10  executed the Skype 2009 Purchase Agreement, collectively assuming a 65% controlling interest in

11  Skype.

12      58.     Upon information and belief, Defendant Volpi is also an investor and is the person

13  who conceived and organized the transaction resulting in the Skype 2009 Purchase Agreement.

14  Volpi took these acts, notwithstanding the fact that he personally knew since on or about March 12,

15  2009 that Joltid had terminated the License Agreement and that, as a consequence, from and after

16  March 12, 2009, the Skype Companies and each of its existing and new users of the Skype

17  application infringed Joltid's Copyrighted Works.

18      59.     The Skype 2009 Purchase Agreement reportedly valued Skype at a total of

19  $2.75 billion dollars.  eBay sold the 65% controlling interest in the Skype Companies to the investor

20  group for approximately $1.9 billion dollars in cash, with a note from the buyers in the principal

21  amount of $125 million dollars.

22      60.     Following the closing of the Skype 2009 Purchase Agreement, Defendant eBay, Inc.

23  will retain a 35% equity interest in the Skype Companies.

24      61.     Upon information and belief, although Defendant eBay will retain a minority equity

25  interest of 35% in the Skype Companies, eBay will continue to jointly exercise management

26  authority, control and direction over Skype in coordination with the investors group and reap great

27  financial benefits from Skype's unauthorized and infringing uses of Plaintiff's Copyrighted Works.

28  An eBay press release quoted John Donahoe, eBay's President and Chief Executive Officer, as

-15-

Complaint for Copyright Infringement

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1  stating that the sale of the Skype Companies "achieves our [eBay's] goal of delivering short- and

2  long-term value to eBay and its stockholders, without the possible delays and market risk of an IPO .

3  . . Selling Skype now at this great valuation, while retaining an equity stake, makes sense for the

4  company." The same press release quotes Mr. Donahoe as stating, on eBay's behalf, that the Skype

5  2009 Purchase Agreement "is a great deal, unlocking both immediate and long-term value for eBay

6  and tremendous potential for Skype . . .We've acted decisively on a deal that delivers a high

7  valuation, gives us significant cash up-front and lets us retain a meaningful minority stake with

8  talented partners."

9       62.    The Defendant investors and eBay have a collective interest in Skype's continued and

10  additional infringing and unauthorized use of Joltid's Copyrighted Works. Revenue generated for

11  the benefit of eBay and the investor group is directly tied to increasing the number of Skype users

12  and potential users who are drawn to Skype's website to download and use Skype's telephony

13  software application (including Joltid's Copyrighted Works). Egon Durban, managing director at

14  Silver Lake, is quoted in a press release as stating that "Skype is an innovative, next-generation

15  company that has changed how people and businesses communicate with each other. This Skype

16  2009 sale transaction benefits all parties involved and will allow Skype the opportunity to accelerate

17  the growth of its business by harnessing the deep technological and company development expertise

18  that resides within the investor group. Josh Silverman has done a strong job leading the company

19  and we look forward to working with Josh and his team to grow the Skype franchise."

## THE DEFENDANT INVESTORS' ACTIVELY CONTROL
## THE SKYPE COMPANIES

22       63.    The Defendant investors have, as a result of the Skype 2009 Purchase Agreement,

23  assumed a 65% controlling interest in Skype and, pending closing of the transaction, have required

24  that the Skype Companies continue the unauthorized uses of Joltid's Copyrighted Works. The

25  Defendant investors funded the cash portion of the transaction and the Defendant investors are now

26  directing and controlling relevant operations of the Skype Companies, in accordance with the

27  provisions of the Purchase Agreement. The Defendant investors operate the Skype Companies in

28  concert with Defendant eBay, until formal closing, with the collective goal and interest of increasing

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-16-

1    Skype users and increasing the revenue derived from that use.

2        64.    Each of the Defendant investors has the experience, skill and human resources to

3    actively control the Skype Companies.

4            a.    Silver Lake, a Defendant investor and a named party to the Skype 2009

5                Purchase Agreement, is a leading investment firm focused on large scale

6                investments in technology, technology enabled, and related growth industries.

7                Press releases indicate that its mission is to function as a value-added partner

8                to the management teams of the world's leading technology franchises. Silver

9                Lake is an experienced investor with a portfolio which includes or has

10               included technology industry leaders such as Ameritrade, Avago, Business

11               Objects, Gartner, Instinet, Intelsat, NASDAQ, Sabre/Travelocity, Seagate

12               Technology, SunGard Data Systems and UGS.

13           b.    Index Ventures, another Defendant investor, and also a named party to the

14               Skype 2009 Purchase Agreement, is a leading venture capital firm active in

15               technology, biotech and clean technology venture investing since 1996.

