**HENNIGAN, BENNETT & DORMAN LLP**
**RODERICK G. DORMAN (SBN 96908)**
dormanr@hbdlawyers.com
**LAWRENCE M. HADLEY (SBN 157728)**
hadleyl@hbdlawyers.com
**MIEKE K. MALMBERG (SBN 209992)**
malmbergm@hbdlawyers.com
**865 South Figueroa Street, Suite 2900**
**Los Angeles, California 90017**
**Telephone: (213) 694-1200**
**Fax: (213) 694-1234**

Attorneys for Plaintiff
JOLTID LIMITED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOLTID LIMITED, | Case No. 3:09-CV-04299-SC |
| Plaintiff, | Judge: Honorable Samuel Conti |
| vs. | Crtrm: Courtroom 1, 17th Floor |
| SKYPE TECHNOLOGIES S.A.; SKYPE INC., eBAY INC.; SILVER LAKE PARTNERS, L.P.; SILVER LAKE PARTNERS II, L.P.; SILVER LAKE PARTNERS III, L.P.; SILVER LAKE PARTNERS MANAGEMENT COMPANY, L.L.C.; SILVER LAKE MANAGEMENT COMPANY III, L.L.C.; INDEX VENTURES MANAGEMENT, S.A.; MICHAELANGELO ("MIKE") VOLPI; ANDREESSEN HOROWITZ LLC; CANADA PENSION PLAN INVESTMENT BOARD; DOES 1-10, | **FIRST AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT** **DEMAND FOR JURY TRIAL** |
| Defendants. | |

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

This case involves the impermissible use by the Skype entities, eBay, Michaelangelo Volpi and the defendant co-conspirators of Plaintiff's Global Index Software which powers the hugely successful Internet telephony application known as Skype.  For its complaint against Defendants Skype Technologies S.A.; Skype Inc.; eBay, Inc.; Silver Lake Partners, L.P.; Silver Lake Partners II, L.P.; Silver Lake Partners III, L.P.; Silver Lake Partners Management Company, L.L.C.; Silver Lake Management Company III, L.L.C.; Index Ventures Management, S.A.; Michaelangelo Volpi ("Volpi"); Andreessen Horowitz LLC; Canada Pension Plan Investment Board; and DOES 1-10 (hereinafter collectively "Defendants"), Plaintiff Joltid Limited ("Joltid" or "Plaintiff") alleges as follows:

## SUMMARY OF ACTION

1.      Joltid, Limited, is a company that develops and provides peer-to-peer based software products.  As the world's leading developer of peer-to-peer technologies, in 2003 Joltid created a new software technology known as Global Index ("GI Software").  The GI Software, Joltid's flagship product, is the world's most technologically advanced, scalable and field-tested peer-to-peer technology.  Peer-to-peer technology involves computer architechture that eschews a central database server configuration in favor of a distributed system that harnesses the collective computing power of client computers utilizing the Internet worldwide.  GI Software creates a self-organizing and self-healing distributed storage, transportation and data object management system that eliminates the costs of traditional datacenter solutions and enables a range of applications from communications to broadcasting and beyond.  Joltid owns all intellectual property in the Gl Software, including copyrights and patents.

2.      Since the early days of the Internet, engineers recognized that Internet communications protocols could be used for voice communications.  Engineers named this process Voice over Internet Protocol ("VoIP").  IP telephony and Internet telephony are other terms frequently encountered and synonymous with VoIP.  Internet telephony refers to communications services — voice, facsimile, and/or voice-messaging applications — that are transported via the Internet rather than through the public switched telephone network ("PSTN").  Most basically, an Internet telephone call is achieved by converting an analog voice signal to digital format and then

-2-

1   compressing and translating that signal into Internet protocol (IP) packets for transmission over the

2   Internet.  The process is then reversed so the communication can be audibly heard at the receiving

3   end.

4        3.      Around 2002, the founders of Skype set out to create a peer-to-peer Internet

5   telephony system that would deliver telephone service at significantly reduced costs.  The founders

6   subsequently named the resulting Internet telephony application "Skyper" (later changed to

7   "Skype"), and a company was formed called "Skyper" (later changed to "Skype") to launch the new

8   peer-to-peer VoIP telephony service.

9        4.      Skype developers recognized that Joltid's GI Software would provide the most

10  effective, and perhaps the only, workable, peer-to-peer infrastructure application for the new

11  Internet telephony service.  In November, 2003, after evaluating and working with Joltid's GI

12  Software in Skype "Beta" releases, Skype licensed Joltid's GI Software for its new Internet

13  telephony service ("License Agreement").  Under the License Agreement, Joltid agreed to provide

14  Skype with the GI Software in "executable" form, together with appropriate interfaces, so that

15  Skype could build its Internet telephony application on top of the GI Software application base.

16  Accordingly, Joltid retained sole control over the GI Software source code, and requested

17  modifications to the GI Software source code could only be made by or at the direction of Joltid.

18       5.      Skype offered its application to the public for download in 2003, and it has been

19  wildly popular ever since.  Today, it is estimated that, worldwide, six people every second download

20  Skype.  In 2005, eBay purchased Skype for $2.6 billion plus an earn out component.  At the peak of

21  each day, more than 16 million users to connect with one another through Skype.

22       6.      In 2007, Joltid learned that Skype had acquired unauthorized versions of the GI

23  Software source code, and subsequently learned that Skype had created unauthorized modifications

24  of the GI Software source code for new Skype versions.  Joltid further learned that Skype had

25  disclosed the GI Software source code to third persons.  Joltid demanded that Skype immediately

26  return all versions of the GI Software source code, including any modified versions.  Skype refused.

27       7.      As a result, Joltid terminated the License Agreement with Skype and demanded that

28  Skype cease using, duplicating, and distributing the GI Software, including making the GI Software

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-3-

1   available for download through its Skype application.  Despite Joltid's demands, Skype has

2   continued to make its application available for download, including the GI Software, and has

3   continued to promote Skype downloading unabated.  Currently, Joltid believes that its copyrighted

4   GI Software, through the activities of the Skype application, is being infringed by those who

5   download and use Skype in the United States at least 100,000 times each day.

6       8.      On or about September 1, 2009, Joltid learned that an investor group had signed an

7   agreement to purchase Skype from eBay.  By the terms of the Purchase Agreement, the new owners

8   required that Skype continue to make its application, including the GI Software, available for

9   download until closing of the deal, expected by year end.  The terms of the Purchase Agreement

10  thereby contractually required the Skype entities and eBay to continue to infringe Joltid's

11  copyrights.  Additionally, the Purchase Agreement reportedly provided that certain members of the

12  investor group will provide operational control over the Skype Companies until closing, thereby

13  making members of the investor group culpable for the ongoing copyright infringement.

14      9.      Joltid brings this action for copyright infringement against Skype, its current eBay

15  owner, and the new owner/operator investor group to protect its intellectual property rights in the GI

16  Software.  Joltid seeks actual and statutory damages for infringement (which Joltid reasonably

17  believes are amassing at a rate of more than $75 million daily) and an injunction to stop the

18  infringement.

19  **JURISDICTION AND VENUE**

20      10.     This is a civil action seeking damages and declaratory and injunctive relief for

21  copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et. seq.*

22      11.     This Court has original subject matter jurisdiction over all claims pursuant to 28

23  U.S.C. §§ 1331 and 1338(a).

24      12.     Venue is proper under 28 U.S.C. §§ 1391(b), (c) and (d) and 1400(a).

25      13.     This Court has personal jurisdiction over Defendants:

26      a.      Skype Technologies S.A. conducts continuous and systematic business in

27              California and in this District through its website located at

28              http://www.skype.com.  Furthermore, Skype Technologies S.A. negotiated,

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-4-

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1  executed and/or caused to be executed agreements relating to the Skype 2009

2  sale (collectively, "Skype 2009 Purchase Agreement") in California and in

3  this District.

