# EXHIBIT 2

# TO THE SUPPLEMENTAL DECLARATION OF MICHELLE M. UMBERGER IN SUPPORT OF SUMMARY JUDGMENT OF UNENFORCEABILITY OF THE PATENTS-IN-SUIT DUE TO INEQUITABLE CONDUCT

Dockets.Justia.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA


THE REGENTS OF THE UNIVERSITY
OF CALIFORNIA, a California
corporation,

        Plaintiff,

   vs.                      No. C 0305669 (JW)

MICRO THERAPEUTICS, INC., a
Delaware corporation, and
DENDRON GmbH, a German
corporation,

        Defendants and
        Third Party Plaintiffs,

   vs.

BOSTON SCIENTIFIC
CORPORATION, a Delaware
corporation, and TARGET
THERAPEUTICS, INC., a
Delaware corporation,

        Third Party Defendants.

---

DEPOSITION OF FRANCO COSSU

Los Angeles, California

Wednesday, May 18, 2005


Reported by:
DENISE BARDSLEY
CSR No. 11241

JOB No. 33255

www.sarnoffcourtreporters.com

46 Corporate Park, Suite 100    445 South Figueroa St., Suite 2950
Irvine, CA 92606            Los Angeles, CA 90071

phone  877.955.3855
fax     949.955.3854



SARNOFF
Court Reporters and
Legal Technologies

|   | 1 | conversations with Dr. Gugliemi? |
|---|---|---|
|   | 2 | A    Any conversation? |
|   | 3 | Q    That's correct. |
|   | 4 | A    I don't recall if I had previous |
|   | 5 | conversations with the man. |
|   | 6 | Q    So you arrived at the translation of |
|   | 7 | "breakdown" on your own.  How did you do that? |
|   | 8 | A    Because of "rottura," it is "breakdown," it |
|   | 9 | is a breakdown of the electro tip, the tip broke down. |
| 09:46 | 10 | Q    There is a footnote there.  Do you see the |
|   | 11 | translator's note?  The term "breakdown" is used here |
|   | 12 | in its meaning of decomposition? |
|   | 13 | A    Uh-huh. |
|   | 14 | Q    Did you some to that conclusion on your own |
|   | 15 | as well? |
|   | 16 | MR. PREMO:  Objection; calls for |
|   | 17 | attorney-client communication, privileged. |
|   | 18 | MS. UMBERGER:  I'm asking for a yes-or-no |
|   | 19 | answer.  Are you instructing him not to answer? |
| 09:47 | 20 | MR. PREMO:  Yes. |
|   | 21 | (Instruction not to answer.) |
|   | 22 | BY MS. UMBERGER: |
|   | 23 | Q    Did you draft the translator's note that we |
|   | 24 | see on U10443? |
|   | 25 | A    Yes. |

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

```
 1    training beyond what we discussed earlier in your

 2    classical training?

 3              MR. SCHWILLINSKI:  Objection; asked and

 4    answered.

 5              THE WITNESS:  No.

 6    BY MS. UMBERGER:

 7         Q    Was it your understanding prior to speaking

 8    to either Dr. Gugliemi or Attorney Dawes that the

 9    stainless steel electrode could only decompose in

10    these experiments?

11         A    Would you rephrase the question, please?

12         Q    Sure.  Sure.

13              You stated that you concluded that

14    "breakdown" was used here to mean "decomposition" from

15    the first paragraph on U10443; is that correct?

16         A    In connection with that, it made sense, yes.

17         Q    And what part of that sentence led you to

18    believe that the electro tip decomposed?

19         A    Because electrolyzation is basically a

20    decomposition process, it is an electrical -- it is a

21    chemical decomposition caused by the electrical

22    signals flowing from positive to negative, and the

23    transformation into ions of the particular chemicals

24    involved.

25         Q    Why didn't you simply use the word
```

09:50    10

09:51    20

```
 1    "decomposition" in your translation rather than

 2    "breakdown"?

 3        A    Because a translator has to try and be as

 4    accurate as possible.  I was using words that are --

 5    if they exist in both languages and they are similar

 6    and reflect the same meaning, especially in legal

 7    translation.

 8        Q    Did you talk to Attorney Dawes about the

 9    translator's note that we see on U10443 prior to

10    drafting it?

11            MR. PREMO:  Objection; calls for an

12    attorney-client communication, privileged.

13            MS. UMBERGER:  And are you instructing him

14    not to answer?

15            MR. PREMO:  Yes.

16            (Instruction not to answer.)

17    BY MS. UMBERGER:

18        Q    Did you speak to Attorney Dawes about the

19    translation of "rottura" prior to preparing this May

20    27th, 1996 translation?

21            MR. PREMO:  Objection; privileged, calls for

22    attorney-client communication.

23            MS. UMBERGER:  And you're instructing not to

24    answer every time you make that objection?  I just

25    want to make the record clear.
```

