1   Jonathan A. Boynton (174910)
    Sarah Brite Evans (210980)
2   POST KIRBY NOONAN & SWEAT LLP
    One America Plaza
3   600 West Broadway, Suite 1100
    San Diego, California 92101-3387
4   Telephone (619) 231-8666
    Facsimile (619) 231-9593
5

6   John Yanchunis
    Jill H. Bowman
7   JAMES, HOYER, NEWCOMER & SMILJANICH, P.A.
    4830 West Kennedy Boulevard
8   One Urban Centre, Suite 550
    Tampa, FL 33609
9   Tel.: (813) 286-4100
    Fax: (813) 286-4174
10   Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| JEREMY MAURER, on behalf of himself and all others similarly situated,<br><br>           Plaintiffs,<br><br>    vs.<br><br>SPECIAL DATA PROCESSING CORP. d/b/a NATIONAL MAGAZINE EXCHANGE,<br><br>           Defendant. | **CASE NO. 04-CV-04093-MJJ**<br><br>**DECLARATION OF JILL H. BOWMAN IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND FOR APPROVAL OF FEE AWARD**<br><br>**JUDGE:** The Hon. Martin J. Jenkins<br>**CTRM.:** 11 |

POST KIRBY NOONAN & SWEAT LLP
ONE AMERICA PLAZA
600 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101-3387

PKNS\389030.1

04-CV-04093-MJJ
DECLARATION OF JILL H. BOWMAN IN
SUPPORT OF MOTION PRELIMINARY
APPROVAL OF CLASS SETTLEMENT.

Received   11-08-2005   11:27am   From-8132864174       To-POST KIRBY     Page 002

Dockets.Justia.com

1    Jill H. Bowman, being duly sworn, deposes and says:

2        1.    I am an attorney at law duly admitted to practice in the state of Florida and I

3    am a partner in the firm James, Hoyer, Newcomer & Smiljanich P.A ("JHNS").   I submit

4    this declaration in support of the settlement and the agreement on attorney's fees and

5    expenses reached by the parties in this case. I was assisted in this case by the law firm of

6    Post, Kirby Noonan & Sweat LLP ("PKNS").

7        2.    I have served as lead counsel for Plaintiff, Jeremy Maurer, in this case and

8    participated in and primarily conducted every aspect of the litigation and settlement of this

9    case, including investigation, preparation and drafting of pleadings, discovery, document

10   review and analysis, deposition of witnesses, and settlement negotiations.  Attached to my

11   declaration as Exhibits A, B, and C respectively are: A) The Settlement Agreement; B)

12   SDP's Answer to Interrogatory No. 14; C) Portions of the Corporate Deposition of Troy

13   Schneider. Each of these exhibits is an authentic true and accurate copy of the original.

14       3.    During the investigation before commencing the suit, and through my firm's

15   review of over 20,000 documents produced during discovery and by personally taking

16   several corporate and individual depositions, I have conducted a thorough examination and

17   evaluation of the relevant law and facts to assess the merits of is claims and potential

18   claims to determine how to serve the best interests of Plaintiff and the proposed Class or

19   classes.

20       4.    In about July 2005, settlement negotiations began to take place and

21   continued in tandem with active litigation for over three months.  During these

22   negotiations, I obtained information informally, and during settlement negotiations, NME

23   made certain representations concerning issues material to the Settlement Agreement,

24   which included providing me with information concerning the business and financial

25   condition of NME and the number of individuals who will be affected by the Settlement

26   Agreement.  See Ex. B.

27   ///

28   PKNS\389030.1

**POST KIRBY NOONAN & SWEAT LLP**
ONE AMERICA PLAZA
600 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101-3387

-1-

04-CV-04093-MJJ
DECLARATION OF JILL H. BOWMAN IN
SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS SETTLEMENT

POST KIRBY NOONAN & SWEAT LLP
ONE AMERICA PLAZA
600 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101-3387

5.      In reaching an agreement to enter into a Settlement Agreement affording the Class declaratory and injunctive relief, I very carefully considered the number of potential class members – approximately 100 million -- and NME's ability to respond to a Judgement for any similarly sized class. I also confirmed that NME's business and financial condition was as it had been represented and I had informally come to know, by independently reviewing the companies' financial records, including income statements and security agreements. In my experience, the cost of providing notice to class members ranges between $.68 to $1.40, inclusive of postage, depending on the number of pages included in the notice. For 100 million class members, notice costs for printing and mailing alone would reasonably be expected to be over $60 million dollars.

6.      As a result of all of the above considerations, in late September 2005 the parties reached an agreement in principle concerning the claims to be settled and relief the parties agreed would be provided to the Class. The agreement required NME to labor extensively to identify and accommodate changes to their business practices that ultimately have been described in the Settlement Agreement. Thus, the proposed settlement is the product of compromise and was only arrived at following three months of active negotiations.

7.      Thereafter – and not until the agreement concerning the relief to be provided to the Class was agreed upon – I began negotiations concerning the provision of an incentive to Plaintiff Maurer and an agreement concerning the payment of Class Counsels' attorneys fees and expenses.

8.      Indeed, it is my usual and customary practice to refuse to discuss the question of Class Counsels' fees and expenses prior to the resolution of all material points of a class settlement. I followed my usual practice in this case.

/ / /

/ / /

/ / /

PKNS\389030.1

-2-

9.     Accordingly, I now also offer this declaration in support of preliminary and final approval of Class Counsels' request for an award of reasonable attorney's fees and expenses to be paid by NME as a part of the Settlement Agreement for the maximum amount permitted by the Settlement Agreement - i.e. $250,000.

10.     My firms', and that of my co-counsel's, compensation for services rendered to the class is wholly contingent. Any fees and reimbursement of expenses will be limited to the stipulated amount agreed to by NME, subject to the approval of this Court. Herein, I have provided this Court with a summary indicating the time spent by my firm and my co-counsel firm on this case from pre-suit investigation beginning in September 2004 through October 31, 2005, just two weeks prior to the submission of this declaration on or about November 8, 2005. The summary was derived from contemporaneous daily time records my firm and my co-counsel's firm compiled on this matter, which are kept daily.

11.     As reflected below, my firm and PKNS have spent a combined 600 + hours on this matter in a single years time. This amount does not include all of the work necessary to compete the final approval papers that will be ongoing likely through the end of this year.

12.     My firm and co-counsel have also expended a total of $ 12,283.61 in unreimbursed expenses in connection with the prosecution of this litigation. The expenses incurred pertaining to this case are reflected in the books and records of JHNS and PKNS. These books and records are prepared from expense vouchers and check records and are an accurate record of the expenses incurred specifically in connection with this case. The expenses are recorded at the same rates at which the firms bill all of our client for such charges.

/ / /

/ / /

/ / /

/ / /

POST KIRBY NOONAN & SWEAT LLP
ONE AMERICA PLAZA
600 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101-3387

PKNS\389030.1

-3-

## National Magazine: Time and Expenses Billing Extract - JHNS and PKNS

|            | Rate        | Hours | Total       | Expense     |
|------------|-------------|-------|-------------|-------------|
| **JHNS**   |             |       |             |             |
| JHB        | $375        | 167.7 | $ 62,887.50 | $6,899.84   |
| Senior Partners | $475   | 39.7  | $ 18,857.50 |             |
| Partners   | $375        | 6.9   | $  2,587.50 |             |
| Associates | $185-$300   | 97.4  | $ 25,392.50 |             |
| Paralegals | $120        | 120   | $ 14,400.00 |             |
| Sub-Total  |             |       | $124,125.00 |             |
| **PKNS**   |             |       |             |             |
| JB Partner | $310        | 53.8  | $16,678.00  | $5,383.77   |
| Associates | $200-$250   | 61.8  | $14,775.00  |             |
| Parlegals  | $135        | 1.7   | $    230.00 |             |
| Sub-total  |             |       | $31,683.00  |             |

13.    In my opinion the time expended and expenses incurred in prosecuting this action were reasonable and necessary for the diligent litigation of the matter.