16               Index Ventures is dedicated to helping top entrepreneurial teams in the

17               Information Technology and Life Science sectors build their companies into

18               market defining global leaders. The firm has offices in Geneva, London and

19               Jersey and focuses on investments from seed through growth stage

20               companies. Index Venture's portfolio includes Lehigh Technologies Inc.,

21               Playfish and Weatherbill and exits of note include MySQL (the world's most

22               popular open source database recently acquired by Sun), Last.fm (the world's

23               largest social music platform, recently acquired by CBS) and BioXell (BIOX,

24               floated on the SWX in 2007).

25           c.    Andreessen Horowitz is another Defendant investor and a named party to the

26               Skype 2009 Purchase Agreement. It is a 300 million dollar venture fund,

27               established in June 2009 by entrepreneurs, experienced investors and

28               engineers, Marc Andreessen and Ben Horowitz. Mr. Andreessen and Mr.

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-17-

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1      Horowitz are the general partners of Andreessen Horowitz and Mr.

2      Andreessen is also a member of Defendant eBay's board of directors.

3      Andreessen Horowitz reportedly contributed $50 million dollars to the

4      purchase of the Skype Companies.

5          d.      The Canada Pension Plan Investment Board ("CPP Investment Board") is

6      another Defendant investor and party to the Skype 2009 Purchase Agreement.

7      The CPP Investment Board describes itself as a professional investment

8      management organization that invests the funds not needed by the Canada

9      Pension Plan to pay current benefits on behalf of 17 million Canadian

10     contributors and beneficiaries.  To build a diversified portfolio of assets for

11     the Canada Pension Plan, the CPP Investment Board invests in public

12     equities, private equities, real estate, inflation-linked bonds, infrastructure and

13     fixed income instruments.  As of June 30, 2009, the Canada Pension Plan

14     fund totaled $116.6 billion dollars.

15         e.      Volpi is also a Defendant investor and is jointly and severally liable, along

16     with the other Defendant investors and eBay, for the direct infringement of

17     Joltid's Copyrighted Works by both the Skype Companies, as well as by

18     Skype's users.

19     65.    Since July, 2009, Volpi has acted as a partner of Index Ventures, a named party to the

20  Skype 2009 Purchase Agreement.  Prior to joining Index Ventures as a partner, Volpi served on the

21  board of directors of Skype and, as a result, gained familiarity with Skype's telephony software

22  application, as well as Skype's infringing and unauthorized uses of Joltid's Copyrighted Works,

23  including the fact that (since at least March 12, 2009) the Skype Companies and each of the existing

24  and new users of the Skype application have been infringing Joltid's Copyrighted Works.  Despite

25  knowing the Skype Companies' role in infringing and/or facilitating the infringement of Joltid's

26  Copyrighted Works on a massive worldwide scale, Volpi elected to take over control of the Skype

27  Companies.  Volpi openly discussed his personal goal of taking over Skype, telling a reporter from

28  the New York Times that he implemented a plan to achieve this goal shortly after joining Index

-18-

1   Ventures as a partner in July 2009.

2       66.     Exploiting his personal and professional relationships, Volpi was ultimately

3   successful in single-handedly orchestrating the multi-billion dollar transaction, realizing his personal

4   goal of taking over Skype. Volpi sold his Skype Companies acquisition plan to other influential

5   individuals, including Danny Rimer, another partner at Index Ventures. Once Volpi had secured

6   Mr. Rimer's support and, undoubtedly, the millions of dollars in Index Ventures funding that would

7   follow, Volpi then contacted and/or directed the contact of other Defendant investors, including

8   Silver Lake Partners and Andreessen Horowitz.

9       67.     Upon information and belief, Volpi had a controlling and integral role in the Skype

10   2009 sale transaction, directing, influencing and negotiating the Skype 2009 Purchase Agreement,

11   including the covenants and conditions in the agreements which require that the Defendant investor

12   group must continue operating Skype in the normal course of business, consistent with the Skype

13   Companies' past practices. The London Times describes Volpi as the "mastermind" behind the

14   transaction and stated in a headline that "Mike Volpi Leads Bidders For Skype Takeover".

15       68.     Upon information and belief, Volpi maintains an influential role over the remaining

16   members of the Defendant investor group and the related operational control, management and

17   direction of the Skype Companies, and arrangements exist by which he will personally benefit

18   pecuniarily from those continued, infringing operations.

19       69.     Plaintiff is informed and believes that each of the Defendant investors conducted

20   and/or caused to be conducted extensive due diligence into Skype's business activities, litigations

21   and licensing agreements in preparation for its almost three billion dollar acquisition of Skype. As a

22   result, each of the Defendant investors was at all times aware that the License Agreement between

23   Joltid and Skype had been terminated and was further aware of Skype's past and continuing

24   unauthorized and infringing uses of Joltid's Copyrighted Works.