4    b.    Skype, Inc. is a wholly owned subsidiary of Skype Technologies S.A., located

5  in San Jose, California. Skype, Inc. is a party to the Skype 2009 Purchase

6  Agreement, and negotiated, executed and/or caused the Skype 2009 Purchase

7  Agreement to be executed in California and in this District.

8    c.    eBay, Inc. ("eBay") conducts continuous and systematic business in

9  California and in this District, in part through its website located at

10  http://www.ebay.com. eBay maintains an office and employs personnel in

11  California and in this District, and is licensed by the California Secretary of

12  State to do business in this State. Furthermore, eBay is a party to the Skype

13  2009 Purchase Agreement and negotiated, executed and/or caused the

14  Purchase Agreement to be executed in California and in this District.

15    d.    Each of Silver Lake Partners, L.P., Silver Lake Partners II, L.P., Silver Lake

16  Partners III, L.P., Silver Lake Partners Management Company, L.L.C. and

17  Silver Lake Management Company III, L.L.C. (collectively "Silver Lake

18  Partners") conducts business in California and in this District and also

19  maintains offices and employs personnel in California and in this District.

20  Silver Lake is a party to the Skype 2009 Purchase Agreement and negotiated,

21  executed and/or caused the Skype 2009 Purchase Agreement to be executed

22  in California and in this District.

23    e.    Index Ventures Management S.A. ("Index Ventures") is a party to the Skype

24  2009 Purchase Agreement and negotiated, executed and/or caused the Skype

25  2009 Purchase Agreement to be executed in California and in this District.

26    f.    Michaelangelo Volpi ("Volpi") is a partner with Index Ventures, a party to

27  the Skype 2009 Purchase Agreement. Volpi, on behalf of himself and Index

28  Ventures, negotiated, executed and/or caused the Skype 2009 Purchase

-5-

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1    Agreement to be executed in California and in this District.  Volpi personally

2    also owns real property in California and in this District.

3    g.    Andreessen Horowitz LLC ("Andreessen Horowitz") conducts business in

4    California and in this District and also maintains offices and employs

5    personnel in California and in this District.  Andreessen Horowitz is a party to

6    the Skype 2009 Purchase Agreement and negotiated, executed and/or caused

7    the Skype 2009 Purchase Agreement to be executed in California and in this

8    District.

9    h.    Canada Pension Plan Investment Board is a party to the Skype 2009 Purchase

10    Agreement and negotiated, executed and/or caused the Skype 2009 Purchase

11    Agreement to be executed in California and in this District.

12                              **THE PARTIES**

13    14.    Plaintiff Joltid Limited ("Joltid" or "Plaintiff") is a company duly organized in the

14    British Virgin Islands.

15    15.    Defendant Skype Technologies S.A. is a company duly organized in Luxembourg

16    ("Skype S.A.").  Skype S.A. maintains an office located at 22/24 Boulevard Royal, 6e etage,

17    L-2449, Luxembourg.  Upon information and belief, Skype S.A. also maintains offices in California.

18    16.    Defendant Skype Inc. is a company duly organized under the laws of the State of

19    Delaware ("Skype Inc.").  Skype Inc. maintains its place of business at 2145 Hamilton Ave., San

20    Jose, CA 95125. Collectively, Skype SA and Skype Inc. are referred to as the "Skype Companies."

21    17.    Defendant eBay, Inc. ("eBay") is a corporation duly organized under the laws of the

22    State of Delaware.  eBay maintains its principal place of business at 2145 Hamilton Ave., San Jose,

23    CA 95125.

24    18.    Defendant Silver Lake  is an investment fund with offices located in Cupertino, San

25    Francisco, Menlo Park, and New York, among other locations.  Silver Lake  operates a website

26    located at http://www.silverlake.com which lists Silver Lake Partner's Menlo Park office as located

27    at 2775 Sand Hill Road, Suite 100, Menlo Park, CA 94025.  Each of individually named defendants

28    Silver Lake Partners III, L.P., Silver Lake Partners Management Company, L.L.C. and Silver Lake

-6-

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1   Management Company III, L.L.C. also maintain an office at the same address, located at 2775 Sand

2   Hill Road, Suite 100, Menlo Park, CA 94025.  Named defendant Silver Lake Partners, L.P.

3   maintains an office located at 2800 Sand Hill Road, Suite 110, Menlo Park, CA 94025.  Named

4   defendant Silver Lake Partners II, L.P. maintains an office located at 2725 Sand Hill Road, Suite

5   150, Menlo Park, CA 94205.

6          19.     Defendant Index Ventures Management S.A. is a venture capital investment firm

7   incorporated in Geneva, Switzerland.  Index Ventures maintains offices in Geneva, Switzerland,

8   London, England, and the Bailiwick of Jersey, a British Crown Dependency located in the Channel

9   Islands.  Index Ventures manages and operates a compilation of venture capital funds, including

10  three limited partnerships organized under the laws of the State of Delaware:  Index Ventures I

11  (Delaware), L.P., Index Ventures II (Delaware), L.P., and Index Ventures III (Delaware), L.P.

12  Index Ventures also manages and operates Index Ventures Growth I, L.P., a member of the investor

13  consortium purchaser of the Skype Companies.  Index Ventures' London office is located at 52 53

14  Conduit Street, London, United Kingdom W1S 2YX.

15         20.     Defendant Volpi is a natural person and partner with Index Ventures.  Volpi's office

16  is located at Index Ventures' London office, listed above.  Volpi also owns and/or resides at 210

17  Alta Vista Ave. #8, Los Altos, CA 94022.  Volpi also maintains several other addresses in Santa

18  Clara County.

19         21.     Defendant Andreessen Horowitz is a limited liability company duly organized under

20  the laws of the State of Delaware.  Andreessen Horowitz maintains its place of business at 1801

21  Page Mill Road, Palo Alto, CA 94304.

22         22.     Defendant Canada Pension Plan Investment Board ("CPP Investment Board") is

23  headquartered in Toronto, with offices in London and Hong Kong.  The CPP Investment Board

24  maintains an office at One Queen St. East, Suite 2600, P.O. Box 101, Toronto, Ontario M5C 2W5,

25  Canada.

26         23.     Joltid is ignorant of the true names or capacities of all of the defendants sued herein

27  under the fictitious names of DOES 1-10.  DOES 1-10 are reserved for as yet unnamed and

28  unknown members of the investor group discussed, in part, in paragraph 8 of this Complaint.  The

-7-

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1   DOE Members of the investor group, like the named members, are liable for contributory, vicarious

2   and/or inducing the direct infringement of Joltid's Copyrighted Works by the Skype Companies

3   and/or unknown users of Skype's software who reproduce Joltid's Copyrighted Works without

4   authorization by downloading and using the Skype application.

5   **PLAINTIFF JOLTID'S COPYRIGHTED WORKS**

6       24.     Plaintiff Joltid is the developer and licensor of the intellectual property rights in and

7   to computer software relating to peer-to-peer communication between computers.  One suite of such

8   computer programs owned by Joltid is known as the "Global Index Software" or "GI".

9       25.     Plaintiff Joltid owns all right, title and interest to the United States copyright created

10  when Joltid's GI Software source code was first created and fixed in tangible form.  Joltid's GI

11  Software source code was first created and fixed in tangible form at least as early as 2003.

12      26.     Joltid is the sole owner of the registered copyright to Joltid's GI Software source

13  code.  Attached hereto as Exhibit 1 is a true and correct copy of the Certificate of Registration issued

14  from the United States Copyright Office, evidencing the registration and ownership of Joltid's GI

15  Software source, Registration Number TX 6-971-252.

16      27.     Between 2003 and approximately August 31, 2007, Joltid's Global Index Software

17  source code underwent certain modifications ("Modified Global Index Software").  A number of the

18  modifications were made under Joltid's authorization and direction at Skype's request.  Joltid owns

19  all right, title and interest in the United States copyright created when Joltid's Modified Global

20  Index Software source code was first created and fixed in tangible form.  Joltid's Modified Global

21  Index Software source code was first created and fixed in tangible form at least as early as August

22  31, 2007.