09:52  10

09:52  20

```
 1              MR. PREMO:  Yes.

 2                   (Instruction not to answer.)

 3    BY MS. UMBERGER:

 4         Q    Are there any prior drafts of this

 5    translation?

 6         A    Not in my possession.

 7         Q    Were there ever any prior drafts of this

 8    translation?

 9         A    I guess -- I can only answer your question

10    based on my general practice, and I probably had it in

11    my computer and I just write over it.  I don't keep a

12    draft 1, 2, you know, none of this petty kind of

13    business.

14         Q    Do you recall if you ever sent any other

15    draft of the translation, other than the one we see in

16    Exhibit 224, to either Dr. Gugliemi or Attorney Dawes?

17              MR. PREMO:  Objection; assumes facts not in

18    evidence.

19    BY MS. UMBERGER:

20         Q    Do you recall if you sent any other

21    translation of the 1983 Bari paper?

22         A    No, I don't recall, and I don't think I did.

23         Q    Can the Italian word "rottura" mean "break"?

24         A    Yes.

25         Q    Would you say that -- strike that.
```

1  English dictionaries in your office?

2      A      My office, I have a wide variety of -- and

3  reference works, particularly Italian Enciclopedias.

4      Q      Was there any particular reference that you

5  consulted more than others?

6          MR. SCHWILLINSKI:  Objection; vague.

7  BY MS. UMBERGER:

8      Q      You can answer if you understand.

9      A      I generally use the 28 or 33 volumes now with

09:56 10  the addition, this so-called -- oh, my goodness the

11  scenario that I have is 28 volumes, and it is the

12  reference, it is called the Treccani Enciclopedia

13  Institute of Treccani, T-r-e-c-c-a-n-i.

14      Q      Do you recall if you consulted that reference

15  while you were translating the 1983 Bari paper?

16      A      I do not recall.

17      Q      If I asked you for an Italian word for

18  "decomposition," what would you give me, just

19  generally?

09:57 20      A      "Decomposizione."

21      Q      When you spoke to Dr. Gugliemi by telephone,

22  did you ever discuss anything besides business or the

23  translation?

24          MR. PREMO:  Objection; mischaracterizes his

25  prior testimony and objection to the extent it calls

```
 1   third paragraph under "Conclusions" on page 10443.
 2       A    Okay.
 3       Q    I'm at the third paragraph under
 4   "Conclusions." Do you see that?
 5       A    Third paragraph, yes.
 6       Q    My next series of questions is going to be
 7   directed to a time frame prior to May 27th of 1996.
 8            Did you talk to Guido Gugliemi about what he
 9   understood the term "rottura" to mean in the context
10   of this paragraph?
11            MR. PREMO:  Objection, to the extent it calls
12   for an attorney-client communication, it is
13   privileged.
14            MS. UMBERGER:  And you're instructing him not
15   to answer?
16            MR. PREMO:  Yes.
17            (Instruction not to answer.)
18            MR. PREMO:  At this time I wanted to make
19   clear for the record that we are establishing the
20   attorney-client communication for a specific time
21   period, but there was -- if you look at some of the --
22   I think you need to sort of establish at what time we
23   are referring to because it is vague at this point.
24            I want to be clear as to what it is that I am
25   asserting a privilege to.
```

10:17  (line 10)
10:17  (line 20)

1      A     Not at all.

2      Q     Did you ever talk to Dr. Gugliemi about his

3    understanding of what "rottura" meant in the context

4    of the 1983 Bari paper prior to May 27th, 1996?

5            MR. PREMO:  Objection; calls for an attorney-

6    client communication, privileged.

7            MR. SCHWILLINSKI:  I just want to state for

8    the record so it is clear, as I stated yesterday, I

9    believe there may also be a basis for work product

10:27  10    privilege as well.

11            MS. UMBERGER:  And, again, this was based on

12    your belief that there was contemplated litigation in

13    1996?

14            MR. SCHWILLINSKI:  That is correct.

15   BY MS. UMBERGER:

16      Q     Do you recall whether you discussed the

17    translator's note that appears on U10443 with

18    Guido Gugliemi prior to May 27th, 1996?

19            MR. PREMO:  Objection; privilege, calls for

10:28  20    attorney-client communication.