I declare under penalty of perjury under the laws of the United States of America that this document is true and correct and that it was executed on November 8, 2005.

*Jill Bowman*

POST KIRBY NOONAN & SWEAT LLP
ONE AMERICA PLAZA
600 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101-3387

PKNS\389030.1

-4-

**EXHIBIT A**

# SETTLEMENT AGREEMENT AND RELEASE

Jeremy Maurer on behalf of himself and all others similarly situated ("Plaintiff"), and Defendant, Special Data Processing Corp. d/b/a National Magazine Exchange ("NME") by and through their duly authorized counsel, have entered into the following Settlement Agreement in compromising all claims in the above styled case(s), subject to the approval of the Court.

## Introduction

a.    On September 28, 2004, Plaintiff filed a class action complaint in the Northern District of California, San Francisco Division, which is styled *Jeremy Maurer on behalf of himself and all others similarly situated v. Special Data Processing d/b/a National Magazine Exchange*, Case No. 04-CV-04093-MJJ. The Complaint alleged that NME violated The Fair Credit Reporting Act ("FCRA") and the California Business and Professions Code § 17200 et seq., by obtaining from various Consumer Reporting Agencies, Consumer Reports with no permissible purpose as described in FCRA.[1] NME admitted that it had obtained Consumer Reports from Consumer Reporting Agencies, but asserted that it did so permissibly contending that NME utilized such Consumer Reports to make Firm Offers of Credit to those consumers.

B.    During the investigation before commencing the suit, and through its review of over 20,000 documents produced during discovery and by taking several corporate and individual depositions, Plaintiff and Plaintiff's counsel conducted a thorough examination and evaluation of the relevant law and facts to assess the merits of his claims and potential claims and to determine how to serve the best interests of Plaintiff and the proposed Class. Class counsel has also obtained information informally, and during settlement negotiations, NME

---

[1]    Capitalized terms shall have the meaning set forth in the Fair Credit Reporting Act or, if defined herein, as set forth in this Agreement.

1

made certain representations concerning issues material to the Agreement, which included providing Class Counsel with information concerning the business and financial condition of NME and the number of individuals who will be affected by this Agreement.

C.      Defendant has answered the Complaint, responded to written discovery, produced 20,000 documents, and produced several corporate and individual witnesses for deposition.

D.      Through this process and based upon the discovery, investigation and evaluation of the facts and law relating to the matters alleged in the pleadings, Plaintiff and counsel for Plaintiff and Class have agreed with Defendant and Defendant's counsel to settle this suit pursuant to the provisions of this Stipulation after considering, among other things; (i) the attendant risks and uncertainty of litigation, especially in complex actions such as this, as well as the difficulties and delays inherent in such litigation; and (ii) the desirability of consummating this Settlement promptly to provide effective relief to Plaintiff and Class Members prospectively, and (iii) the expense of further litigation, including the cost of notice and any adverse outcome, which would present an extraordinary financial and business risk to NME. In addition, Class Counsel believes that Class Members and consumers will benefit from the practice changes contained herein. Therefore, balancing the costs, risks, and delay of continued litigation against the benefits of the settlement to the Class, Class Counsel and Plaintiff have concluded that a settlement as provided in this Agreement will be fair and reasonable and is in the best interest of the Class.

E.      NME denies all charges and allegations of wrongdoing arising out of any of the acts, omissions, facts, transactions, occurrences or practices allege, or that could have been alleged in the suit. NME asserts also that there is no merit to any of the claims advanced by

2

Plaintiff, on his own or on behalf of Class Members, that neither Plaintiff nor Class Members have been damaged or otherwise aggrieved by Defendant obtaining their Consumer Reports, and that it has numerous defenses on the merits and to class certification. Nevertheless, NME has agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation.

F.     This Agreement was entered into after extensive arm's length discussions and negotiations between Class Counsel and counsel for NME over a period of nearly three months. Counsel for NME and Class Counsel agree that the Settlement embodied in this Agreement is a fair, reasonable, and adequate resolution of the class action concerning NME's obtaining and using Consumer Reports from Consumer Reporting Agencies.

G.     The Parties desire to compromise and settle all issues and claims that have, or could have been brought against NME by Plaintiff or any Settlement Class Member. By agreeing to this Settlement, NME does not retract or surrender any of the factual or legal positions it asserted in the Actions, or concede the invalidity of those positions. The Parties desire and intend to seek court approval of the Settlement as set forth in this Agreement and provide for the release of claims as set forth herein.

***NOW THEREFORE***, in consideration of the foregoing and the mutual covenants and conditions herein, and the mutual undertakings of the parties hereto, it is hereby stipulated and agreed by and among the Class Representative and Class Counsel on behalf of all the Members of the Class and NME and its counsel that the litigation should be settled and compromised subject to the approval of the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure, according to the terms and conditions set forth below:

1.    **Definitions**

   A.    The following terms shall have the meanings set forth below:

      i.    NME means the Defendant Special Data Processing Corp. d/b/a National Magazine Exchange.

      ii.    "Class Counsel" or "Lead Counsel" means John A. Yanchunis and Jill H. Bowman of the law firm of James, Hoyer, Newcomer & Smiljanich, P.A., and Jonathan A. Boynton of the law firm of Post, Kirby, Noonan & Sweat LLP.

      iii.    "Action" means the suit initiated by Plaintiff against Defendant in the Federal District Court in the Northern District of California, San Francisco Division, Case No. 04-04093 MJJ.

      iv.    "Class" or "Class Members" means all persons in the United States whose Consumer Report NME obtained from a Credit Reporting Agency without the express consent of the consumer between September 28, 2002 and the date of the entry of Final Judgment in this action.

      v.    The following persons are excluded from the Class:

         (1)    NME and the Released Persons;

         (2) All Persons who, while represented by an attorney, have previously executed a release of liability which covers any of the claims made in the suit; and

         (3) In addition to the Persons identified in subsections (a) and (b) above, any entity in which any such Person has or had a controlling interest during the Class Period, and the legal representatives, heirs, executors,

4

beneficiaries, administrators, successors, or assigns of any such Person.

v.     "Class Period" means the time period from September 28, 2002 to the date of the entry of Final Judgment in this action.

vi.     "Compromised Claims" means all claims and causes of action for equitable relief only, including but not limited to injunctive and declaratory relief, that are or could have been alleged by any Class Member in the Action, whether known or unknown, including but not limited to claims under state or federal law, arising out of NME having obtained Consumer Reports from Consumer Reporting Agencies.  Class Members' individual damages claims, if any, are not affected by this settlement agreement and release.

viii.     "Defendant's Counsel" means Brad Seiling of Manatt, Phelps and Phillips, LLP.

ix.     "Effective Date" means that date defined in §VII of this Stipulation.

x.     "Fairness Hearing" means the hearing at or after which the Court will make a final decision whether to approve this Stipulation as fair, reasonable, and adequate.

xi.     "Person" means an individual, corporation, limited liability corporation, professional corporation, limited liability partnership, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity or their respective spouses, heirs, beneficiaries, executors, administrators, predecessors, successors, representatives, or assignees.