25       70.     Although each of the Defendant investors was actually and constructively aware of

26   the continuing infringement of Joltid's Copyrighted Works, the Defendant investors failed to cause

27   the Skype Companies to cease infringing Joltid's Copyrighted Works and prevent the availability of

28   Joltid's Copyrighted Works for download as part of Skype's telephony software application. In fact,

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-19-

1   the Defendant investor group continued with the acquisition, investing over two billion dollars in

2   order to realize their goals of generating extraordinary revenue from Skype's telephony software

3   application, revenue that would not have been possible without the unauthorized infringement of

4   Joltid's Copyrighted Works.

5       71.     The investor group may include additional and as yet unknown and unnamed

6   members who directed, controlled and/or materially contributed to the unauthorized use and direct

7   infringement of Joltid's Copyrighted Works. These unnamed persons may also include investors

8   who acquired or retained a direct financial interest in the infringement of Joltid's Copyrighted

9   Works by the Skype Companies and by users of the Skype application. Plaintiff expects that,

10  following discovery, Plaintiff will be able to supplement this pleading with the additional

11  information. Accordingly, Plaintiff currently includes these additional defendants as DOES 1-10.

12      72.     At all times since September 1, 2009, the Defendant investor group and eBay have

13  exercised operational control over the Skype Companies' unauthorized reproduction, distribution,

14  preparation of derivative works and/or modifications of Joltid's Copyrighted Works. On September

15  2, 2009, Joltid sent cease and desist letters to each of the Skype Companies, eBay and every

16  Defendant investor advising them of their liability and exposure for the direct infringement of

17  Joltid's Copyrighted Works by both Skype and Skype's users.

18                          **FIRST CLAIM FOR RELIEF**

19      **Direct Copyright Infringement (Reproduction) Against The Skype Companies**

20      73.     Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-72

21  of this Complaint as though fully set forth herein.

22      74.     The Skype Companies, without authority, are making, causing to be made, and

23  purporting to authorize the making of unauthorized copies of Plaintiff's Copyrighted Works.

24  Additionally, the Skype Companies prepared derivative works based upon Joltid's Copyrighted

25  Works by modifying Joltid's Copyrighted Works without permission and reproduced and distributed

26  those unauthorized derivative works. Further, the Skype Companies continue to reproduce and

27  distribute the unauthorized derivative works. Defendants' conduct constitutes direct infringement of

28  Plaintiff's exclusive rights under the Copyright Act to reproduce their copyrighted works. 17 U.S.C.

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-20-

1  § 106(1).

2      75.   Defendants' acts of infringement have been willful, intentional, and purposeful, in

3  disregard of and indifferent to the rights of Plaintiff.

4      76.   The Skype Companies have continued to infringe Joltid's Copyrighted Works on a

5  massive scale.  Each day that the Skype Companies continue to make available the Skype Internet

6  telephony software for download, Skype users download Joltid's Copyrighted Works approximately

7  six times per second.  Based on conservative estimates, Joltid believes that its Copyrighted Works

8  are infringed in the United States at least 100,000 times a day through these unauthorized actions.

9      77.   As a direct and proximate result of Defendants' infringement of Plaintiff's

10  Copyrighted Works and exclusive rights under the Copyright Act, Plaintiff is entitled to the

11  maximum statutory damages pursuant to 17 U.S.C. § 504(c) up to $150,000 for each act of direct

12  infringement by the Skype Companies.

13      78.   Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b), Plaintiff shall be

14  entitled to its actual damages plus Defendants' profits from infringement, as will be proven at trial.

15      79.   Plaintiff is entitled to its costs, including reasonable attorneys' fees, pursuant to

16  17 U.S.C. § 505.

17      80.   Defendants' conduct is causing and, unless enjoined by this Court, will continue to

18  cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money.

19  Plaintiff has no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a

20  permanent injunction requiring Defendants to employ reasonable methodologies to prevent or limit

21  infringement of Plaintiff's Copyrighted Works and exclusive rights under the Copyright Act.

22                     **SECOND CLAIM FOR RELIEF**

23        **Direct Copyright Infringement (Preparation of Derivative Works)**

24                     **Against the Skype Companies**

25      81.   Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-80

26  of this Complaint as though fully set forth herein.

27      82.   The Defendant Skype Companies, without the permission or consent of Plaintiff, and

28  without authority, have modified and continue to modify Plaintiff's Copyrighted Works and prepare

-21-

Case No.                                   Complaint for Copyright Infringement

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1  derivative works.  Defendants' conduct constitutes direct infringement of Plaintiffs' exclusive rights

2  under the Copyright Act to prepare derivative works based on Plaintiff's own Copyrighted Works.

3  17 U.S.C. § 106(2).

4      83.    Defendants' acts of infringement have been willful, intentional, and purposeful, in

5  disregard of and indifferent to the rights of Plaintiff.