23      28.     Joltid is the sole owner of the registered copyright to Joltid's Modified Global Index

24  Software source code.  Attached hereto as Exhibit 2 is a true and correct copy of the Certificate of

25  Registration issued from the United States Copyright Office, evidencing the registration and

26  ownership of Joltid's Modified Global Index Software source code, Registration Number TX 6-973-

27  876.

28

29.     Under Section 106 of the Copyright Act of 1976, 17 U.S.C. § 101 et. seq. (the "Copyright Act"), Plaintiff Joltid has distinct, severable and exclusive rights to, among other things, reproduce, prepare derivative works, and distribute their copyrighted works, including Joltid's Global Index Software, Joltid's Modified Global Index software source codes, and all object code and related data thereof in compiled, assembled, or executable file formats (collectively, the "Copyrighted Works"). 17 U.S.C. §§ 106(1)-(3).

## THE SKYPE COMPANIES' BUSINESS

30.     The Defendant Skype Companies provide an Internet telephony software application that allows users to, among other things, make voice calls and video calls over the Internet.  The Skype Companies make its telephony software application available to Internet users (including individuals and businesses) for download from websites, one of which Skype operates at http://www.skype.com.

31.     Joltid's Copyrighted Works are incorporated into the Skype Companies' telephony software application and each time a Skype user downloads and/or uses Skype's telephony software application, the user also downloads and/or uses Joltid's Copyrighted Works.

32.     The Skype application generates revenue in several ways.  Paid monthly subscriptions enable a Skype user to make calls using the Skype application.  Subscriptions range from $2.95 per month for unlimited calls within the United States and Canada, up to $12.95 a month for unlimited world calls.  A Skype user can also purchase "Skype Credits" which can be used on an as-needed basis.  Skype also generates revenue from the sale of products on its websites, including www.skype.com.  Products sold through Skype include accessories such as phones, web cams and headsets, as well as the sale of  so-called "extras", such as facsimile add-ons, call recorders, games, applications, images, ring tones, etc.  Skype also generates revenue through sponsored advertising and partnerships.

33.     Skype's telephony software application is ultimately responsible for all of the revenue received by the Skype Companies.  In short, without Skype's telephony software application drawing users and potential users to Skype's websites, the Skype Companies would receive little or no revenue.

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

**THE SKYPE COMPANIES' UNAUTHORIZED AND INFRINGING**

**USES OF JOLTID'S COPYRIGHTED WORKS**

34.      Because Joltid's Copyrighted Works are proprietary and subject to intellectual property rights owned by Joltid, in November of 2003, the Skype Companies executed an agreement to license Joltid's Copyrighted Works, as well as other intellectual property rights owned or controlled by Joltid.  The November 20, 2003 Joltid Global Index Software License Agreement ("License Agreement") between Skype and Joltid provided the terms under which Skype could permissibly use Joltid's intellectual property rights, including Joltid's Copyrighted Works, for use in Skype's business.

35.      The License Agreement between Joltid and Skype licensed Skype to use the object code of the Copyrighted Works in executable form only.  This means that the Skype Companies could only create software that uses the Joltid's Copyrighted Works, in its existing form, much like a software developer can obtain permission to write program that run on the Microsoft Windows platform without receiving the right to change the Windows application.  The License Agreement did not allow Skype itself to copy, distribute, modify or use the source code relating to any version of Joltid's Copyrighted Works.  To the extent Skype required modifications of the GI code, all such requests for modifications were to be made to and authorized by Joltid and its software contractors.

36.      Despite the requirements of the License Agreement, Skype used the source code relating to Joltid's Copyrighted Works in manners unauthorized by Joltid.  Skype's unauthorized uses of Joltid's Copyrighted Works included the unauthorized distribution of Joltid's Copyrighted Works by making Skype's telephony software application (including Joltid's Copyrighted Works) available to third parties.  Additionally, Skype prepared derivative works based upon Joltid's Copyrighted Works by modifying Joltid's Copyrighted Works without permission and distributing and reproducing the derivative works.  Skype further obtained and made copies of the source code for Joltid's Copyrighted Works.  Skype was notified multiple times by Joltid that its unauthorized uses of Joltid's Copyrighted Works were in contravention to the License Agreement and that such uses should be terminated.  Throughout the latter part of 2007, Joltid wrote to Skype, informing Skype that Joltid had not authorized possession of Joltid's Copyrighted Works and furthermore

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

specifically instructed Skype that it could not disclose Joltid's Copyrighted Works to third parties. Despite Joltid's express instructions, Skype continued its unauthorized acts, including the disclosure of Joltid's Copyrighted Works to third parties and the modification of the Copyrighted Works without Joltid's permission.

37.     As a result of Skype's unauthorized uses of  Joltid's Copyrighted Works, Joltid terminated the License Agreement in accordance with its terms.

38.     The termination of the License Agreement was effective as of March 12, 2009.  Since that date the Skype Companies use, reproduction, distribution and preparation and modification of Joltid's Copyrighted Works has continued without permission or license.

39.     Skype's breach of the License Agreement and the legal effect of Joltid's termination of the License Agreement is currently the subject of litigation in the United Kingdom High Court of Justice, Chancery Division Intellectual Property, in a matter styled as *Skype Technologies SA and Joltid Limited*, Claim No. HC09C00756 (the "U.K. Litigation").

40.     Prior to and since March 12, 2009, Skype has continued to make its telephony software application, which includes Joltid's Copyrighted Works, available to the public.  As a result, Skype has reproduced Joltid's Copyrighted Works without authority to do so by, among other things, incorporating the Copyrighted Works into Skype's Internet telephony software application and making the Skype Internet telephony software available to third parties for download and use. Additionally, Skype continues to prepare derivative works based upon Joltid's Copyrighted Works by modifying Joltid's Copyrighted Works without permission and both distributing and reproducing those derivative works.

41.     When the Skype Companies offer the Skype application to a consumer, that user consents to Skype's End User License Agreement.

42.     Skype's End User License Agreement purports to, without authority, grant licenses to certain of Plaintiff's Copyrighted Works – namely, the GI object code.  The End User License Agreement grants Skype's users limited, personal, non-commercial, non-exclusive, non-sublicensable, non-assignable, free of charge license to download, install and use the Skype telephony application (and any software distributed by Skype) on the user's computer, phone or

-11-

First Amended Complaint for Copyright Infringement

1   PDA.  The End User License Agreement contains no exception to the object code format of

2   Plaintiff's Copyrighted Works and in fact states that third party software or technology that is

3   incorporated into the Skype telephony application falls under the scope of the End User License

4   Agreement.

5          43.     The Skype Companies continue to promote the use and downloading of Skype's

6   telephony software to registered and potential users.  Skype maintains and promotes an "Affiliate

7   Program" wherein individuals and/or businesses can make money by directing traffic to Skype.  As

8   an addendum to its End User License Agreement, in a document entitled "Promotional Terms," the

9   Skype Companies granted an automatic non-transferable license so that users or others may promote

10  Skype, Skype's telephony software, Skype's website,  or other Skype products on their own

11  websites.

12          **DEFENDANT EBAY AND ITS PURCHASE OF THE SKYPE COMPANIES**

13         44.     Based in part on the Skype application's early popularity, Defendant eBay, the well-

14  known online auctioneer and owner of Pay-Pal, saw great value in Skype.  Hoping to enhance the

15  auction experience of its eBay application by facilitating low-cost or cost-free communication

16  between sellers and potential buyers of auction items on eBay, eBay purchased the Skype

17  Companies, together with the Skype Internet telephony software, in October 2005, for $2.6 billion

18  plus an earn-out.  As a result of the purchase, the Skype Companies became wholly owned

19  subsidiaries of Defendant eBay and remained under the complete control and direction of

20  Defendant eBay.

21         45.     As part of the negotiations for the purchase of the Skype Companies, eBay sought to

22  purchase Joltid.  Alternatively, eBay sought to purchase or license Joltid's GI source code.  Joltid

23  declined to either sell its intellectual property rights in GI or to sell or license the GI source code.