21   BY MS. UMBERGER:

22      Q     Do you recall whether it was discussed with

23    Attorney Dawes the translation of "rottura" prior to

24    May 27th, 1996?

25            MR. PREMO:  Objection; privilege, calls for

|     | 1  | attorney-client communication. |
|-----|----|--------------------------------|
|     | 2  | MR. SCHWILLINSKI: Object to asked and |
|     | 3  | answered. |
|     | 4  | MS. UMBERGER: I believe this is 226. |
|     | 5  | (Deposition Exhibit 226 marked.) |
|     | 6  | BY MS. UMBERGER: |
|     | 7  | Q    Mr. Cossu, what is this document, |
|     | 8  | Exhibit 226? |
|     | 9  | A    Exhibit 226? |
| 10:28 | 10 | Q    Yes. |
|     | 11 | A    This is a test translation.  It was faxed to |
|     | 12 | me on May 10th, as it says here, by Dr. Gugliemi to |
|     | 13 | assess my ability to do the actual translation of a |
|     | 14 | document that I had no knowledge of. |
|     | 15 | Q    Did you speak to Dr. Gugliemi prior to |
|     | 16 | receiving this document? |
|     | 17 | A    I did, and I offered to do a no charge or |
|     | 18 | free test translation for him. |
|     | 19 | Q    When did he send you this document? |
| 10:29 | 20 | A    May 10, 196 -- 1996. |
|     | 21 | Q    This indicates it was sent by fax? |
|     | 22 | A    By fax, yes. |
|     | 23 | Q    Did you have an understanding of why |
|     | 24 | Dr. Gugliemi wanted you to do a test translation for |
|     | 25 | him? |

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

1    A    I offered it.

2    Q    I want to step back now to the first time you

3    ever spoke to Guido Gugliemi.  Was that prior to May

4    10th, 1996?

5    A    I have no recollection.  The only contact

6    that I remember was this concerning the test

7    translation.

8        MR. PREMO:  At this time, Michelle, I want to

9    represent to you that I produced a copy of this, or my

10:30  10  office last night.  There is a section that appears to

11   have been redacted.  It is not marked "redacted," it

12   was one or two handwritten sentences, sentences that

13   were handwritten, and I would like you -- I will

14   produce it in unredacted form, but you can ask the

15   witness at this time as to the statement.

16       If we take a break, I could have my office

17   fax you a copy of it.

18       MS. UMBERGER:  That would be good.

19       Why don't we take a break and get the

10:31  20  unredacted copy, and I believe this will be my last

21   exhibit so we can go through it.

22       THE VIDEOGRAPHER:  We are going off the

23   record at 10:30 am.

24       (Recess.)

25       THE VIDEOGRAPHER:  We are going back on the

| 1 | record at 11:07 a.m.
| 2 | MS. UMBERGER: I'm going to have marked, for
| 3 | the record, Exhibit 227, which is a document I
| 4 | received just now from counsel.
| 5 | (Deposition Exhibit 227 marked.)
| 6 | MR. PREMO: Just to correct the record, the
| 7 | document was produced yesterday evening. What we
| 8 | produced just now is a portion that has one additional
| 9 | sentence at the end that was handwritten in;
| 10 | otherwise, the document was produced yesterday, and it
| 11 | is Exhibit 226 -- or 225? This is 226.
| 12 | BY MS. UMBERGER:
| 13 | Q Mr. Cossu, do you recognize Exhibit 227?
| 14 | A Yes, I do.
| 15 | Q What is it?
| 16 | A It is a fax that was sent to me by
| 17 | Dr. Gugliemi containing the test -- the material that
| 18 | I had to translate as a test.
| 19 | Q And this fax is dated May 10th, 1996?
| 20 | A It is.
| 21 | Q So this document was sent to you by
| 22 | Guido Gugliemi to translate before you made the
| 23 | translations of the 1983 Bari paper; is that correct?
| 24 | A That's correct.
| 25 | Q Did this document come from your files?

11:08 10
11:09 20

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

1          MR. SCHWILLINSKI:  Objection; vague.

2          THE WITNESS:  Yes.

3     BY MS. UMBERGER:

4          Q    When did you locate this document?

5          A    I located this document after a call that I

6     received from Mr. Scheuster in -- I don't remember

7     what the month was, but it was probably February or

8     March, I don't remember, but it was this year.  And

9     after talking to him for -- out of curiosity, I think

10    I mentioned that already, I just got to the -- my old

11    computer and I found the Gugliemi file.

12         Q    Was this on your computer?

13         A    Yes, it was.  Wait a second.

14         Q    This one?

15         A    Yes.

16         Q    Exhibit 227?

17         A    No, this was not on the computer.  This is

18    probably something that after I looked in the computer

19    enough that I probably found it looking into my paper

20    files.