5

xii.    "Released Persons" means Special Data Processing Corp., d/b/a National Magazine Exchange., and its parents, affiliates, and each of its past or present directors, officers, employees, agents, insurers, attorneys, representatives, affiliates, parents, subsidiaries, divisions, predecessors, successors and assigns.

xiii.   "Representative Plaintiff" means Jeremy Maurer.

xiv.    "Settling Parties" means NME and Representative Plaintiff, on behalf of himself and the Class Members.

xv.     "Settlement" and/or "Settlement Agreement" means this Stipulation of Settlement, including all exhibits thereto.

b.     Capitalized terms used in this Stipulation, but not defined above shall have the meaning ascribed to them in this Stipulation and the exhibits attached hereto or as set forth above the same meaning as such terms have under the Fair Credit Reporting Act.

**2.     Discovery**

a.     Before commencing the Action and during litigation and settlement negotiations, counsel for Plaintiff conducted an examination and evaluation of the relevant law and facts to assess the merits of Plaintiff's claims and potential claims and to determine how best to serve the interests of Plaintiff and the Class.

b.     In the course of their examination, counsel for Plaintiff reviewed and analyzed 20,000 documents and other information produced by Defendant.

c.     After commencement of the Action and during litigation and settlement negotiations, counsel for Defendant conducted a thorough examination and evaluation of the relevant law, facts and allegations to assess the merits of Plaintiff's claims and potential claims

6

and to determine the strength of Defendant's defenses and Defendant's potential liability for relief sought in the Action.

## 3. Settlement Considerations

a. Based upon their discovery, investigation and evaluation of the facts and law relating to the matters alleged in the pleadings, Plaintiff and counsel for Plaintiff and the Class have agreed to settle the Action pursuant to the provisions of this Settlement Agreement after considering, among other things, i) the attendant risks and uncertainty of litigation, especially in complex actions such as this, as well as the difficulties and delays inherent in such litigation; and (ii) the desirability of consummating this Settlement promptly to provide effective relief to Plaintiff and Class Members prospectively, and (iii) the expense of further litigation, including the cost of notice and any adverse outcome, which would present an extraordinary financial and business risk to NME.

b. The proposed Settlement has been reviewed by Plaintiff and his counsel, who agree that this Settlement Agreement is fair, reasonable and adequate because it provides relief to the Class, is in the best interests of the Class, and fairly resolves the claims alleged.

## 4. Certification of Plaintiff's Class

a. For settlement purposes only, the parties stipulate that the Court may enter an order certifying the Action as a class action pursuant to Federal Rule of Civil Procedure 23, appointing Jeremy Maurer as Representative of the Class and appointing Class Counsel as counsel for the Class.

b. Certification of the Class and appointment of the Class Representative and Class Counsel by the Court shall be binding only with respect to the settlement of the Action. In the

event this Stipulation is terminated pursuant to its terms or the Effective Date does not occur, the certification of the Class shall be vacated, the Action shall proceed as though the Class had never been certified, and NME shall retain all rights to object to the maintenance of the Action as a class action.

## 5.     Class Action for Settlement Purposes

a.     Rule 23(b)(2) Class for Settlement Purposes Only.

The parties agree, solely for the purpose of settlement, that the Action shall be maintained as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure and agree to conditional certification of the Class. In the event Final Approval of this Settlement Agreement is not granted by the Court and/or the Settlement embodied herein does not become effective, the Class automatically shall be decertified, the parties shall be returned to the status quo ante, and the Action shall proceed as if this Agreement had never been negotiated or executed and no class had been certified.

b.     Injunctive Relief

The Court shall issue an injunction requiring NME, and any of its representatives, subsidiaries and affiliates, to implement and conform its business practices as follows:

i.     NME shall include in any mail piece or other communication sent to consumer whose Consumer Report NME obtained from a Consumer Reporting Agency, a Firm Offer of Credit to buy magazine subscriptions by making installment payments; and

ii.     NME shall continue to comply with the Fair Credit Reporting Act in all other material respects, including complying with the notice and disclosure requirements of 15 U.S.C. 1681m.

c. Safe Harbor

Attached hereto is a sample mail piece that the parties agree addresses the concerns set forth in Plaintiff's Complaint. And the parties agree that this mail piece complies with the terms of the injunction as set forth above.

NME shall at no time be bound to use any such mail piece on a temporary or permanent basis, and may alter or amend its format or content at any time so long as NME's continues to comply with the mandatory injunction as set forth in subjection (b)(i) above.

## 6. Conditions of Settlement and Effect of Disapproval, Cancellation, or Termination of Stipulation

a. The "Effective Date" of this Settlement Agreement shall be the first date after which all of the following events and conditions have been met or have occurred:

i. All parties have executed this Settlement Agreement and Release;

ii The Court has preliminarily and finally determined that notice to Class Members of the Settlement shall not be required;

iii. The Court has entered an order finally approving this Settlement Agreement and Release, including all settlement consideration as set forth in this Settlement Agreement and Release, and releasing the Released Persons from the Compromised Claims, and dismissing with prejudice the action and all claims asserted therein; and

b. Unless the parties otherwise agree in writing to waive all or any portion of the following provisions, there has also occurred: (i) in the event there is a properly and timely filed objection to entry of the Final Judgment and Order, the expiration (without the filing or noticing of an appeal) of the time to appeal from the Final Judgment and Order; (ii) the final dismissal of any appeal from the Final Judgment and Order; (iii) affirmance on appeal of the Final Judgment

9

and Order in substantial form; (iv) if a ruling or decision is entered by an appellate court with respect to affirmance of the Final Judgment and Order, the time to petition for a writ of certiorari with respect to such ruling or decision has expired; or (v) if a petition for a writ of certiorari with respect to the Final Judgment and Order is filed, the petition has been denied or dismissed or, if granted, has resulted in affirmance of the Final Judgment and Order in substantial form.

c.      In the event that any of the events or conditions described in § 7(c)(ii) either are not met or do not occur, this entire Settlement Agreement and Release shall become null and void, except that the parties shall have the option to agree in writing to waive the event or condition and proceed with this Settlement, in which event the Effective Date shall be deemed to have occurred on the date of such written agreement. Further, in the event that any of the events or conditions described in § 7(c)(iv) either are not met or do not occur, the terms and provisions of this Settlement Agreement shall have no further force and effect with respect to NME, the Representative Plaintiff, and other members of the Class and shall not be used in the Action or in any other action or proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of this Settlement Agreement and Release shall be treated as vacated.

## 7.      Dismissal of Action and Releases

a.      Upon the Court's final approval of this Settlement Agreement and Release set forth herein, the Final Judgment and Order shall be entered providing for the dismissal with prejudice and the release by Plaintiff and the Class Members of all Compromised Claims against the Released Persons.

b.     Plaintiff, Jeremy Maurer, for himself only, as further consideration for the settlement payments and other agreements set forth herein, releases and discharges NME from all known and unknown individual claims he may have against NME arising out of or related to the Action or the allegations raised in the Action, his dealings with NME, NME's alleged access to Maurer's credit report, and all other claims that he may now have against NME, including claims under the Fair Credit Reporting Act, analogous state law, tort or contract theories or any other legal theories.

c.     As of the Effective Date of this Stipulation, by operation of the entry of the Final Judgment and Order, Class Representative, each Class Member, and each of their respective heirs, assigns, and successors (collectively, the "Releasing Class Members"), shall be deemed to have fully and irrevocably released the Released Persons from the Compromised Claims.

i.     Settlement Recommended by Class Counsel:    Class Counsel will recommend the Settlement and the terms of this Settlement Agreement for approval and enforcement by the Court and shall support the fairness, adequacy, and binding effect of the Settlement and the terms of this Settlement Agreement and Release as to each Class Member in the event of any appeal, collateral attack or other challenge thereto.