6      84.    The Skype Companies have continued to infringe Joltid's Copyrighted Works on a

7  massive scale.  Each day that the Skype Companies continue to make available their Internet

8  telephone software for download, Skype users download Joltid's Copyrighted Works approximately

9  six times per second.  Based on conservative estimates, Joltid believes that its Copyrighted Works

10  are infringed in the United States at least 100,000 times a day through these unauthorized actions.

11      85.    As a direct and proximate result of Defendant's infringement of Plaintiff's

12  Copyrighted Works and exclusive rights under copyright, Plaintiff is entitled to the maximum

13  statutory damages pursuant to 17 U.S.C. § 504(c) up to $150,000 for each act of direct infringement

14  by the Skype Companies or such other amounts as may be proper under 17 U.S.C. § 504(c).

15      86.    Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b), Plaintiff is

16  entitled to its actual damages plus Defendants' profits from infringement, as will be proven at trial.

17      87.    Plaintiff is entitled to its costs, including reasonable attorneys' fees, pursuant to 17

18  U.S.C. § 505.

19      88.    Defendants' conduct is causing and, unless enjoined by this Court, will continue to

20  cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money.

21  Plaintiff has no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a

22  permanent injunction requiring the Defendant Skype Companies to employ reasonable

23  methodologies to prevent or limit infringement of Plaintiff's Copyrighted Works and exclusive

24  rights under the Copyright Act.

25                    **THIRD CLAIM FOR RELIEF**

26      **Direct Copyright Infringement (Distribution) Against the Skype Companies**

27      89.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-88

28  of this Complaint as though fully set forth herein.

-22-

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

90. The Defendant Skype Companies, without the permission or consent of Plaintiff, and without authority, are distributing Plaintiff's Copyrighted Works and derivative works based on Plaintiff's Coyprighted Works to the public by making available to Skype users copies of the Copyrighted Works maintained on Skype's website. Defendant's conduct constitutes direct infringement of Plaintiff's exclusive rights under the Copyright Act to distribute its Copyrighted Works to the public. 17 U.S.C. § 106(3),

91. The Skype Companies' acts of infringement have been willful, intentional, and purposeful, in disregard of and indifferent to the rights of Plaintiff.

92. The Skype Companies have continued to infringe Joltid's Copyrighted Works on a massive scale. Each day that the Skype Companies continue to make available its Internet telephone software for download, Skype users download Joltid's Copyrighted Works approximately six times per second. Based on conservative estimates, Joltid believes that its Copyrighted Works are infringed in the United States at least 100,000 times a day through these unauthorized actions.

93. As a direct and proximate result of the Skype Companies' infringement of Plaintiff's Copyrighted Works and exclusive rights under the Copyright Act, Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c) up to $150,000 for each act of direct infringement by the Skype Companies or such other amounts as may be proper under 17 U.S.C. § 504(c).

94. Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b), Plaintiff is entitled to its actual damages plus Defendants' profits from infringement, as will be proven at trial.

95. Plaintiff is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

96. Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction requiring Defendants' to employ reasonable methodologies to prevent or limit infringement of Plaintiff's Copyrighted Works and exclusive rights under the Copyright Act.

## FOURTH CLAIM FOR RELIEF

-23-

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

**Inducement of Copyright Infringement Against All Defendants**

97.   Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-96 of this Complaint as though fully set forth herein.

98.   Skype users have directly infringed and are infringing Plaintiff's rights in its Copyrighted Works by, *inter alia*, downloading infringing copies of Plaintiff's Copyrighted Works and/or derivative works based upon the Copyrighted Works from Skype's website and reproducing and/or distributing copies of Plaintiff's Copyrighted Works or derivative works based upon the Copyrighted Works. Skype users are therefore directly infringing Plaintiff's exclusive rights of reproduction and distribution under 17 U.S.C. § 106(1) and (3).

99.   Defendants are liable under the Copyright Act for inducing the infringing acts of Skype users.

100.   At all times since at least 2003, the Skype Companies have promoted Skype's telephony software application by promoting its use and encouraging and facilitating the download of Skype's telephony software (including Plaintiff's Copyrighted Works and/or derivative works) by Skype users. Since Joltid terminated the License Agreement in 2009, their clear expression and other affirmative steps, the Skype Companies have unlawfully induced and fostered copyright infringement by Skype users.

101.   At all times since at least 2005, the Skype Companies and/or eBay have promoted the Skype telephony software application by promoting its use and encouraging and facilitating its download by Skype users. Since Joltid terminated the License Agreement in 2007, by their clear expression and other affirmative steps, the Skype Companies and/or eBay have been unlawfully inducing and fostering copyright infringement by Skype users.