24  Accordingly, eBay purchased the Skype Companies subject to the terms of the License Agreement

25  that then existed between the Skype Companies and Joltid, which remained a license limited to

26  executable GI object code.  The later breach of the License Agreement by the Skype Companies

27  directed by eBay amounted to a unilateral confiscation of the same code that Joltid had earlier

28  refused to sell to eBay.

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

46.     Defendant eBay reports on the Skype Companies' operations in its public filings with the Securities and Exchange Commission ("SEC").  eBay describes the Skype Companies as the "Communications" branch of eBay's business.  Furthermore, eBay publicly states in its SEC filings that eBay launched several promotions with Skype, "which drove significant user growth in registered users."

47.     Skype's telephony software application has become hugely popular.  From 2003 to 2008, registered Skype users have reached over 405 million in number, with some sources (including Wikipedia) estimating the number of users currently as high as 481 million.  As a result of eBay's strong oversight and control over its investment, registered Skype users increased 47 percent between 2007 and 2008 alone.  eBay press releases boast that "Skype is attracting hundreds of thousands of new users each week."  Skype itself claims that approximately 6 new users register and download Skype's telephony software application (and, consequently, Joltid's Copyrighted Works) every second of every day.

48.     As a result of the success of the Skype telephony software application (including Joltid's Copyrighted Works), Skype is hugely profitable, generating a significant portion of eBay's total revenue.  eBay press releases state that  "Skype generated revenues of $551 million, a 44 percent increase compared to 2007.  Total eBay Inc. revenues for 2008 were $8.5 billion."  eBay publicly anticipates Skype to generate one billion dollars in revenue in the year 2011.

49.     At all times since October, 2005 up to, and including September 1, 2009, Defendant eBay, as Skype's sole shareholder, exercised full operational control over Skype's unauthorized reproduction, distribution, preparation of derivative works and/or modifications of Joltid's Copyrighted Works.  As sole shareholder of Skype, and having conducted extensive due diligence into Skype's business activities and licensing agreements in preparation for its more than three billion dollar acquisition of Skype, Defendant eBay was at all times aware of Skype's unauthorized and infringing uses of Joltid's Copyrighted Works.

50.     In fact, early on eBay recognized the importance of Joltid's Copyrighted Works in Skype's telephony software application, stating in an SEC filing that "Skype licenses technology underlying certain key components of its software from third parties it does not control, including

1   the technology underlying its peer-to-peer architecture and firewall traversal technology, and the

2   audio and video compression/decompression used to provide high sound and video quality.

3   Although Skype has contracts in place with its third party technology providers, there can be no

4   assurance that the licensed technology or other technology that we may seek to license in the future

5   will continue to be available on commercially reasonable terms, or at all.  The loss of, or inability to

6   maintain, existing licenses could result in a decrease in service quality until equivalent technology or

7   suitable alternatives can be developed, identified, licensed and integrated.  Any failure to maintain

8   these licenses on commercially reasonable terms or to license or develop alternative technologies

9   would harm Skype's business."

10          51.    Later, recognizing the importance of Joltid's Copyrighted Works in Skype's

11  telephony software application and eBay's liability exposure for unauthorized uses of Joltid's

12  Copyrighted Works, eBay disclosed in an SEC filing a summary of the details surrounding the U.K.

13  Litigation and stated that "if Skype was to lose the right to use the Joltid software as the result of the

14  litigation, and if alternative software was not available, Skype would be severely and adversely

15  affected and the continued operation of Skype's business as currently conducted would likely not be

16  possible."  eBay has further publicly described the potential loss of use of Joltid's Copyrighted

17  Works as "devastating."

18          52.    Although eBay was actually and constructively aware that the Skype Companies and

19  the users of the Skype application continued to infringe Joltid's Copyrighted Works, eBay failed to

20  cease all infringing activities and use, reproduction, and promotion of Joltid's Copyrighted Works,

21  as part of Skype' telephony software application, following Joltid's termination of the License

22  Agreement.  In fact, eBay continued to promote and to allow the infringements of Joltid's

23  Copyrighted Works in order to realize eBay's goals of generating extraordinary revenue from the

24  Skype telephony software application.

## THE 2009 SALE OF A 65% CONTROLLING INTEREST IN SKYPE
## TO AN INVESTOR GROUP

27          53.    On September 1, 2009, in press releases from Menlo Park, California, the Skype

28  Companies and an investor group led by Silver Lake Partners announced that they had negotiated

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1   and executed and/or caused to be executed a definitive agreement ("Purchase Agreement") in which

2   the investor group purchased a 65 percent controlling interest in the Skype Companies from

3   Defendant eBay, Inc.

4   54.   According to public information, the conditions of the Skype 2009 Purchase

5   Agreement includes covenants and conditions that the purchasers must continue operating Skype in

6   the normal course of business, consistent with Skype's past practices.

7   55.   Skype's normal business operations and past practices include reproducing, without

8   permission, Joltid's Copyrighted Works and unauthorized derivative works based upon Joltid's

9   Copyrighted Works.  Those normal business operations and past practices also include distributing,

10   without permission, Joltid's Copyrighted Works and unauthorized derivative works based upon

11   Joltid's Copyrighted Works through the Skype telephony software application to new and registered

12   Skype users. Additionally, upon information and belief, Skype, in the normal course of its business,

13   will also impermissibly continue to modify and prepare unauthorized derivative works of Joltid's

14   Copyrighted Works.

15   56.   Members of the investor group purchasing a 65% controlling interest in Skype from

16   Defendant eBay pursuant to the Skype 2009 Purchase Agreement includes the following named

17   investors:  Silver Lake Partners, Index Ventures, Andreessen Horowitz, and the Canada Pension

18   Plan Investment Board.

19   57.   Upon information and belief each of Silver Lake Partners, Index Ventures,

20   Andreessen Horowitz and the Canada Pension Plan Investment Board contributed the funds and

21   coordinated and participated in the negotiations, as well as negotiated, executed and/or caused to be

22   executed the Skype 2009 Purchase Agreement, collectively assuming a 65% controlling interest in

23   Skype.

24   58.   Upon information and belief, Defendant Volpi is also an investor and is the person

25   who conceived and organized the transaction resulting in the Skype 2009 Purchase Agreement.

26   Volpi took these acts, notwithstanding the fact that he personally knew since on or about March 12,

27   2009 that Joltid had terminated the License Agreement and that, as a consequence, from and after

28

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1    March 12, 2009, the Skype Companies and each of its existing and new users of the Skype

2    application infringed Joltid's Copyrighted Works.

3          59.    The Skype 2009 Purchase Agreement reportedly valued Skype at a total of

4    $2.75 billion dollars.  eBay sold the 65% controlling interest in the Skype Companies to the investor

5    group for approximately $1.9 billion dollars in cash, with a note from the buyers in the principal

6    amount of $125 million dollars.

7          60.    Following the closing of the Skype 2009 Purchase Agreement, Defendant eBay, Inc.

8    will retain a 35% equity interest in the Skype Companies.

9          61.    Upon information and belief, although Defendant eBay will retain a minority equity

10   interest of 35% in the Skype Companies, eBay will continue to jointly exercise management

11   authority, control and direction over Skype in coordination with the investors group and reap great

12   financial benefits from Skype's unauthorized and infringing uses of Plaintiff's Copyrighted Works.