21         Q    In your paper files?

22         A    Yes.

23         Q    Where in your paper files did you find this

24    document?

25         A    It was probably just one of those common

|  | 1 | duty of a translator to consult an author prior to |
|---|---|---|
|  | 2 | translating a document. |
|  | 3 | MR. PREMO:  Objection; mischaracterizes his |
|  | 4 | testimony. |
|  | 5 | BY MS. UMBERGER: |
|  | 6 | Q   Let's go back to the research that you did on |
|  | 7 | the duties of a translator that you referenced earlier |
|  | 8 | this morning.  Do you recall that? |
|  | 9 | A   That's something that I did now, before the |
| 11:21 | 10 | testimony, after I knew that I was going to be called. |
|  | 11 | Q   Is it your belief that you have a duty as a |
|  | 12 | translator to consult the author to find out what his |
|  | 13 | intent or what the words he used meant? |
|  | 14 | A   Yes, and this can be found on many |
|  | 15 | authorities on the Net, for instance, about duties of |
|  | 16 | the translator.  About translation services themselves |
|  | 17 | that promise that that's what they will do, that that |
|  | 18 | is the first duty of a translator is to |
|  | 19 | contact or have any other access to sources that will |
| 11:22 | 20 | prove that that is exactly what the original document |
|  | 21 | means. |
|  | 22 | Q   Did you believe, then, that you had a duty to |
|  | 23 | consult with Dr. Gugliemi about what the words in the |
|  | 24 | 1983 Bari paper meant? |
|  | 25 | A   I did. |

```
 1            THE WITNESS:  I do believe that.

 2            MR. PREMO:  I have no further questions.

 3            MS. UMBERGER:  I just have a couple.

 4            MR. SCHWILLINSKI:  If anybody cares, I have

 5   no questions, but I reserve my right to ask questions.

 6            MS. UMBERGER:  We're off the record.

 7            THE VIDEOGRAPHER:  Off the record at 11:29.

 8            (Interruption in the proceedings.)

 9            THE VIDEOGRAPHER:  Going back on the record

11:30  10   at 11:30 a.m.

11                     FURTHER EXAMINATION

12   BY MS. UMBERGER:

13       Q    Mr. Cossu, I'm still referring to Exhibit 224

14   that Mr. Premo asked you questions about.

15            In response to one of those questions you

16   stated that Exhibit 224 is a true and accurate

17   translation based on the required information that you

18   had, correct?

19       A    Yes.

11:30  20       Q    And part of that required information was

21   what Gugliemi intended to write; isn't that correct?

22            MR. PREMO:  Objection; mischaracterizes prior

23   testimony.  Assumes facts not in evidence.

24            MS. UMBERGER:  You can read the question back

25   to the witness, please.
```

1          (Record read as follows:

2              "Q    And part of that required

3          information was what Gugliemi

4          intended to write; isn't that

5          correct?")

6          THE WITNESS:  Yes.

7    BY MS. UMBERGER:

8      Q    And you do agree, do you not, that the word

9    "rottura" can mean "break"?

11:31  10          MR. PREMO:  Objection; asked and answered,

11   and vague and ambiguous.

12          MR. SCHWILLINSKI:  Inappropriate redirect.

13   BY MS. UMBERGER:

14     Q    You can answer the question.  If you need it

15   read back, I can do that?

16          THE WITNESS:  Yes, go ahead.

17          (Record read as follows:

18              "Q    And you do agree, do you

19          not, that the word 'rottura' can

11:31  20          mean 'break'?")

21          THE WITNESS:  Yes, I do agree.

22          MS. UMBERGER:  I have no further questions.

23          MR. PREMO:  The last thing, Michelle, just a

24   housekeeping item, one of the exhibits, which is the

25   Italian sample letter included an individual patient

1

2

3

4          I, the undersigned, a Certified Shorthand

5  Reporter of the State of California, do hereby certify:

6          That the foregoing proceedings were taken

7  before me at the time and place herein set forth; that

8  any witnesses in the foregoing proceedings, prior to

9  testifying, were placed under oath; that a verbatim

10 record of the proceedings was made by me using machine

11 shorthand which was thereafter transcribed under my

12 direction; further, that the foregoing is an accurate

13 transcription thereof.

14          I further certify that I am neither

15 financially interested in the action nor a relative or

16 employee of any attorney of any of the parties.

17          IN WITNESS WHEREOF, I have this date

18 subscribed my name.

19

20 Dated: _____JUN 0 8 2005_____

21

22

23          _Denise Bardsley_
           DENISE BARDSLEY
24         CSR No. 11241

25