ii.     Court Approval: The transactions and undertakings herein are subject to approval by the Court and entry of a final judgment in accordance with Rule 23(b)(2) of the Federal Rules of Civil Procedure which: (i) approves the final certification of the Class; (ii) determines that notice to the class is not required; and (iii) finally approves the Settlement Agreement and enters a final injunction and other declaratory and equitable relief permanently enjoining and requiring NME to perform its obligations set forth in this Settlement Agreement

(the "Injunction"); and subject to said Injunction and the right to enforcement thereof pursuant to the continuing jurisdiction reserved by the Court, approves the release of and dismisses with prejudice all Compromised Claims which were or could have been asserted in this Action by or on behalf of the Class Members or any of them relating to NME as defined above; (iv) bars and enjoins each and all Class Members from filing, pursuing, continuing or participating as a litigant in any separate individual lawsuit or separate class action relating to NME and the Compromised Claims (as defined above); and (v) bars and enjoins Jeremy Maurer from filing, pursuing, continuing or participating as a litigant in any lawsuit relating to NME based on individual claims that have been made or could have been made by him in this action; and (v) reserves jurisdiction over all matters related to the administration, consummation, interpretation and enforcement of the Settlement Agreement.

iii.  <u>Appeal</u>: In the event that an appeal is taken with respect to the Court's Order and Final Judgment or any other order contemplated hereby, whether by direct appeal, petition for review, certiorari or otherwise, then this settlement shall be further conditioned on the entry of an order(s) by any appellate court(s) in which any appeal may be filed; (1) dismissing the appeal; and/or (2) affirming in all respects the Court's Order and Final Judgment or any other order appealed from and approving this settlement in all respects.

iv.  <u>Settlement Requires Rule 23(b)(2) Mandatory Class With No Opt Out Right and No Notice to the Class:</u>

This Settlement Agreement is conditioned on certification of a Rule 23(b)(2) mandatory Class, as defined above, with no right to opt out, approval without requiring notice to the Class, and an Order and Final Judgment expressly barring, enjoining, and precluding each Class Member from filing, prosecuting or participating as a litigant (by intervention or

12

otherwise) in any separate individual or class suits regarding NME or asserting any claims which are Compromised Claims as defined above.

v.    No Admission of Liability by NME:  NME, by agreeing to the terms of the settlement and executing this Settlement Agreement does not admit, but to the contrary expressly denies, any and all liability and wrongdoing but has entered into this Settlement Agreement to avoid the expense and uncertainty of litigation. NME maintains that its conduct in obtaining and using Consumer Reports from Consumer Reporting Agencies has been appropriate, that is has not, by commission or omission, deceived consumers, nor has it misled consumers or violated the Fair Credit Reporting Act. NME denies that any Class Member or any other person would have any right to or grounds for obtaining the relief described herein, but is willing to agree to the terms of this Settlement for the purpose of compromising the claims asserted in the action. Neither this Settlement Agreement nor any document referred to herein, nor any document prepared in connection herewith, nor any action taken to affect the Settlement, may be construed or used as, an admission or concession by or against NME on its own behalf, or on behalf of any of its current, former, or future respective shareholders, members, officers, directors, partners, insurers, employees, associates, agents or independent contractors.

c.    As of the Effective Date of this Settlement Agreement, by operation of the entry of the Final Judgment and Order, the Class Members shall be deemed to have fully released and forever discharged NME of and from all Compromised Claims.

d.      Notwithstanding the entry of Judgment, the Court shall retain jurisdiction of the Action until such time as the court determines that the Settlement is fully consummated according to the terms and conditions of this Settlement Agreement and Release.

## 8.    Defendant's Denial of Liability

a.      Defendant denies each and every claim in the Action, including the appropriateness of class action relief. Defendant maintains that it has acted consistently in accordance with governing laws at all times. Nonetheless, it has concluded that it is in Defendant's best interest that the Action be settled on the terms and conditions set forth in this Settlement Agreement.

b.      As a result of the foregoing, Defendant enters into this Stipulation without in any way acknowledging any fault, liability, or wrongdoing of any kind. Neither this Stipulation, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with it, shall be construed as an admission or concession by Defendant of the truth of any of the allegations in the Action, or of any liability, fault, or wrongdoing of any kind on the part of Defendant.

## 9.    Fees and Expenses

a.      Class Counsel agrees to make, and Defendant agrees not to oppose, an application for attorneys' fees and expenses in the amount not to exceed $ 250,000.00. Further, for work performed in the Action and in recognition of bringing, assisting and/or maintaining the Action, Representative Plaintiff in the Action shall be paid by Defendant compensation of $5000. The foregoing payments to Representative Plaintiff, and Class Counsel, shall be made paid by funds wired or by check to Class Counsel, on behalf of Representative Plaintiff, within ten (10) days of the Entry of Final Order Approving the Class Action Settlement and entry of Final Judgment as

14

follows: $5,000.00 to the representative Plaintiff, and $200,000.00 to Class Counsel; and thereafter the remaining $50,000 payable to Class Counsel shall be paid in $10,000 installments, each following 30 days after the prior payment. If the Judgment and Order Approving Settlement are reversed, vacated, modified, and/or remanded for further proceedings or otherwise disposed of in any manner other than an affirmance of the Judgment and Order Approving Settlement as to any matter other than a reduction of the award of Attorneys' Fees and Expenses, and NME or Class Counsel have not agreed in writing to waive the event or condition and proceed with this Settlement in accordance with Section 6, then Class Counsel shall within five business days return to NME the amount paid to the Representative Plaintiff and the amount for Attorneys' Fees and Expenses paid by NME. In the event that the award of Attorneys' Fees and Expenses is reduced after entry of the Judgment and Order, then Class Counsel shall within five business days return to NME the amount by which the Attorneys' Fees and Expenses have been reduced. Any return of the Representative Plaintiff's award or Attorneys' Fees and Expenses under this section shall be increased by the actual interest earned upon such fees and expenses.

      b.     Except as otherwise provided herein, Defendant will only bear the costs relating to Defendant's obligations identified in this Settlement Agreement.

## 10.    Representations and Warranties

      a.     The Representative Plaintiff represents and warrants that he (i) has agreed to serve as a representative of the Class proposed to be certified herein; (ii) is willing, able and ready to perform any of the duties and obligations of a representative of the Class, including the need to be available for, and involved in, discovery and fact-finding; (iii) has consulted with Class Counsel, or any other counsel he may have, about the Action, the Settlement Agreement and the

obligations of a Class representative; (iv) believes the proposed settlement terms described herein are fair, reasonable and adequate; (v) will remain and serve as a representative of the Class, until the terms of the Settlement Agreement are effectuated, the Settlement Agreement is terminated in accordance with the its terms, or the Court at any time determines that said Representative Plaintiff cannot represent the Class; (vi) will not object to the proposed settlement, and (vii) will not file an appeal from or seek review of any order approving the settlement.