102.   At all times since at least September 1, 2009, Skype, eBay, and/or each of the Defendant investors have also promoted Skype's telephony software application known to infringe Plaintiff's Copyrighted Works and/or derivative works based on Plaintiff's Copyrighted Works, by promoting its use and encouraging and facilitating its download by Skype users. By their clear expression and other affirmative steps, the Skype Companies, eBay, and/or each of the Defendant investors are unlawfully inducing and fostering copyright infringement by Skype users.

-24-

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1    103.    All Defendants are fully aware that Plaintiff's Copyrighted Works and derivative

2    works based on Plaintiff's Copyrighted Works are protected and the property of Plaintiff and all

3    Defendants are equally aware that Skype users downloading and using the Skype telephony software

4    are unlawfully reproducing and distributing Plaintiff's Copyrighted Works and derivative works.

5    Defendants intend, encourage and induce Skype users to download the Skype telephony software in

6    spite of the resulting unauthorized infringement.

7    104.    Defendants' acts of infringement have been willful, intentional and purposeful, in

8    disregard of and indifferent to the rights of Plaintiff.

9    105.    Since termination of the License Agreement, infringement of Joltid's Copyrighted

10    Works has continued on a massive scale.  Each day that the Skype Companies continue to make

11    available its Internet telephone software for download, Skype users download Joltid's Copyrighted

12    Works approximately six times per second.  Based on conservative estimates, Joltid believes that its

13    Copyrighted Works are infringed in the United States at least 100,000 times a day through

14    Defendants' unauthorized actions.  Indeed, hundreds of thousands of Skype users have directly

15    infringing Joltid's exclusive rights under the Copyright Act by downloading and using the Skype

16    telephony software application (including Joltid's Copyrighted Works) since the effective dates of

17    registration of Joltid's Copyrighted Works.

18    106.    As a direct and proximate result of the Skype users' direct infringement of Plaintiff's

19    Copyrighted Works and exclusive rights under the Copyright Act, Defendants are jointly and

20    severally liable with the Skype users up to the maximum statutory damage pursuant to 17 U.S.C. §

21    504(c) of $150,000 for each direct infringement by each Skype user of each Copyrighted Work

22    infringed, where such direct infringement took place on or after the effective date of registration of

23    Joltid's Copyrighted Works.  Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b),

24    Plaintiff is entitled to its actual damages plus Defendants' profits from all infringements occurring

25    on or after the effective date of registration of Joltid's Copyrighted Works, as will be proven at trial.

26    107.    Plaintiff is entitled to its actual damages plus Defendants' profits from all

27    infringements occurring prior to the effective date of registration of Joltid's Copyrighted Works, as

28    will be proven at trial.

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-25-

Case No.                                                    Complaint for Copyright Infringement

1      108.    Plaintiff is entitled to its costs, including reasonable attorneys' fees, pursuant to 17

2  U.S.C. § 505.

3      109.    Defendants' conduct is causing and, unless enjoined by this Court, will continue to

4  cause Plaintiff's great and irreparable injury that cannot be fully compensated or measured in

5  money.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiff is

6  entitled to a permanent injunction requiring Defendants to employ reasonable methodologies to

7  prevent or limit infringement of Plaintiff's Copyrighted Works.

8                        **FIFTH CLAIM FOR RELIEF**

9          **Contributory Copyright Infringement Against All Defendants**

10      110.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-109

11  of this Complaint as though fully set forth herein.

12      111.    Skype users have directly infringed and are infringing Plaintiff's rights in its

13  Copyrighted Works by, *inter alia*, downloading infringing copies of Plaintiff's Copyrighted Works

14  and/or derivative works based upon the Copyrighted Works from Skype's website and reproducing

15  and/or distributing copies of Plaintiff's Copyrighted Works and derivative works based upon the

16  Copyrighted Works.  Skype's users are therefore directly infringing Plaintiff's exclusive rights of

17  reproduction and distribution under 17 U.S.C. § 106(1) and (3).

18      112.    At all times since Joltid terminated the License Agreement, the Skype Companies

19  have had the actual and constructive knowledge that its users directly infringe Plaintiff's

20  Copyrighted Works.  Furthermore, the Skype Companies have materially assisted its users in

21  directly infringing Plaintiff's Copyrighted Works by making Skype's telephony software application

22  (which includes Plaintiff's Copyrighted Works) available to Skype's users and facilitating the

23  downloading of Skype's telephony software by Skype's users.

24      113.    At all times since Joltid terminated the License Agreement, Defendant eBay has had

25  the actual and constructive knowledge that Skype's users directly infringe Plaintiff's Copyrighted

26  Works and eBay has materially assisted Skype's users to directly infringe Plaintiff's Copyrighted

27  Works and derivative works prepared from the Copyrighted Works by promoting and facilitating the

28  download and distribution of Skype's telephony software application and attempting to increase the

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-26-

1    number of Skype users.