13   An eBay press release quoted John Donahoe, eBay's President and Chief Executive Officer, as

14   stating that the sale of the Skype Companies "achieves our [eBay's] goal of delivering short- and

15   long-term value to eBay and its stockholders, without the possible delays and market risk of an IPO .

16   . . Selling Skype now at this great valuation, while retaining an equity stake, makes sense for the

17   company."  The same press release quotes Mr. Donahoe as stating, on eBay's behalf, that the Skype

18   2009 Purchase Agreement "is a great deal, unlocking both immediate and long-term value for eBay

19   and tremendous potential for Skype . . .We've acted decisively on a deal that delivers a high

20   valuation, gives us significant cash up-front and lets us retain a meaningful minority stake with

21   talented partners."

22         62.    The Defendant investors and eBay have a collective interest in Skype's continued and

23   additional infringing and unauthorized use of Joltid's Copyrighted Works.  Revenue generated for

24   the benefit of eBay and the investor group is directly tied to increasing the number of Skype users

25   and potential users who are drawn to Skype's website to download and use Skype's telephony

26   software application (including Joltid's Copyrighted Works).  Egon Durban, managing director at

27   Silver Lake Partners, is quoted in a press release as stating that "Skype is an innovative, next-

28   generation company that has changed how people and businesses communicate with each other.

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-16-

1    This Skype 2009 sale transaction benefits all parties involved and will allow Skype the opportunity

2    to accelerate the growth of its business by harnessing the deep technological and company

3    development expertise that resides within the investor group. Josh Silverman has done a strong job

4    leading the company and we look forward to working with Josh and his team to grow the Skype

5    franchise."

## THE DEFENDANT INVESTORS' ACTIVELY CONTROL

## THE SKYPE COMPANIES

8    63.    The Defendant investors have, as a result of the Skype 2009 Purchase Agreement,

9    assumed a 65% controlling interest in Skype and, pending closing of the transaction, have required

10   that the Skype Companies continue the unauthorized uses of Joltid's Copyrighted Works.  The

11   Defendant investors funded the cash portion of the transaction and the Defendant investors are now

12   directing and controlling relevant operations of the Skype Companies, in accordance with the

13   provisions of the Purchase Agreement.  The Defendant investors operate the Skype Companies in

14   concert with Defendant eBay, until formal closing, with the collective goal and interest of increasing

15   Skype users and increasing the revenue derived from that use.

16   64.    Each of the Defendant investors has the experience, skill and human resources to

17   actively control the Skype Companies.

18   a.    Silver Lake Partners, a Defendant investor and a named party to the Skype

19   2009 Purchase Agreement, is a leading investment firm focused on large scale

20   investments in technology, technology enabled, and related growth industries.

21   Press releases indicate that its mission is to function as a value-added partner

22   to the management teams of the world's leading technology franchises.  Silver

23   Lake Partners is an experienced investor with a portfolio which includes or

24   has included technology industry leaders such as Ameritrade, Avago,

25   Business Objects, Gartner, Instinet, Intelsat, NASDAQ, Sabre/Travelocity,

26   Seagate Technology, SunGard Data Systems and UGS.

27   b.    Index Ventures, another Defendant investor, and also a named party to the

28   Skype 2009 Purchase Agreement, is a leading venture capital firm active in

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-17-

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1    technology, biotech and clean technology venture investing since 1996.

2    Index Ventures is dedicated to helping top entrepreneurial teams in the

3    Information Technology and Life Science sectors build their companies into

4    market defining global leaders.  The firm has offices in Geneva, London and

5    Jersey and focuses on investments from seed through growth stage

6    companies.  Index Venture's portfolio includes Lehigh Technologies Inc.,

7    Playfish and Weatherbill and exits of note include MySQL (the world's most

8    popular open source database recently acquired by Sun), Last.fm (the world's

9    largest social music platform, recently acquired by CBS) and BioXell (BIOX,

10   floated on the SWX in 2007).

11   c.    Andreessen Horowitz is another Defendant investor and a named party to the

12         Skype 2009 Purchase Agreement.  It is a 300 million dollar venture fund,

13         established in June 2009 by entrepreneurs, experienced investors and

14         engineers, Marc Andreessen and Ben Horowitz.  Mr. Andreessen and Mr.

15         Horowitz are the general partners of Andreessen Horowitz and Mr.

16         Andreessen is also a member of Defendant eBay's board of directors.

17         Andreessen Horowitz reportedly contributed $50 million dollars to the

18         purchase of the Skype Companies.

19   d.    The Canada Pension Plan Investment Board ("CPP Investment Board") is

20         another Defendant investor and party to the Skype 2009 Purchase Agreement.

21         The CPP Investment Board describes itself as a professional investment

22         management organization that invests the funds not needed by the Canada

23         Pension Plan to pay current benefits on behalf of 17 million Canadian

24         contributors and beneficiaries.  To build a diversified portfolio of assets for

25         the Canada Pension Plan, the CPP Investment Board invests in public

26         equities, private equities, real estate, inflation-linked bonds, infrastructure and

27         fixed income instruments.  As of  June 30, 2009, the Canada Pension Plan

28         fund totaled $116.6 billion dollars.

e.     Volpi is also a Defendant investor and is jointly and severally liable, along with the other Defendant investors and eBay, for the direct infringement of Joltid's Copyrighted Works by both the Skype Companies, as well as by Skype's users.

65.     Since July, 2009, Volpi has acted as a partner of Index Ventures, a named party to the Skype 2009 Purchase Agreement.  Prior to joining Index Ventures as a partner, Volpi served on the board of directors of the Skype Companies and, as a result, gained familiarity with the Skype Companies' telephony software application.  On information and belief, Volpi also is aware that, prior to the termination of the License Agreeement, the Skype Companies have been infringing Joltid's Copyrighted Works through unauthorized acts of modification.  On information and belief, Volpi also is aware that, since termination of the License Agreement, the Skype Companies have been inducing and contributing to the infringement of Joltid's Copyrighted Works by third party existing and new users of the Skype application.  Despite knowing the Skype Companies' role in infringing and/or facilitating the infringement of Joltid's Copyrighted Works on a massive worldwide scale, Volpi elected to take over control of the Skype Companies.  Volpi openly discussed his personal goal of taking over Skype, telling a reporter from the New York Times that he implemented a plan to achieve this goal shortly after joining Index Ventures as a partner in July 2009.

66.     Exploiting his personal and professional relationships, Volpi was ultimately successful in single-handedly orchestrating the multi-billion dollar transaction, realizing his personal goal of taking over Skype.  Volpi sold his Skype Companies acquisition plan to other influential individuals, including Danny Rimer, another partner at Index Ventures.  Once Volpi had secured Mr. Rimer's support and, undoubtedly, the millions of dollars in Index Ventures funding that would follow, Volpi then contacted and/or directed the contact of other Defendant investors, including Silver Lake Partners and Andreessen Horowitz.

67.     Upon information and belief, Volpi had a controlling and integral role in the Skype 2009 sale transaction, directing, influencing and negotiating the Skype 2009 Purchase Agreement, including the covenants and conditions in the agreements which require that the Defendant investor

1    group must continue operating Skype in the normal course of business, consistent with the Skype

2    Companies' past practices.  The London Times describes Volpi as the "mastermind" behind the

3    transaction and stated in a headline that "Mike Volpi Leads Bidders For Skype Takeover".

4          68.    Upon information and belief, Volpi maintains an influential role over the remaining

5    members of the Defendant investor group and the related operational control, management and

6    direction of the Skype Companies, and arrangements exist by which he will personally benefit

7    pecuniarily from those continued, infringing operations.

8          69.    Plaintiff is informed and believes that each of the Defendant investors conducted

9    and/or caused to be conducted extensive due diligence into Skype's business activities, litigations

10   and licensing agreements in preparation for its almost three billion dollar acquisition of Skype.  As a

11   result, each of the Defendant investors was at all times aware that the License Agreement between

12   Joltid and Skype had been terminated and was further aware of Skype's past and continuing

13   unauthorized and infringing uses of Joltid's Copyrighted Works.