## 11.    Miscellaneous Provisions

a.    The settling Parties (a) acknowledge that it is their intent to consummate the settlement set forth in this Settlement Agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Settlement Agreement and to exercise their best efforts to accomplish the foregoing terms and conditions of this Settlement Agreement.

b.    The settling Parties intend the settlement set forth in this Settlement Agreement to be a final and complete resolution of all disputes between them with respect to the Action. The Settlement set forth in this Settlement Agreement compromises claims, which are contested and shall not be deemed an admission by any settling Party as to the merits of any claim or defense. The Parties agree that the settlement relief provided, and the other terms of the settlement set forth in this Settlement Agreement, were negotiated in good faith by the Parties, and reflect a settlement that was reached voluntarily after each party's consultation with competent legal counsel. The Parties reserve their right to rebut, in a manner that such party determines to be

appropriate, any contention made in any public forum that the Action was brought or defended in bad faith or without a reasonable basis.

c.    Neither this Settlement Agreement nor the terms set forth herein, nor any act performed or document executed pursuant to or in furtherance of this settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any or all of the Compromised Claims, or any wrongdoing or liability on the part of any or all of the Released Persons; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission on the part of any or all of the Released Persons in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal.  Any or all of the Released Persons may file this Settlement Agreement and/or the Final Judgment and Order in any action or proceeding that may be brought against any of them in order to support a defense, counterclaim or the like, based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

d.    All of the Exhibits to this Settlement Agreement are material and integral parts of the Stipulation and are fully incorporated by this reference.  They are substantially similar and representative of the actual documents and forms to be used in this Action by the Settling Parties. The Parties reserve the right to revise the form and content of the Exhibits to afford relief described herein to appropriate Class Members and to comply with Due Process, the United States Constitution and applicable laws.

The Exhibits to this Stipulation are:

| EXHIBIT NUMBER | DESCRIPTION |
|---|---|
| 1 | Proposed Mailer |

e.     This Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all settling Parties or their respective successors-in-interest.

f.     This Settlement Agreement and the attached Exhibit(s) constitute the entire agreement between the Representative Plaintiff and NME and no representations, warranties or inducements have been made to any party concerning this Settlement Agreement or its Exhibits other than the representations, warranties and covenants contained and memorialized in such documents.

g.     Except as otherwise provided for in this Settlement Agreement, each party shall bear its own costs.

h.     Each counsel or other Person executing this Settlement Agreement and Release or any of its Exhibits on behalf of any party hereby warrants that such Person has the full authority to do so.

i.     The Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court.

j.     The Settlement Agreement shall be binding upon, and inure to the benefit of, the heirs, successors, legal administrators and assigns of the parties.

18

k.    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Settlement Agreement, and all parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in this Settlement Agreement and Release.

l.    Whenever this Settlement Agreement requires or contemplates that one party shall or may give notice to the other, notice shall be provided by facsimile and/or next day (excluding Sunday) express delivery service as follows:

    1.    If to Plaintiff, then to:

> John A. Yanchunis
> Jill H. Bowman
> James, Hoyer, Newcomer & Smiljanich, P.A.
> 4830 West Kennedy Blvd.
> Urban Centre One, Suite 550
> Tampa, FL  33609
> Telephone:  813/286-4100
> Fax:  813/286-4174

    2.    If to Defendant, then to:
> Leslie Reicin Stein
> Vice President and General Counsel
> Special Data Processing Corporation
> 16120 U.S. 19 N
> Clearwater, FL 33764

m.    All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided. In computing any period of time prescribed or allowed by this Stipulation or by order of the Court, the day of the act, event or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a legal holiday, or, when the act

19

to be done is the filing of a paper in Court, a day in which weather or other conditions have made the office of the Clerk of the Court inaccessible, in which event the period shall run until the end of the next day as not one of the aforementioned days. As used in this subsection, "legal holiday" includes New Year's Day, Martin Luther King, Jr. Day, Presidents' Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans' Day, Thanksgiving Day, Christmas Day and any other day appointed as a holiday by the President or the Congress of the United States or by the Federal District Court for the Northern District of California.

    n.    This Settlement Agreement shall be deemed to have been executed upon the last date of execution by all of the undersigned.

Dated this _____ day of _____, 2005.

**SPECIAL DATA PROCESSING CORP.**

By: _____

Its: _____

                                 JEREMY MAURER

**James, Hoyer, Newcomer & Smiljanich, P.A.**      **Manatt, Phelps and Phillips, LLP**

John A. Yanchunis                    Brad W. Seiling
Jill H. Bowman                      11355 West Olympic Boulevard
4830 West Kennedy Blvd.           Los Angeles, CA 90064
Urban Centre One, Suite 550        Telephone: 310/312-4000
Tampa, FL 33609                Fax: 310/312-4224
(813) 286-4100
Fax: (813) 286-4174

Counsel for Plaintiff and Class Members    Counsel for Defendan

20

to be done is the filing of a paper in Court, a day in which weather or other conditions have made the office of the Clerk of the Court inaccessible, in which event the period shall run until the end of the next day as not one of the aforementioned days. As used in this subsection, "legal holiday" includes New Year's Day, Martin Luther King, Jr. Day, Presidents' Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans' Day, Thanksgiving Day, Christmas Day and any other day appointed as a holiday by the President or the Congress of the United States or by the Federal District Court for the Northern District of California.

      n.    This Settlement Agreement shall be deemed to have been executed upon the last date of execution by all of the undersigned.

Dated this _____ day of _____, 2005.

**SPECIAL DATA PROCESSING CORP.**

By: _____

Its: _____

JEREMY MAURER

**James, Hoyer, Newcomer & Smiljanich, P.A.**    **Manatt, Phelps and Phillips, LLP**

---

John A. Yanchunis
Jill H. Bowman
4830 West Kennedy Blvd.
Urban Centre One, Suite 550
Tampa, FL 33609
(813) 286-4100
Fax: (813) 286-4174

Counsel for Plaintiff and Class Members

Brad W. Seiling
11355 West Olympic Boulevard
Los Angeles, CA 90064
Telephone: 310/312-4000
Fax: 310/312-4224

Counsel for Defendant

20

to be done is the filing of a paper in Court, a day in which weather or other conditions have made

the office of the Clerk of the Court inaccessible, in which event the period shall run until the end

of the next day as not one of the aforementioned days. As used in this subsection, "legal

holiday" includes New Year's Day, Martin Luther King, Jr. Day, Presidents' Day, Memorial Day,

Independence Day, Labor Day, Columbus Day, Veterans' Day, Thanksgiving Day, Christmas

Day and any other day appointed as a holiday by the President or the Congress of the United

States or by the Federal District Court for the Northern District of California.

      n.     This Settlement Agreement shall be deemed to have been executed upon the last

date of execution by all of the undersigned.


Dated this _____ day of _____, 2005.


**SPECIAL DATA PROCESSING CORP.**

By: _____

Its: _____              _____
                                    JEREMY MAURER


**James, Hoyer, Newcomer & Smiljanich, P.A.**    **Manatt, Phelps and Phillips, LLP**

_____             _____
John A. Yanchunis                         Brad W. Seiling
Jill H. Bowman                            11355 West Olympic Boulevard
4830 West Kennedy Blvd.                Los Angeles, CA 90064
Urban Centre One, Suite 550           Telephone: 310/312-4000
Tampa, FL 33609                    Fax: 310/312-4224
(813) 286-4100
Fax: (813) 286-4174

Counsel for Plaintiff and Class Members    Counsel for Defendant

20

**Entry Instructions:** Please call the telephone number on the reverse at your earliest convenience to enter your Sweepstakes I.D. number.

# "Strike It Rich V" Sweepstakes Official Rules

**NO PURCHASE OR PAYMENT NECESSARY TO ENTER OR WIN.
A PURCHASE WILL NOT IMPROVE YOUR CHANCES OF WINNING.**

How To Enter: To enter, follow all entry instructions specified elsewhere in this offer. Sweepstakes begins 12:01 AM Eastern Time ("ET") on 10/15/2005. No mail-in entries accepted at Sponsor's address. One entry per person and household per day, irrespective of the method of entry.