2      114.   At all times since on or about September 1, 2009, the Defendants in the investor

3    group have had the actual and constructive knowledge that Skype's users directly infringe Joltid's

4    Copyrighted Works and derivative works prepared from the Copyrighted Works and have materially

5    assisted Skype's users to infringe Joltid's Copyrighted Works by promoting and facilitating the

6    download and distribution of Skype's telephony software application and attempting to increase the

7    number of Skype users.

8      115.   All Defendants have actual and constructive knowledge that Skype users are

9    employing the Skype website to copy and/or distribute Joltid's Copyrighted Works.

10      116.   Acting with this actual and constructive knowledge, Defendants enable, facilitate and

11    materially contribute to each of the Skype users' direct copyright infringement of Plaintiff's

12    Copyrighted Works, which could not occur without Defendants' enablement.

13      117.   Defendants' acts of infringement have been willful, intentional, and purposeful, in

14    disregard of and indifferent to the rights of Plaintiff.

15      118.   Since termination of the License Agreement, infringement of Joltid's Copyrighted

16    Works has continued on a massive scale. Each day that Skype continues to make available its

17    Internet telephone software for download, Skype users download Joltid's Copyrighted Works

18    approximately six times per second. Based on conservative estimates, Joltid believes that its

19    Copyrighted Works are infringed in the United States at least 100,000 times a day through

20    Defendants' unauthorized actions. Indeed, hundreds of thousands of Skype users have directly

21    infringing Joltid's exclusive rights under the Copyright Act by downloading and using the Skype

22    telephony software application (including Joltid's Copyrighted Works) since the effective dates of

23    registration of Joltid's Copyrighted Works.

24      119.   As a direct and proximate result of the Skype users' direct infringement of Plaintiff's

25    Copyrighted Works and exclusive rights under the Copyright Act, Defendants are jointly and

26    severally liable with the Skype users for maximum statutory damage pursuant to 17 U.S.C. § 504(c)

27    up to $150,000 for each direct infringement by each Skype user of each Copyrighted Work

28    infringed, where such direct infringement took place on or after the effective date of registration of

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-27-

Case No.                                  Complaint for Copyright Infringement

1 | Joltid's Copyrighted Works. Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b),

2 | Plaintiff is entitled to its actual damages plus Defendants' profits from all infringements occurring

3 | on or after the effective date of registration of Joltid's Copyrighted Works, as will be proven at trial.

4 |      120.    Plaintiff is entitled to its actual damages plus Defendants' profits from all

5 | infringements occurring prior to the effective date of registration of Joltid's Copyrighted Works, as

6 | will be proven at trial.

7 |      121.    Plaintiff is entitled to its costs, including reasonable attorneys' fees, pursuant to

8 | 17 U.S.C. § 505.

9 |      122.    Defendants' conduct is causing, and unless enjoined by this Court, will continue to

10 | cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money.

11 | Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a

12 | permanent injunction requiring Defendants to employ reasonable methodologies to prevent or limit

13 | infringement of Plaintiff's Copyrighted Works.

### SIXTH CLAIM FOR RELIEF

**Vicarious Copyright Infringement Against All Defendants**

16 |      123.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-122

17 | of this Complaint as though fully set forth herein.

18 |      124.    Skype users have directly infringed and are directly infringing Plaintiff's rights in its

19 | Copyrighted Works by, *inter alia*, downloading infringing copies of Plaintiff's Copyrighted Works

20 | and/or derivative works based upon Plaintiff's Copyrighted Works from Skype's website and

21 | reproducing and/or distributing copies of Plaintiff's Copyrighted Works, including derivative works.

22 | Skype's users are therefore directly infringing Plaintiffs' exclusive rights of reproduction and

23 | distribution under 17 U.S.C. § 106(1) and (3).

24 |      125.    At all times, the Skype Companies have significantly and directly benefited from the

25 | widespread infringement by its users. Skype's telephony software (which includes Plaintiffs'

26 | Copyrighted Works), acts as a substantial draw, attracting users to Skype's websites and increasing

27 | the number of users who use Skype's services. Skype derives substantial revenue tied directly and

28 | indirectly to Skype's telephony software application (which includes Plaintiff's Copyrighted

-28-

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1   Works).

2        126.    At all times relevant to this action, Defendant eBay maintained a direct financial

3   interest in the unauthorized and infringing uses of Joltid's Copyrighted Works.  The greater the

4   revenue generated by such use (all of which is directly or indirectly attributable to Skype's

5   telephony software and the unauthorized and infringing uses of Joltid's Copyrighted Works), the

6   greater the financial gain realized by eBay, as Skype's sole shareholder, and later, as a significant

7   shareholder of the Skype Companies.

8        127.    At all times relevant to this claim, Defendant eBay maintained the right and ability to

9   supervise Skype's unauthorized and infringing conduct, first as Skype's sole shareholder, and later,

10  as a significant shareholder of Skype.