14         70.    Although each of the Defendant investors was actually and constructively aware of

15   the continuing infringement of Joltid's Copyrighted Works, the Defendant investors failed to cause

16   the Skype Companies to cease infringing Joltid's Copyrighted Works and prevent the availability of

17   Joltid's Copyrighted Works for download as part of Skype's telephony software application.  In fact,

18   the Defendant investor group continued with the acquisition, investing over two billion dollars in

19   order to realize their goals of generating extraordinary revenue from Skype's telephony software

20   application, revenue that would not have been possible without the unauthorized infringement of

21   Joltid's Copyrighted Works.

22         71.    The investor group may include additional and as yet unknown and unnamed

23   members who directed, controlled and/or materially contributed to the unauthorized use and direct

24   infringement of Joltid's Copyrighted Works.  These unnamed persons may also include investors

25   who acquired or retained a direct financial interest in the infringement of Joltid's Copyrighted

26   Works by the Skype Companies and by users of the Skype application.  Plaintiff expects that,

27   following discovery, Plaintiff will be able to supplement this pleading with the additional

28   information.  Accordingly, Plaintiff currently includes these additional defendants as DOES 1-10.

-20-

72.     At all times since September 1, 2009, the Defendant investor group and eBay have exercised operational control over the Skype Companies' unauthorized reproduction, distribution, preparation of derivative works and/or modifications of Joltid's Copyrighted Works.  On September 2, 2009, Joltid sent cease and desist letters to each of the Skype Companies, eBay and every Defendant investor advising them of their liability and exposure for the direct infringement of Joltid's Copyrighted Works by both Skype and Skype's users.

## FIRST CLAIM FOR RELIEF

**Direct Copyright Infringement (Reproduction) Against The Skype Companies**

73.     Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-72 of this Complaint as though fully set forth herein.

74.     The Skype Companies, without authority, are making, causing to be made, and purporting to authorize the making of unauthorized copies of Plaintiff's Copyrighted Works. Additionally, the Skype Companies prepared derivative works based upon Joltid's Copyrighted Works by modifying Joltid's Copyrighted Works without permission and reproduced and distributed those unauthorized derivative works.  Further, the Skype Companies continue to reproduce and distribute the unauthorized derivative works.  Defendants' conduct constitutes direct infringement of Plaintiff's exclusive rights under the Copyright Act to reproduce their copyrighted works.  17 U.S.C. § 106(1).

75.     Defendants' acts of infringement have been willful, intentional, and purposeful, in disregard of and indifferent to the rights of Plaintiff.

76.     The Skype Companies have continued to infringe Joltid's Copyrighted Works on a massive scale.  Each day that the Skype Companies continue to make available the Skype Internet telephony software for download, Skype users download Joltid's Copyrighted Works approximately six times per second.  Based on conservative estimates, Joltid believes that its Copyrighted Works are infringed in the United States at least 100,000 times a day through these unauthorized actions.

77.     As a direct and proximate result of Defendants' infringement of Plaintiff's Copyrighted Works and exclusive rights under the Copyright Act, Plaintiff is entitled to the

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1  maximum statutory damages pursuant to 17 U.S.C. § 504(c) up to $150,000 for each act of direct

2  infringement by the Skype Companies.

3      78.    Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b), Plaintiff shall be

4  entitled to its actual damages plus Defendants' profits from infringement, as will be proven at trial.

5      79.    Plaintiff is entitled to its costs, including reasonable attorneys' fees, pursuant to

6  17 U.S.C. § 505.

7      80.    Defendants' conduct is causing and, unless enjoined by this Court, will continue to

8  cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money.

9  Plaintiff has no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a

10  permanent injunction requiring Defendants to employ reasonable methodologies to prevent or limit

11  infringement of Plaintiff's Copyrighted Works and exclusive rights under the Copyright Act.

12                          **SECOND CLAIM FOR RELIEF**

13          **Direct Copyright Infringement (Preparation of Derivative Works)**

14                          **Against the Skype Companies**

15      81.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-80

16  of this Complaint as though fully set forth herein.

17      82.    The Defendant Skype Companies, without the permission or consent of Plaintiff, and

18  without authority, have modified and continue to modify Plaintiff's Copyrighted Works and prepare

19  derivative works.  Defendants' conduct constitutes direct infringement of Plaintiffs' exclusive rights

20  under the Copyright Act to prepare derivative works based on Plaintiff's own Copyrighted Works.

21  17 U.S.C. § 106(2).

22      83.    Defendants' acts of infringement have been willful, intentional, and purposeful, in

23  disregard of and indifferent to the rights of Plaintiff.

24      84.    The Skype Companies have continued to infringe Joltid's Copyrighted Works on a

25  massive scale.  Each day that the Skype Companies continue to make available their Internet

26  telephone software for download, Skype users download Joltid's Copyrighted Works approximately

27  six times per second.  Based on conservative estimates, Joltid believes that its Copyrighted Works

28  are infringed in the United States at least 100,000 times a day through these unauthorized actions.

-22-

85.     As a direct and proximate result of Defendant's infringement of Plaintiff's Copyrighted Works and exclusive rights under copyright, Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c) up to $150,000 for each act of direct infringement by the Skype Companies or such other amounts as may be proper under 17 U.S.C. § 504(c).

86.     Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b), Plaintiff is entitled to its actual damages plus Defendants' profits from infringement, as will be proven at trial.

87.     Plaintiff is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

88.     Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction requiring the Defendant Skype Companies to employ reasonable methodologies to prevent or limit infringement of Plaintiff's Copyrighted Works and exclusive rights under the Copyright Act.

## THIRD CLAIM FOR RELIEF

### Direct Copyright Infringement (Distribution) Against the Skype Companies

89.     Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-88 of this Complaint as though fully set forth herein.

90.     The Defendant Skype Companies, without the permission or consent of Plaintiff, and without authority, are distributing Plaintiff's Copyrighted Works and derivative works based on Plaintiff's Coyprighted Works to the public by making available to Skype users copies of the Copyrighted Works maintained on Skype's website.  Defendant's conduct constitutes direct infringement of Plaintiff's exclusive rights under the Copyright Act to distribute its Copyrighted Works to the public. 17 U.S.C. § 106(3),

91.     The Skype Companies' acts of infringement have been willful, intentional, and purposeful, in disregard of and indifferent to the rights of Plaintiff.

92.     The Skype Companies have continued to infringe Joltid's Copyrighted Works on a massive scale.  Each day that the Skype Companies continue to make available its Internet telephone

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

software for download, Skype users download Joltid's Copyrighted Works approximately six times per second.  Based on conservative estimates, Joltid believes that its Copyrighted Works are infringed in the United States at least 100,000 times a day through these unauthorized actions.

93.     As a direct and proximate result of the Skype Companies' infringement of Plaintiff's Copyrighted Works and exclusive rights under the Copyright Act, Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c) up to $150,000 for each act of direct infringement by the Skype Companies or such other amounts as may be proper under 17 U.S.C. § 504(c).

94.     Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b), Plaintiff is entitled to its actual damages plus Defendants' profits from infringement, as will be proven at trial.

95.     Plaintiff is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

96.     Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money.  Plaintiff has no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction requiring Defendants' to employ reasonable methodologies to prevent or limit infringement of Plaintiff's Copyrighted Works and exclusive rights under the Copyright Act.

## FOURTH CLAIM FOR RELIEF

### Inducement of Copyright Infringement Against All Defendants

97.     Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-96 of this Complaint as though fully set forth herein.