Eligibility: Sweepstakes open to legal residents of the United States excluding its territories and possessions and the State of Florida, 18 years of age or older at the time of entry. Void in Florida and where prohibited by law. Employees and their immediate family members and/or those living in the same household of the Sponsor, all sweepstakes presenters and their respective advertising and promotional agencies, and the independent judging organization are not eligible to enter or win.

**STRIKE IT RICH SWEEPSTAKES: GRAND PRIZE CONSUMER DISCLOSURES:** One Grand Prize will be awarded. The winner of the guaranteed Grand Prize can choose either a $2,100,000.00 annuity payable in 30 annual installments of $70,000.00 (value of annuity as of the date these rules were printed: $1,094,444.00) or one lump sum payment of $1,094,444.00 (one million ninety-four thousand four hundred forty-four dollars). Estimated odds of winning: 1:26,000,000. You have not yet won. No purchase is necessary. Your entry must be received by the date specified elsewhere in this offer or by 11:59 PM (ET) on 12/15/2007, whichever is sooner. Sponsor: Special Data Processing DBA National Magazine Exchange, 16120 US 19 North, Clearwater, FL 33764.

**STRIKE IT RICH SWEEPSTAKES: EARLY BIRD/BONUS PRIZE CONSUMER DISCLOSURES:** One Early Bird/Bonus Prize will be awarded. The winner of the Early Bird/Bonus Prize will receive $5,000.00 in Cash or his/her choice of merchandise or travel prize offered by Sponsor valued at $5,000.00. To qualify for the Early Bird/Bonus Prize, your entry must be received by the entry deadline specified elsewhere in this offer or by 11:59 PM (ET) on 12/15/2007, whichever is sooner. Estimated odds of winning: 1:26,000,000. You have not yet won. No purchase is necessary. Sponsor: Special Data Processing DBA National Magazine Exchange, 16120 US 19 North, Clearwater, FL 33764.

Winner Selection: Winner(s) will be determined in a random drawing from among all eligible entries received, on or about 12/28/2007 by an independent judging organization whose decisions are final. Winner(s) will be notified by mail and will be required to complete, sign and have notarized an affidavit of eligibility, release of liability, and, where legally permissible, a publicity release which must be received within 14 days of date printed on notification or an alternate winner will be selected in a random drawing. Prize(s) delivered within approximately 30 days of receipt of executed affidavit. If prize/prize notification letter is returned as undeliverable, prize will be awarded to an alternate in a random drawing. If prize is won by a minor, it will be awarded in the name of parent or legal guardian who must execute affidavit and releases on minor's behalf. All taxes on prizes are the responsibility of the winner. Acceptance of a prize constitutes permission (except where prohibited by law) to use winner's name, hometown, likeness, prize won and comments about winning for purposes of advertising, promotion and publicity (in any and all media including online) without additional compensation. A prize is not transferable or assignable except by a surviving spouse.

General: Sponsor is not responsible for lost, late, misdirected, illegible, mutilated or postage due mail or for incorrect or inaccurate capture of entry information or for failure of telephone network, computer equipment, software, human error or any combination thereof. All entries become the Sponsor's property and will not be returned or acknowledged. Any sweepstakes notice that contains of results from any printing, production of other error will be void. If due to any printing, production or other error, more than one winning grand prize notice and/or early bird prize notice is issued, the prize will be awarded in a random drawing from among all eligible entries received in response to such notices.

This sweepstakes will be presented in conjunction with various promotions and solicitations offered by the properties, subsidiaries, divisions, licensees owned by or affiliated with National Magazine Exchange, Special Data Processing Corporation and/or by their advertisers and marketing partners. All federal, state and local laws and regulations apply. Void where prohibited by law.

For winner's list (available within 90 days after the drawing), send a self-addressed, stamped envelope by 12/15/2007 to: 'Strike It Rich V' Sweepstakes Winner(s), P.O. Box 9307, Medford, NY 11763-9307.

Mailing List Preference: If you would like to have your name and address removed from any future sweepstakes mailings from our company, you may do so by calling 1-800-690-3623. To view our privacy policy visit www.nmemags.com.

PRESCREEN & OPT OUT NOTICE: Based upon your consumer report and because, at the time of this correspondence, you meet our credit criteria, YOU HAVE BEEN APPROVED TO RECEIVE A SPECIAL MULTI-YEAR MAGAZINE OFFER ON CREDIT AND DEFER PAYMENT USING OUR EZ PAY INSTALLMENT PROGRAM OF FOUR INTEREST FREE PAYMENTS. This credit may not be extended if, after you respond, we find you no longer meet our credit criteria. If you would like to have your name and address removed from any future prescreened solicitations, you may do so by calling the automated Opt-Out Request Line at 1-888-567-8688 or by writing the credit bureaus below: Trans Union Market Opt Out, PO Box 97328, Jackson, MS 39288; Consumer Opt Out Services, Experian Credit Marketing, PO Box 919, Allen, TX 75401's; or Equifax Options, PO Box 740123, Atlanta, GA 30374.

Residents of South Dakota and Louisiana: If you choose to take advantage of our magazine offer, your order will be entered with the publisher(s), so we must limit the cancellation period to ten (10) days from the day of receipt by the consumer.

**EXHIBIT B**

1  MANATT, PHELPS & PHILLIPS, LLP
   BRAD W. SEILING (Bar No. CA 143515)
2  11355 West Olympic Boulevard
   Los Angeles, CA 90064-1614
3  Telephone: (310) 312-4000
   Facsimile: (310) 312-4224
4
   Attorneys for Defendant
5  SPECIAL DATA PROCESSING CORP.
6

*RECEIVED*
*POST, KIRBY, NOONAN & SWEAT*

7
8                        UNITED STATES DISTRICT COURT
9             NORTHERN DISTRICT, OAKLAND DIVISION
10

*RECEIVED*
*JUN 2 1 2005*
*POST, KIRBY, NOONAN & SWEAT*

11  JEREMY MAURER, on behalf of Himself          No. C 04-4093 ADR (MJJ)
    and all others similarly situated,
12                                               PUTATIVE CLASS ACTION
            Plaintiffs,
13                                               SPECIAL DATA PROCESSING CORP.'S
            vs.                                  RESPONSES TO SECOND SET OF
14                                               INTERROGATORIES PROPOUNDED BY
    SPECIAL DATA PROCESSING CORP.                JEREMY MAURER
15  d/b/a National Magazine Exchange,
16          Defendant.                           Judge: Hon. Martin J. Jenkins
17

18  PROPOUNDING PARTY:        JEREMY MAURER

19  RESPONDING PARTY:         SPECIAL DATA PROCESSING CORP. d/b/a NATIONAL

20                            MAGAZINE EXCHANGE

21  SET NO.:                  TWO

22

23          Defendant Special Data Processing Corp. d/b/a National Magazine Exchange ("SDP")

24  responds to the second set of interrogatories propounded by plaintiff Jeremy Maurer ("Maurer")

25  as follows:

26                     **GENERAL OBJECTIONS AND RESPONSES**

27          SDP's responses to Maurer's Interrogatories are provided subject to each of the following

28  objections:

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES
20135656.1                                                  RESPONSES TO SECOND SET OF
                                                            INTERROGATORIES
                                                            CASE NO. CV 04-04093 MJJ

1      1.     SDP has not fully completed its investigation of the facts relating to this case, has
2    not fully completed its discovery with respect to the matters at issue in this case, and has not
3    completed its preparation for trial. These answers are based solely upon the information that is
4    presently available and specifically known to SDP at this time. It is anticipated that additional
5    discovery, further investigations, legal research and analysis will supply additional facts, provide
6    new and different meaning to the known facts, and may establish entirely new factual conclusions
7    and legal contentions, all of which may result in additions, changes, and/or variations from the
8    responses set forth in the answers. Therefore, these answers are made without prejudice to SDP's
9    rights to introduce any subsequently discovered evidence or fact, of which SDP becomes aware or
10   recalls in the future, or to assert any subsequently developed theories, conclusions and/or
11   contentions with respect to any of the matters in this case.