11       128.    At all times since on or about September 1, 2009, the Defendant investors have

12  maintained a direct financial interest in Skype's unauthorized and infringing uses of Joltid's

13  Copyrighted Works.  The greater the revenue generated by that use (all of which is directly or

14  indirectly attributable to Skype's telephony software and the unauthorized and infringing use of

15  Joltid's Copyrighted Works), the greater the individual financial gain realized by each of the

16  Defendant investors.

17       129.    At all times relevant to this action, the Defendant investors have maintained the right

18  and ability to supervise Skype's unauthorized and infringing conduct in coordination with the Skype

19  Companies and eBay.  As a condition of the Skype 2009 Sale, the Defendant investors agreed to

20  continue operating Skype in the normal course of business, which includes reproducing, without

21  permission, Joltid's Copyrighted Works and unauthorized derivative works based upon Joltid's

22  Copyrighted Works and distributing, without permission, Joltid's Copyrighted Works and

23  unauthorized derivative works based upon Joltid's Copyrighted Works through the Skype Internet

24  telephony software application to new and registered Skype users. Additionally, the Skype

25  Companies, in the normal course of their business, will also impermissibly continue to modify and

26  prepare unauthorized derivative works of one or both of Joltid's Coyprighted Works.

27       130.    Defendants are vicariously liable for the infringing acts of Skype users.  Defendants

28  have both the right and the ability to supervise the Skype users' infringing conduct, and to prevent

Case No.                                                         Complaint for Copyright Infringement

1  Skype users from infringing Plaintiff's Copyrighted Works.

2       131.   Defendants' acts of infringement have been willful, intentional, and purposeful, in

3  disregard of and indifferent to the rights of Plaintiff.

4       132.   Since termination of the License Agreement, infringement of Joltid's Copyrighted

5  Works has continued on a massive scale. Each day that Skype continues to make available its

6  Internet telephone software for download, Skype users download Joltid's Copyrighted Works

7  approximately six times per second. Based on conservative estimates, Joltid believes that its

8  Copyrighted Works are infringed in the United States at least 100,000 times a day through

9  Defendants' unauthorized actions. Indeed, hundreds of thousands of Skype users have directly

10 infringing Joltid's exclusive rights under the Copyright Act by downloading and using the Skype

11 telephony software application (including Joltid's Copyrighted Works) since the effective dates of

12 registration of Joltid's Copyrighted Works.

13      133.   As a direct and proximate result of the Skype users' direct infringement of Plaintiff's

14 Copyrighted Works and exclusive rights under the Copyright Act, Defendants are jointly and

15 severally liable with the Skype users for maximum statutory damage pursuant to 17 U.S.C. § 504(c)

16 up to $150,000 for each direct infringement by each Skype user of each Copyrighted Work

17 infringed, where such direct infringement took place on or after the effective date of registration of

18 Joltid's Copyrighted Works. Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b),

19 Plaintiff is entitled to its actual damages plus Defendants' profits from all infringements occurring

20 on or after the effective date of registration of Joltid's Copyrighted Works, as will be proven at trial.

21      134.   Plaintiff is entitled to its actual damages plus Defendants' profits from all

22 infringements occurring prior to the effective date of registration of Joltid's Copyrighted Works, as

23 will be proven at trial.

24      135.   Plaintiff is entitled to its costs, including reasonable attorneys' fees, pursuant to

25 17 U.S.C. § 505.

26      136.   Defendants' conduct is causing, and unless enjoined by this Court, will continue to

27 cause Plaintiff's great and irreparable injury that cannot fully be compensated or measured in

28 money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-30-

1  a permanent injunction requiring Defendants to employ reasonable methodologies to prevent or limit

2  infringement of Plaintiff's Copyrighted Works.

3  **PRAYER FOR RELIEF**

4  　　　WHEREFORE, Plaintiff Joltid Limited prays for judgment against Defendants as follows:

5  　　　(1)　　For a judicial determination and declaration that Defendant Skype has directly

6  infringed, and continues to directly infringe Plaintiff's Copyrighted Works;

7  　　　(2)　　For a judicial determination and declaration that each and every Defendant, including

8  the Skype Companies, has induced, and continues to induce, the infringement of Plaintiff's

9  Copyrighted Works;

10  　　　(3)　　For a judicial determination and declaration that each and every Defendant, including

11  the Skype Companies, has contributed to, and continues to contribute to, vicariously and

12  or/contributorily, to the infringement of Plaintiff's Copyrighted Works;

13  　　　(4)　　For a judicial determination and decree that each Defendants' infringement of

14  Plaintiffs' Copyrighted Works has been and continues to be, willful and deliberate;

15  　　　(5)　　For a permanent injunction requiring that each Defendant and its agents, servants,

16  employees, officers, attorneys, successors, licensees, partners, and assigns, and all person acting in