98.     Skype users have directly infringed and are infringing Plaintiff's rights in its Copyrighted Works by, *inter alia*, downloading infringing copies of Plaintiff's Copyrighted Works and/or derivative works based upon the Copyrighted Works from Skype's website and reproducing and/or distributing copies of Plaintiff's Copyrighted Works or derivative works based upon the Copyrighted Works.  Skype users are therefore directly infringing Plaintiff's exclusive rights of reproduction and distribution under 17 U.S.C. § 106(1) and (3).

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

99.    Defendants are liable under the Copyright Act for inducing the infringing acts of Skype users.

100.    At all times since at least 2003, the Skype Companies have promoted Skype's telephony software application by promoting its use and encouraging and facilitating the download of Skype's telephony software (including Plaintiff's Copyrighted Works and/or derivative works) by Skype users.  Since Joltid terminated the License Agreement in 2009, their clear expression and other affirmative steps, the Skype Companies have unlawfully induced and fostered copyright infringement by Skype users.

101.    At all times since at least 2005, the Skype Companies and/or eBay have promoted the Skype telephony software application by promoting its use and encouraging and facilitating its download by Skype users.  Since Joltid terminated the License Agreement in 2009, by their clear expression and other affirmative steps, the Skype Companies and/or eBay have been unlawfully inducing and fostering copyright infringement by Skype users.

102.    At all times since at least September 1, 2009, Skype, eBay, and/or each of the Defendant investors have also promoted Skype's telephony software application known to infringe Plaintiff's Copyrighted Works and/or derivative works based on Plaintiff's Copyrighted Works, by promoting its use and encouraging and facilitating its download by Skype users. By their clear expression and other affirmative steps, the Skype Companies, eBay, and/or each of the Defendant investors are unlawfully inducing and fostering copyright infringement by Skype users.

103.    All Defendants are fully aware that Plaintiff's Copyrighted Works and derivative works based on Plaintiff's Copyrighted Works are protected and the property of Plaintiff and all Defendants are equally aware that Skype users downloading and using the Skype telephony software are unlawfully reproducing and distributing Plaintiff's Copyrighted Works and derivative works. Defendants intend, encourage and induce Skype users to download the Skype telephony software in spite of the resulting unauthorized infringement.

104.    Defendants' acts of inducing the direct infringement of Joltid's Coyprighted Works by Skype's users have been willful, intentional and purposeful, in disregard of and indifferent to the rights of Plaintiff.

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

105.    Since termination of the License Agreement, infringement of Joltid's Copyrighted Works has continued on a massive scale.  Each day that the Skype Companies continue to make available its Internet telephone software for download, Skype users download Joltid's Copyrighted Works approximately six times per second.  Based on conservative estimates, Joltid believes that its Copyrighted Works are infringed in the United States at least 100,000 times a day through Defendants' unauthorized actions.  Indeed, hundreds of thousands of Skype users have directly infringing Joltid's exclusive rights under the Copyright Act by downloading and using the Skype telephony software application (including Joltid's Copyrighted Works) since the effective dates of registration of Joltid's Copyrighted Works.

106.    As a direct and proximate result of the Skype users' direct infringement of Plaintiff's Copyrighted Works and exclusive rights under the Copyright Act, Defendants are jointly and severally liable with the Skype users up to the maximum statutory damage pursuant to 17 U.S.C. § 504(c) of $150,000 for each direct infringement by each Skype user of each Copyrighted Work infringed, where such direct infringement took place on or after the effective date of registration of Joltid's Copyrighted Works.  Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b), Plaintiff is entitled to its actual damages plus Defendants' profits from all infringements occurring on or after the effective date of registration of Joltid's Copyrighted Works, as will be proven at trial.

107.    Plaintiff is entitled to its actual damages plus Defendants' profits from all infringements occurring prior to the effective date of registration of Joltid's Copyrighted Works, as will be proven at trial.

108.    Plaintiff is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

109.    Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiff's great and irreparable injury that cannot be fully compensated or measured in money.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction requiring Defendants to employ reasonable methodologies to prevent or limit infringement of Plaintiff's Copyrighted Works.

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1

**FIFTH CLAIM FOR RELIEF**

2

**Contributory Copyright Infringement Against All Defendants**

3      110.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-109

4   of this Complaint as though fully set forth herein.

5      111.    Skype users have directly infringed and are infringing Plaintiff's rights in its

6   Copyrighted Works by, *inter alia*, downloading infringing copies of Plaintiff's Copyrighted Works

7   and/or derivative works based upon the Copyrighted Works from Skype's website and reproducing

8   and/or distributing copies of Plaintiff's Copyrighted Works and derivative works based upon the

9   Copyrighted Works.  Skype's users are therefore directly infringing Plaintiff's exclusive rights of

10   reproduction and distribution under 17 U.S.C. § 106(1) and (3).

11      112.    At all times since Joltid terminated the License Agreement, the Skype Companies

12   have had the actual and constructive knowledge that its users directly infringe Plaintiff's

13   Copyrighted Works.  Furthermore, the Skype Companies have materially assisted its users in

14   directly infringing Plaintiff's Copyrighted Works by making Skype's telephony software application

15   (which includes Plaintiff's Copyrighted Works) available to Skype's users and facilitating the

16   downloading of Skype's telephony software by Skype's users.

17      113.    At all times since Joltid terminated the License Agreement, Defendant eBay has had

18   the actual and constructive knowledge that Skype's users directly infringe Plaintiff's Copyrighted

19   Works and eBay has materially assisted Skype's users to directly infringe Plaintiff's Copyrighted

20   Works and derivative works prepared from the Copyrighted Works by promoting and facilitating the

21   download and distribution of Skype's telephony software application and attempting to increase the

22   number of Skype users.

23      114.    At all times since on or about September 1, 2009, the Defendants in the investor

24   group have had the actual and constructive knowledge that Skype's users directly infringe Joltid's

25   Copyrighted Works and derivative works prepared from the Copyrighted Works and have materially

26   assisted Skype's users to infringe Joltid's Copyrighted Works by promoting and facilitating the

27   download and distribution of Skype's telephony software application and attempting to increase the

28   number of Skype users.

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-27-

115.   All Defendants have actual and constructive knowledge that Skype users are employing the Skype website to copy and/or distribute Joltid's Copyrighted Works.

116.   Acting with this actual and constructive knowledge, Defendants enable, facilitate and materially contribute to each of the Skype users' direct copyright infringement of Plaintiff's Copyrighted Works, which could not occur without Defendants' enablement.

117.   Defendants' acts of contributing to the direct infringement of Joltid's Copyrighted Works by Skype's users have been willful, intentional, and purposeful, in disregard of and indifferent to the rights of Plaintiff.

118.   Since termination of the License Agreement, infringement of Joltid's Copyrighted Works has continued on a massive scale.  Each day that Skype continues to make available its Internet telephone software for download, Skype users download Joltid's Copyrighted Works approximately six times per second.  Based on conservative estimates, Joltid believes that its Copyrighted Works are infringed in the United States at least 100,000 times a day through Defendants' unauthorized actions.  Indeed, hundreds of thousands of Skype users have directly infringing Joltid's exclusive rights under the Copyright Act by downloading and using the Skype telephony software application (including Joltid's Copyrighted Works) since the effective dates of registration of Joltid's Copyrighted Works.

119.   As a direct and proximate result of the Skype users' direct infringement of Plaintiff's Copyrighted Works and exclusive rights under the Copyright Act, Defendants are jointly and severally liable with the Skype users for maximum statutory damage pursuant to 17 U.S.C. § 504(c) up to $150,000 for each direct infringement by each Skype user of each Copyrighted Work infringed, where such direct infringement took place on or after the effective date of registration of Joltid's Copyrighted Works.  Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b), Plaintiff is entitled to its actual damages plus Defendants' profits from all infringements occurring on or after the effective date of registration of Joltid's Copyrighted Works, as will be proven at trial.

120.   Plaintiff is entitled to its actual damages plus Defendants' profits from all infringements occurring prior to the effective date of registration of Joltid's Copyrighted Works, as will be proven at trial.