12     2.     SDP objects generally and specifically to each and all of these interrogatories to
13   the extent the interrogatories seek the disclosure of information protected by the attorney-client
14   privilege or the attorney work product doctrine.

15     3.     SDP objects generally and specifically to each an all of these interrogatories on the
16   grounds that they are not reasonably calculated to lead to the discovery of admissible evidence.

17     4.     SDP reserves all objections or other questions as to the competency, relevance,
18   materiality, privilege or admissibility of these responses as evidence in any subsequent
19   proceeding in or trial of this or any other action.

20                    **SPECIFIC OBJECTIONS AND RESPONSES**

21           Without waiving any of the above-referenced objections and responses, and incorporating
22   each of them as to each interrogatory by this reference, SDP responds to each interrogatory as
23   follows:

24   **SPECIAL INTERROGATORY NO. 14:**

25           State the number of consumers whose name and address Special Data Processing Corp.
26   d/b/a National Magazine Exchange obtained from consumer reporting agencies in each of the
27   following years: 2000, 2001, 2002, 2003, 2004, 2005 to date. (please state separately)

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20135656.1                           2                  RESPONSES TO SECOND SET OF
                                                              INTERROGATORIES
                                                          CASE NO. CV 04-04093 MJJ

## RESPONSE TO SPECIAL INTERROGATORY NO. 14:

SDP objects to this interrogatory on the grounds that it is compound, overbroad and unduly burdensome. Additionally, SDP objects to this interrogatory on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence. Subject to these and the General Objections, SDP responds as follows:

2000: 31,109,762

2001: 30,816,133

2002: 17,508,622

2003: 17,320,492

2004: 55,680,621

2005: 24,551,335

## SPECIAL INTERROGATORY NO. 15:

State the number of consumers to whom Special Data Processing Corp. d/b/a National Magazine Exchange has sent a sweepstakes offer in each of the following years: 2000, 2001, 2002, 2003, 2004, 2005 to date. (please state separately)

## RESPONSE TO SPECIAL INTERROGATORY NO. 15:

SDP objects to this interrogatory on the grounds that it is compound, overbroad and unduly burdensome. Additionally, SDP objects to this interrogatory on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence. Subject to these and the General Objections, SDP responds as follows:

2000: 77,138,407

2001: 96,734,006

2002: 64,663,029

2003: 73,830,574

2004: 104,034,204

2005: 56,282,270

## SPECIAL INTERROGATORY NO. 16:

Identify the persons responsible for negotiating and entering into business arrangements

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20135656.1

3

RESPONSES TO SECOND SET OF
INTERROGATORIES
CASE NO. CV 04-04093 MJJ

1   subscriptions over time in installments. Special Data does not charge interest or impose other

2   finance charges. If customers cancel subscriptions, SDP may not be able to recoup the

3   consideration it paid to the magazine publisher, depending on the particular terms of SDP's

4   agreement with the publisher.

5

6   Dated:    June 20, 2005          MANATT, PHELPS & PHILLIPS, LLP
                                     Brad W. Seiling
7

8                                    By: _Brad Seiling /RSL_

9                                         Brad W. Seiling
                                          *Attorneys for Defendant*
10                                        SPECIAL DATA PROCESSING CORP.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20135656.1                              6                 RESPONSES TO SECOND SET OF
                                                         INTERROGATORIES
                                                         CASE NO. CV 04-04093 MJJ

# EXHIBIT C

1                UNITED STATES DISTRICT COURT

2    NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

3              - - - **CERTIFIED COPY**

4    JEREMY MAURER, on behalf of himself )
     and all others similarly situated,  ) CASE NO.
5                                         ) 04-CV-04093-MJJ
                                          )
6                    Plaintiffs,          )
                                          )
7              vs.                        )
                                          )
8    SPECIAL DATA PROCESSING CORP.        )
     d/b/a NATIONAL MAGAZINE              )
9    EXCHANGE,                            )
                                          )
10                   Defendant.           )
     _____)

11

12

13

14              VIDEOTAPED DEPOSITION OF

15                  TROY SCHNEIDER

16              LOS ANGELES, CALIFORNIA

17              TUESDAY, JULY 12, 2005

18

19

20

21   ATKINSON-BAKER, INC.
     COURT REPORTERS
22   500 North Brand Boulevard, Third Floor
     Glendale, California 91203
23   (818) 551-7300

24   Reported by:   MONIKA C. COYLE, CSR NO. 4254

25
     FILE NO.:   9F0512E

| 1 | 12:29:56 | A. No. |
| 2 | 12:29:58 | MR. SEILING: As to all of those |
| 3 | 12:30:00 | objections -- or all those questions the documents speak |
| 4 | 12:30:18 | for themselves. The testimony is irrelevant. |
| 5 | 12:30:20 | MS. BOWMAN: |
| 6 | 12:30:28 | Q. Now, you're aware, are you not, Mr. |
| 7 | 12:30:30 | Schneider, that in this case -- this particular case has |
| 8 | 12:30:34 | been brought by a gentleman by the name of Jeremy Maurer? |
| 9 | 12:30:34 | A. Yes. |
| 10 | 12:30:48 | Q. And you know that Mr. Maurer was one of the |
| 11 | 12:30:54 | people that National Magazine identified through a credit |
| 12 | 12:30:54 | agency; correct? |
| 13 | 12:30:56 | A. That's my understanding. |
| 14 | 12:31:02 | Q. And that Mr. Maurer was selected or survived |
| 15 | 12:31:06 | the merge/purge process and was sent a mail piece by |
| 16 | 12:31:08 | National Magazine Exchange; is that correct? |
| 17 | 12:31:08 | A. That's my understanding. |
| 18 | 12:31:18 | Q. Now, in this context, Mr. Maurer was just |
| 19 | 12:31:22 | a -- one of the people that appeared on one of the credit |
| 20 | 12:31:28 | lists that survived the merge/purge process and made the |
| 21 | 12:31:32 | mailing list to receive the mail piece; is that correct? |
| 22 | 12:31:32 | A. That's my understanding. |
| 23 | 12:31:36 | Q. Okay. He's not -- wasn't selected out or |
| 24 | 12:31:40 | singled out or anything. He was just one of those people |
| 25 | 12:31:44 | that ended up on the mail list from the original credit |

| | | |
|---|---|---|
| 1 | 12:31:46 | list that you received from one of the credit reporting |
| 2 | 12:31:46 | agencies? |
| 3 | 12:31:48 | MR. SEILING: Asked and answered. Lack of |
| 4 | 12:31:50 | foundation. |
| 5 | 12:31:52 | THE WITNESS: He was not singled out and |
| 6 | 12:31:56 | it's my understanding that he was on a credit list that |
| 7 | 12:32:00 | we got from Experian. |
| 8 | 12:32:02 | MS. BOWMAN: |
| 9 | 12:32:02 | Q. Okay. And the mail piece that he would have |
| 10 | 12:32:06 | been sent would have been the same mail piece that |
| 11 | 12:32:08 | everybody else that was on that mailing list would have |
| 12 | 12:32:08 | been sent? |
| 13 | 12:32:10 | A. Yes. |
| 14 | 12:32:26 | Q. Now, I am going to mark -- |
| 15 | 12:32:32 | MR. SEILING: Let's go about five more |
| 16 | 12:32:36 | minutes and then take a lunch break if that's all right? |
| 17 | 12:32:38 | MS. BOWMAN: Yeah, we can do that. |
| 18 | 12:32:48 | Q. I'm going to mark as Exhibit 5, I guess -- |
| 19 | 12:32:54 | MR. SEILING: Is that all right with you? |
| 20 | 12:32:54 | THE WITNESS: That's fine. |
| 21 | | (Whereupon, Exhibits 5 and 6 were |
| 22 | | marked for identification and are |
| 23 | | attached to the original transcript |
| 24 | 12:33:28 | of this deposition.) |
| 25 | | MS. BOWMAN: I've marked as Exhibits 5 and 6 |

## AFFIDAVIT

STATE OF FLORIDA     )
COUNTY OF PINELLAS  )^SS.