17  concert or participation with each or any of them cease directly or indirectly infringing, or causing,

18  enabling, facilitating , encouraging, promoting and inducing or participating in the infringement of

19  any of Plaintiff's Copyrighted Works or exclusive rights protected by the Copyright Act, whether

20  now in existence or hereafter created;

21  　　　(6)　　For statutory damages pursuant to 17 U.S.C. § 504(c).  Alternatively, at Plaintiff's

22  election, pursuant to 17 U.S.C. § 504(b), Plaintiff shall be entitled to actual damages plus

23  Defendants' profits from infringement, as will be proven at trial.

24  　　　(8)　　For Plaintiff's costs, including reasonable attorneys' fees pursuant to 17 U.S.C. §

25  505,

26  　　　(9)　　For pre and post-judgment interest according to law;

27  　　　(10)　　For any such other and further relief as the Court may deem just and proper under the

28  circumstances.

-31-

1     DATED:  September 16, 2009           HENNIGAN, BENNETT & DORMAN LLP

2

3                                  By: _____

                                     Roderick G. Dorman

4                                      Lawrence M. Hadley

5                              Attorneys for Plaintiff

                             JOLTID LIMITED

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.                                              Complaint for Copyright Infringement

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1

2                                    **Demand for Jury Trial**

3          Plaintiff hereby demands a jury trial pursuant to Rule 38 of the Federal Rules of Civil

4    Procedure as to all issues so triable.

5

6    DATED:  September 16, 2009                    HENNIGAN, BENNETT & DORMAN LLP

7
                                                   By:
8                                                      Roderick G. Dorman
                                                       Lawrence M. Hadley
9
                                                   Attorneys for Plaintiff
10                                                 JOLTID LIMITED

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.                                                    Complaint for Copyright Infringement

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

# EXHIBIT 1

-----Original Message-----
From: Copyright Office [mailto:cop-rc@loc.gov]
Sent: Tuesday, September 01, 2009 6:47 PM
To: Tal Grinblat
Subject: Acknowledgement of Receipt


THIS IS AN AUTOMATED EMAIL - DO NOT REPLY.

Thank you for submitting your registration claim using the electronic
Copyright Office (eCO) System. This email confirms that your
application
and fee for the work Global Index Software was received on 09/01/2009.
The following applies to registration claims only (not
preregistrations):

The effective date of registration is established when the application,
fee AND the material being registered have been received. If you have
not yet sent the material to be registered, logon to eCO and click the
blue case number associated with your claim in the Open Cases table,
then do one of the following:

For digital uploads: Click the Upload Deposit button at the top of the
Case Summary screen, then browse and select the file(s) you wish to
upload. Note: only certain classes of works may be registered with
digital deposits (See FAQs:
http://www.copyright.gov/eco/faq.html#eCO_1.4).

For hardcopy submissions:  Click the Send by Mail button at the top of
the Case Summary screen, then click the Shipping Slip link that appears
in the Attachments table. Print out and attach the shipping slip to the
copy(ies) of your work. For multiple works, be sure to generate and
attach separate shipping slips for each work.

You will be issued a paper certificate by mail after the registration
has been completed. You may check the status of this claim via eCO
using
this number [1-237878231].

[THREAD ID: 1-3XPFSE]

United States Copyright Office

Exhibit __I__ Page __34__

# EXHIBIT 2

-----Original Message-----
From: Copyright Office [mailto:cop-rc@loc.gov]
Sent: Tuesday, September 15, 2009 5:33 PM
To: Tal Grinblat
Subject: Acknowledgement of Receipt

THIS IS AN AUTOMATED EMAIL - DO NOT REPLY.

Thank you for submitting your registration claim using the electronic
Copyright Office (eCO) System. This email confirms that your
application
and fee for the work Global Index Software (August 2007 Version) was
received on 09/15/2009. The following applies to registration claims
only (not preregistrations):

The effective date of registration is established when the application,
fee AND the material being registered have been received. If you have
not yet sent the material to be registered, logon to eCO and click the
blue case number associated with your claim in the Open Cases table,
then do one of the following:

For digital uploads: Click the Upload Deposit button at the top of the
Case Summary screen, then browse and select the file(s) you wish to
upload. Note: only certain classes of works may be registered with
digital deposits (See FAQs:
http://www.copyright.gov/eco/faq.html#eCO_1.4).

For hardcopy submissions:  Click the Send by Mail button at the top of
the Case Summary screen, then click the Shipping Slip link that appears
in the Attachments table. Print out and attach the shipping slip to the
copy(ies) of your work. For multiple works, be sure to generate and
attach separate shipping slips for each work.

You will be issued a paper certificate by mail after the registration
has been completed. You may check the status of this claim via eCO
using
this number [1-244799541].

[THREAD ID: 1-41UH1K]

United States Copyright Office

Exhibit 2 Page 35