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

121.    Plaintiff is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

122.    Defendants' conduct is causing, and unless enjoined by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction requiring Defendants to employ reasonable methodologies to prevent or limit infringement of Plaintiff's Copyrighted Works.

## SIXTH CLAIM FOR RELIEF

### Vicarious Copyright Infringement Against All Defendants

123.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-122 of this Complaint as though fully set forth herein.

124.    Skype users have directly infringed and are directly infringing Plaintiff's rights in its Copyrighted Works by, *inter alia*, downloading infringing copies of Plaintiff's Copyrighted Works and/or derivative works based upon  Plaintiff's Copyrighted Works from Skype's website and reproducing and/or distributing copies of Plaintiff's Copyrighted Works, including derivative works. Skype's users are therefore directly infringing Plaintiffs' exclusive rights of reproduction and distribution under 17 U.S.C. § 106(1) and (3).

125.    At all times, the Skype Companies have significantly and directly benefited from the widespread infringement by its users.  Skype's telephony software (which includes Plaintiffs' Copyrighted Works), acts as a substantial draw, attracting users to Skype's websites and increasing the number of users who use Skype's services.  Skype derives substantial revenue tied directly and indirectly to Skype's telephony software application (which includes Plaintiff's Copyrighted Works).

126.    At all times relevant to this action, Defendant eBay maintained a direct financial interest in the unauthorized and infringing uses of Joltid's Copyrighted Works.  The greater the revenue generated by such use (all of which is directly or indirectly attributable to Skype's telephony software and the unauthorized and infringing uses of Joltid's Copyrighted Works), the

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1    greater the financial gain realized by eBay, as Skype's sole shareholder, and later, as a significant

2    shareholder of the Skype Companies.

3          127.    At all times relevant to this claim, Defendant eBay maintained the right and ability to

4    supervise Skype's unauthorized and infringing conduct, first as Skype's sole shareholder, and later,

5    as a significant shareholder of Skype.

6          128.    At all times since on or about September 1, 2009, the Defendant investors have

7    maintained a direct financial interest in Skype's unauthorized and infringing uses of Joltid's

8    Copyrighted Works.  The greater the revenue generated by that use (all of which is directly or

9    indirectly attributable to Skype's telephony software and the unauthorized and infringing use of

10   Joltid's Copyrighted Works), the greater the individual financial gain realized by each of the

11   Defendant investors.

12         129.    At all times relevant to this action, the Defendant investors have maintained the right

13   and ability to supervise Skype's unauthorized and infringing conduct in coordination with the Skype

14   Companies and eBay.  As a condition of the Skype 2009 Sale, the Defendant investors agreed to

15   continue operating Skype in the normal course of business, which includes reproducing, without

16   permission, Joltid's Copyrighted Works and unauthorized derivative works based upon Joltid's

17   Copyrighted Works and distributing, without permission, Joltid's Copyrighted Works and

18   unauthorized derivative works based upon Joltid's Copyrighted Works through the Skype Internet

19   telephony software application to new and registered Skype users. Additionally, the Skype

20   Companies, in the normal course of their business, will also impermissibly continue to modify and

21   prepare unauthorized derivative works of one or both of Joltid's Coyprighted Works.

22         130.    Defendants are vicariously liable for the infringing acts of Skype users.  Defendants

23   have both the right and the ability to supervise the Skype users' infringing conduct, and to prevent

24   Skype users from infringing Plaintiff's Copyrighted Works.

25         131.    Defendants' acts have vicariously infringed Joltid's Copyrighted Works and such

26   acts have been willful, intentional, and purposeful, in disregard of and indifferent to the rights of

27   Plaintiff.

28

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

Case No. 3:09-CV-04299-SC                                    First Amended Complaint for Copyright Infringement

132.     Since termination of the License Agreement, infringement of Joltid's Copyrighted Works has continued on a massive scale.  Each day that Skype continues to make available its Internet telephone software for download, Skype users download Joltid's Copyrighted Works approximately six times per second.  Based on conservative estimates, Joltid believes that its Copyrighted Works are infringed in the United States at least 100,000 times a day through Defendants' unauthorized actions.  Indeed, hundreds of thousands of Skype users have directly infringing Joltid's exclusive rights under the Copyright Act by downloading and using the Skype telephony software application (including Joltid's Copyrighted Works) since the effective dates of registration of Joltid's Copyrighted Works.

133.     As a direct and proximate result of the Skype users' direct infringement of Plaintiff's Copyrighted Works and exclusive rights under the Copyright Act, Defendants are jointly and severally liable with the Skype users for maximum statutory damage pursuant to 17 U.S.C. § 504(c) up to $150,000 for each direct infringement by each Skype user of each Copyrighted Work infringed, where such direct infringement took place on or after the effective date of registration of Joltid's Copyrighted Works.  Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b), Plaintiff is entitled to its actual damages plus Defendants' profits from all infringements occurring on or after the effective date of registration of Joltid's Copyrighted Works, as will be proven at trial.

134.     Plaintiff is entitled to its actual damages plus Defendants' profits from all infringements occurring prior to the effective date of registration of Joltid's Copyrighted Works, as will be proven at trial.

135.     Plaintiff is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

136.     Defendants' conduct is causing, and unless enjoined by this Court, will continue to cause Plaintiff's great and irreparable injury that cannot fully be compensated or measured in money.  Plaintiff has no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction requiring Defendants to employ reasonable methodologies to prevent or limit infringement of Plaintiff's Copyrighted Works.

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Joltid Limited prays for judgment against Defendants as follows:

(1)     For a judicial determination and declaration that Defendant Skype has directly infringed, and continues to directly infringe Plaintiff's Copyrighted Works;

(2)     For a judicial determination and declaration that each and every Defendant, including the Skype Companies, has induced, and continues to induce, the infringement of Plaintiff's Copyrighted Works;

(3)     For a judicial determination and declaration that each and every Defendant, including the Skype Companies, has contributed to, and continues to contribute to, vicariously and or /contributorily, to the infringement of Plaintiff's Copyrighted Works;

(4)     For a judicial determination and decree that each Defendants' infringement of Plaintiffs' Copyrighted Works has been and continues to be, willful and deliberate;

(5)     For a permanent injunction requiring that each Defendant and its agents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns, and all person acting in concert or participation with each or any of them cease directly or indirectly infringing, or causing, enabling, facilitating , encouraging, promoting and inducing or participating in the infringement of any of Plaintiff's Copyrighted Works or exclusive rights protected by the Copyright Act, whether now in existence or hereafter created;

(6)     For statutory damages pursuant to 17 U.S.C. § 504(c).  Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b), Plaintiff shall be entitled to actual damages plus Defendants' profits from infringement, as will be proven at trial.

(8)     For Plaintiff's costs, including reasonable attorneys' fees pursuant to 17 U.S.C. § 505,

(9)     For pre and post-judgment interest according to law;

(10)    For any such other and further relief as the Court may deem just and proper under the circumstances.

Case No. 3:09-CV-04299-SC                                        First Amended Complaint for Copyright Infringement

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

DATED:  October 6, 2009

HENNIGAN, BENNETT & DORMAN LLP


By: _____ /s/ Lawrence M. Hadley _____
       Roderick G. Dorman
       Lawrence M. Hadley

Attorneys for Plaintiff
JOLTID LIMITED

## **Demand for Jury Trial**

Plaintiff hereby demands a jury trial pursuant to Rule 38 of the Federal Rules of Civil Procedure as to all issues so triable.


DATED:  October 6, 2009                    HENNIGAN, BENNETT & DORMAN LLP


By:_____ */s/ Lawrence M. Hadley*_____
                                                Roderick G. Dorman
                                                Lawrence M. Hadley

Attorneys for Plaintiff
JOLTID LIMITED

Case No. 3:09-CV-04299-SC                    First Amended Complaint for Copyright Infringement