I, J. MICHAEL CAPITO, am the Chief Financial Officer of Special Data

Processing Corporation ("Company"). I have been advised in Maurer v. Special Data

Processing Corporation, Case No. 04-CV-04093-MJJ, filed in the U.S. District Court for

the Northern District of California, San Francisco Division, that the purported class is

100,000,000 members. I have been further advised that the cost of personal service could

be in the range of $.85 to $1.25 per class member, or $85,000,000 to $125,000,000. In

the year ending July 2, 2005, the Company's Net Income was $3,300,153. The Company

has debt (first security) due to the bank of $14,733,333.

The Company is not in a position to sustain the cost of personal service and

remain in business.

FURTHER AFFIANT SAYETH NAUGHT.


_____

J. MICHAEL CAPITO, as
Chief Financial Officer of
SPECIAL DATA PROCESSING CORPORATION


SWORN TO AND SUBSCRIBED before me this _____ day of November, 2005.


_____

Notary Public, State of Florida at Large

My Commission Expires:

*Entry Instructions:* Please call the telephone number on the reverse at your earliest convenience to enter your Sweepstakes I.D. number.

# "Strike It Rich V" Sweepstakes Official Rules

**NO PURCHASE OR PAYMENT NECESSARY TO ENTER OR WIN.**
**A PURCHASE WILL NOT IMPROVE YOUR CHANCES OF WINNING.**

How To Enter: To enter, follow all entry instructions specified elsewhere in this offer. Sweepstakes begins 12:01 AM Eastern Time ("ET") on 10/15/2005. No mail-in entries accepted at Sponsor's address. One entry per person and household per day, irrespective of the method of entry.

Eligibility: Sweepstakes open to legal residents of the United States excluding its territories and possessions and the State of Florida, 18 years of age or older at the time of entry. Void in Florida and where prohibited by law. Employees and their immediate family members and/or those living in the same household of the Sponsor, all sweepstakes presenters and their respective advertising and promotional agencies, and the independent judging organization are not eligible to enter or win.

STRIKE IT RICH SWEEPSTAKES: GRAND PRIZE CONSUMER DISCLOSURES: One Grand Prize will be awarded. The winner of the guaranteed Grand Prize can choose either a $2,100,000.00 annuity payable in 30 annual installments of $70,000.00 (value of annuity as of the date these rules were printed: $1,094,444.00) or one lump sum payment of $1,094,444.00 (one million ninety-four thousand four hundred forty-four dollars). Estimated odds of winning: 1:26,000,000. You have not yet won. No purchase is necessary. Your entry must be received by the date specified elsewhere in this offer or by 11:59 PM (ET) on 12/15/2007, whichever is sooner. Sponsor: Special Data Processing DBA National Magazine Exchange, 16120 US 19 North, Clearwater, FL 33764.

STRIKE IT RICH SWEEPSTAKES: EARLY BIRD/BONUS PRIZE CONSUMER DISCLOSURES: One Early Bird/Bonus Prize will be awarded. The winner of the Early Bird/Bonus Prize will receive $5,000.00 in Cash or his/her choice of merchandise or travel prize offered by Sponsor valued at $5,000.00. To qualify for the Early Bird/Bonus Prize, your entry must be received by the entry deadline specified elsewhere in this offer or by 11:59 PM (ET) on 12/15/2007, whichever is sooner. Estimated odds of winning: 1:26,000,000. You have not yet won. No purchase is necessary. Sponsor: Special Data Processing DBA National Magazine Exchange, 16120 US 19 North, Clearwater, FL 33764.

Winner Selection: Winner(s) will be determined in a random drawing from among all eligible entries received, on or about 12/28/2007 by an independent judging organization whose decisions are final. Winner(s) will be notified by mail and will be required to complete, sign and have notarized an affidavit of eligibility, release of liability, and, where legally permissible, a publicity release which must be received within 14 days of date printed on notification or an alternate winner will be selected in a random drawing. Prize(s) delivered within approximately 30 days of receipt of executed affidavit. If prize/prize notification letter is returned as undeliverable, prize will be awarded to an alternate in a random drawing. If prize is won by a minor, it will be awarded in the name of parent or legal guardian who must execute affidavit and releases on minor's behalf. All taxes on prizes are the responsibility of the winner. Acceptance of a prize constitutes permission (except where prohibited by law) to use winner's name, hometown, likeness, prize won and comments about winning for purposes of advertising, promotion and publicity (in any and all media including online) without additional compensation. A prize is not transferable or assignable except to a surviving spouse.

General: Sponsor is not responsible for lost, late, misdirected, illegible, mutilated or postage due mail or for incorrect or inaccurate capture of entry information or for failure of telephone network, computer equipment, software, human error or any combination thereof. All entries become the Sponsor's property and will not be returned or acknowledged. Any sweepstakes notice that contains or results from any printing, production or other error will be void. If due to any printing, production or other error, more than one winning grand prize notice and/or early bird prize notice is issued, the prize will be awarded in a random drawing from among all eligible entries received in response to such notices.

This sweepstakes will be presented in conjunction with various promotions and solicitations offered by the properties, subsidiaries, divisions, licensees owned by or affiliated with National Magazine Exchange, Special Data Processing Corporation and/or by their advertisers and marketing partners. All federal, state and local laws and regulations apply. Void where prohibited by law.

For winner's list (available within 90 days after the drawing), send a self-addressed, stamped envelope by 12/15/2007 to: "Strike It Rich V" Sweepstakes Winner(s), P.O. Box 9307, Medford, NY 11763-9307.

Mailing List Preference: If you would like to have your name and address removed from any future sweepstakes mailings from our company, you may do so by calling 1-800-490-3623. To view our privacy policy visit www.nmemags.com.

PRESCREEN & OPT OUT NOTICE: Based upon your consumer report and because, at the time of this correspondence, you meet our credit criteria, YOU HAVE BEEN APPROVED TO RECEIVE A SPECIAL MULTI-YEAR MAGAZINE OFFER ON CREDIT AND DEFER PAYMENT USING OUR EZ PAY INSTALLMENT PROGRAM OF FOUR INTEREST FREE PAYMENTS. This credit may not be extended if, after you respond, we find you no longer meet our credit criteria. If you would like to have your name and address removed from any future prescreened solicitations, you may do so by calling the automated Opt-Out Request Line at 1-888-567-8688 or by writing the credit bureaus below: Trans Union Market Opt Out, PO Box 97328, Jackson, MS 39288; Consumer Opt Out Services, Experian Credit Marketing, PO Box 919, Allen, TX 754013; or Equifax Options, PO Box 740123, Atlanta, GA 30374.

Residents of South Dakota and Louisiana: If you choose to take advantage of our magazine offer, your order will be entered with the publisher(s), so we must limit the cancellation period to ten (10) days from the day of receipt by the consumer.