1  RALPH W. ROBINSON (SBN 51436)
   RONALD S. BUSHNER (SBN 98352)
2  CHRISTINE STARKIE (SBN 226354)
   ANNTIM J. VULCHEV (SBN 232166)
3  WILSON, ELSER, MOSKOWITZ,
   EDELMAN & DICKER LLP
4  650 California Street, 14th Floor
5  San Francisco, CA  94108-2718
   Telephone:     (415) 433-0990
6  Facsimile:     (415) 434-1370

7  Attorneys for Defendants,
8  GOODYEAR DUNLOP TIRES NORTH AMERICA, LTD.,
   erroneously named herein as GOODYEAR DUNLOP TIRES
9  NORTH AMERICA, LTD., LLC

10              UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF CALIFORNIA
11

12  MARK R. CIABATTARI, and all other      )   Case No. C05-04289 SC
    Persons similarly situated,            )
13                                         )   **DEFENDANT GDTNA'S OPPOSITION**
              Plaintiffs,                  )   **TO PLAINTIFF'S MOTION TO**
14                                         )   **REMAND AND REQUEST FOR**
         vs.                               )   **ATTORNEY'S FEES & COSTS**
15                                         )
    TOYOTA MOTOR SALES, U.S.A., INC., a    )
16  California Corporation; GOODYEAR DUNLOP )   Date:      January 6, 2006
    TIRES NORTH AMERICA, LTD., LLC, an     )   Time:      10 a.m.
17  Ohio limited liability Corporation; DOES 1-30, )   Dept.:     Judge Samuel Conti
                                           )             Courtroom G, 15th Floor
18            Defendants.                  )
                                           )
19                                         )
                                           )
20                                         )
                                           )
21                                         )
    _____    )

22
23
24
25
26
27
28

                                    1
                       GDTNA's Opposition to Remand

Dockets.Justia.com

# **TABLE OF CONTENTS**

INTRODUCTION…………………………………………………………………………....2

FACTUAL BACKGROUND………………………………………………………………….4

LEGAL ARGUMENT………………………………………………………………………7

    A.    The Injuries Arising From the Conduct Alleged in Ciabattari's Complaint
Are Not Limited to California, and Therefore the Local Controversy
Exception is Unsatisfied……………………………………………………..8

        1.    Ciabattari's Motion to Remand Finds No Support in the Plain
Text of the "Local Controversy Exception" to CAFA……………………8

        2.    Ciabattari's Interpretation of the "Local Controversy Exception"
Undermines the Purpose of CAFA and Leads to Untenable Results…….10

        3.    Congress Clearly Intended for Federal Courts to Exercise
Jurisdiction Over Actions Like Ciabattari's……………………………..11

    B.    Because Ciabattari's Claims for Breach of Warranty Are Directed at
GDTNA Only, the "Local Controversy Exception" Does Not Apply…..………14

    C.    The Burden of Proof in Removal Disputes Has Shifted to Plaintiffs…………15

    D.    The Request for Attorneys Fees is Inappropriate………………………...…16

CONCLUSION……………………………………………………………………………17

GDTNA's Opposition to Remand

189593.1                                                                                     CASE NO. C05-04289 SC

**CASES**

*Bates v. Sullivan*
   894 F.2d 1059, 1066 (9th Cir. 1990)…………………………………..………14

*Berry v. Am. Express Publ'g.*
   381 F.Supp. 2d 1118, 1121 (C.D. Cal. 2005)…..………………………….......12,15

*Bunnell v. Sullivan*
   947 F.2d 341, 350 (9th Cir. 1991)………………………………………………14

*Circle Industries USA, Inc. v. Parke Const. Group, Inc.*
   183 F.3d 105, 109 (2d Cir. 1999)………………………………………..16

*Dinkel v. GMC*
   2005 U.S. Dist. LEXIS 27237 (D. Me. 2005)……………………………..……12

*Garcia v. United States*
   469 U.S. 70, 76 (1984)…………………………………………………...……12

*Harvey v. Blockbuster, Inc.*
   384 F.Supp.2d 749, 752 (D.N.J. 2005)…………………………………………13,15

*Heaphy v. State Farm Mut. Auto. Ins. Co.*
   2005 U.S. Dist. LEXIS 25651 (W.D. Wash. 2005)……………………………………15

*F. Hoffman-La Roche Ltd. V. Empagran S.A.*
   542 U.S. 155 163 (2004)………………………………………………………8,11

*Ind. State Dist. Council of Laborers & Hod Carriers Pension Fund v. Renal Care Group, Inc.*
   2005 U.S. Dist. LEXIS 24210, 6-7 (M.D. Tenn 2005)……………………………………16

*Koons Buick Pontiac GMC, Inc. v. Nigh*
   543 U.S. 50, 125 S.Ct. 460, 469 (2004)………………………………...………….11

*Leslie v. Commissioner*
   146 F.3d 643, 649 (9th Cir. 1998)…………………………………………………11

*Moore v. Permanente Med. Group, Inc.*
   981 F.2d 443, 446 (9th Cir. 1992)…………………………………...………16

*Mount Graham Red Squirrel v. Madigan*
   954 F.2d 1441 (9th Cir. 1992)……………………………...…………………12

*Ninilchik Traditional Council v. United States*
   227 F.3d 1186, 1192 (9th Cir. 2000)…………..…..…………………..……………10

*Pension Benefits Guar. Corp. v. Carter & Tillery Enters.*
  133 F.3d 1183, 1186 (9th Cir. 1998)……………………………………………..10

*Roschen v. Ward*
  279 U.S. 337, 339 (1929)……………………………………………………….11

*Sink v. Aden Enters.*
  352 F.3d 1197, 1200 (9th Cir. 1998)…………………………………..……10

*In Re Textainer P'ship Sec. Litig.*
  *2005 U.S. Dist. LEXIS 26711* (C.D. Cal. 2005 )…………………..……………………15

*United States v. American Trucking Assns., Inc.*
  310 U.S. 534, 543-544 (1940)……….…………………….…………………….……..12

*William Kearns v. Ford Motor Company et al.*
  Case No. cv 05-5644 GAF, slip op. (C.D. Cal., Nov.22, 2005)………...……..……….10, 11,14


**STATUTES**

  28 U.S.C. § 1132……………………………………………………………....2

  28 U.S.C. § 1332(d)……………………………………………………………13

  28 U.S.C. § 1332(d)(4)…………………………………………………………7

  28 U.S.C. § 1332(d)(4)(A)……………………………………………………2,5

  28 U.S.C. § 1332(d)(4)(A)(i)(II)(bb)………………………………………….3,14

  28 U.S.C. § 1332(d)(4)(A)(i)(III)……………………………………..……2,8,9

  28 U.S.C. § 1332(d)(4)(A)(ii)……………………………………………….5,11

  28 U.S.C. § 1332(d)(11)(B)(ii)………………………………………………13

  28 U.S.C. § 1441……………………………………………………………2

  28 U.S.C. § 1446……………………………………………………………2

  28 U.S.C. § 1447……………………………………………………………16

  28 U.S.C. § 1453……………………………………………………………2

  California Business and Professions Code § 17200……………………………...…….4

iii

Civil Local Rule 3-13……………………………………………………………………………..7

Class Action Fairness Act of 2005 (CAFA)
109 P.L.2, 119 Stat 4……………………………………………………...…..2,3,4,5,7,8,10,11,12,15

**CONGRESSIONAL AUTHORITY**

109 S.Rpt. 14, 109th Cong. (Feb.28, 2005)……………………………………………12,13,14

GDTNA's Opposition to Remand

189593.1                                                    CASE NO. C05-04289 SC

# **INTRODUCTION**

Plaintiff Mark Ciabattari's ("Ciabattari") putative class action against Goodyear Dunlop Tires North America, Ltd. ("GDTNA") and Toyota Motor Sales, USA, Inc. ("Toyota") is a paradigm of the type of case that the Class Action Fairness Act of 2005 ("CAFA," 109 P.L. 2, 119 Stat. 4, codified, *inter alia,* at 28 U.S.C. §§ 1332, 1441, 1446 and 1453) unequivocally places within the jurisdiction of the federal courts. There are now no less than five identical putative class actions that have been filed against GDTNA and Toyota nationwide, three of them filed by Mark Anderson, Ciabattari's counsel in this action, and the other two by law firms that are co-counsel with Mr. Anderson (Mr. Anderson's attempts in his moving papers to not inform this Court of these developments are addressed below).

Plaintiff bases his motion to remand on a single argument: that he has met each of the requirements of CAFA's "local controversy exception" (codified at 28 USC § 1332(d)(4)(A)) and therefore federal jurisdiction is defeated. These requirements, applied to this action, are that: 1) the Plaintiff class is composed of greater than two-thirds California citizens; 2) Toyota, a citizen of California, is a defendant from whom significant relief is sought and "whose alleged conduct forms a significant basis" for Plaintiff's claims; 3) the "principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in" California; and 4) no class action alleging "the same or similar factual allegations" has been filed in the last three years. If Plaintiff fails any one of these requirements, the "local controversy exception" does not apply and this action should not be remanded to state court. Here is how Ciabattari fails two of these four requirements:

**First**, Ciabattari cannot satisfy the requirement that the "principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed," (28 USC § 1332(d)(4)(A)(i)(III)). Mr. Ciabattari's own attorneys and their co-counsel, in identical class action complaints brought against GDTNA and Toyota on behalf of different plaintiffs in New York, New Jersey, Connecticut, and Florida, underline that the "principal injuries" from the "alleged conduct" are incurred nationwide. Plaintiff assures the Court in his motion to remand that because the Plaintiff class is composed of Californians, "[i]t follows

that plaintiff's [sic] principal use of their Siennas occurred in California" and GDTNA's and Toyota's "inability to repair the defects alleged in the complaint" occurred in California, and the "principal injuries therefore occurred in this state." Motion to Remand, pg. 10. According to Ciabattari's logic, plaintiff lawyers could file identical lawsuits in each of the 50 states, yet the first-filed action could always remain a "local controversy." Ciabattari's whimsical syllogism that gets us to this anomaly is both unsupported by the plain text of the statute and unequivocally contradicted by its purpose and legislative history. Were the allegedly defective tires designed, manufactured, marketed, sold and used exclusively in California, Mr. Ciabattari's argument would not be so utterly meritless. But this is clearly not the situation facing the parties and the Court, and Ciabattari's own attorneys, zealously filing identical class actions nationwide, have made this obvious point nicely.

If the plain language of the statute does not make it abundantly clear that Ciabattari's argument is untenable, the legislative history of CAFA makes this lapidary. The Senate Report, in discussing what kinds of cases do not meet the local controversy exception, specifically states that if the defendants engaged in conduct that could be alleged to have injured consumers throughout the country, the case would not qualify for the "local controversy exception", even if it were brought only as a single-state class action. The one federal court decision known by GDTNA to interpret the "local controversy exception" (a slip opinion from the Central District of California denying plaintiff's motion to remand under undistinguishable facts, discussed, *infra*), found the Senate Report controlling and firmly supports GDTNA's position.

If the Court accepts the foregoing argument, then it does not need to address GDTNA's **second** argument, which is as follows: Two of Mr. Ciabattari's five claims against GDTNA and Toyota are for breach of express warranty caused by the allegedly defective GDTNA tires. But as Toyota points out in its motion to dismiss, Toyota expressly excludes tires from its warranty. Therefore, it is unclear how Toyota's "alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class." 28 USC § 1332(d)(4)(A)(i)(II)(bb). There is some ambiguity as to whether the statutory language "the claims" allows the exception to be met if Toyota's conduct forms a significant basis for one or more claims asserted, or whether Toyota's

1   conduct must be at the center of each claim asserted.  The express purpose of CAFA and its

2   legislative history shows that Congress intended by the local controversy exception that only truly

3   local actions remain in state court, and therefore where GDTNA alone faces Ciabattari's claims for

4   breach of express warranty, the action should not be remanded to state court.

5       Lastly, Plaintiff's request for attorney's fees and costs in bringing this remand motion is

6   unwarranted and unsupportable (the issues raised by GDTNA's removal are novel, and GDTNA's

7   position is, at very least, overwhelmingly supported by the legislative history of CAFA) and has the

8   ring of temerity to it.  The request for fees is made by attorneys who filed the motion to remand on

9   November 17, 2005, based on papers declaring to the Court that there have been no similar class

10  actions filed anywhere in the United States *on behalf of California residents* (a qualification of no

11  relevance for purposes of the "local controversy exception"), even though a copycat lawsuit had

12  been filed in New York on October 31, 2005 by an attorney with whom Mr. Ciabattari's counsel

13  would, on November 18, 2005, jointly file <u>three</u> identical lawsuits, which are dated November 17,

14  2005, in districts courts in New Jersey, Connecticut, and Florida.

15      To grant Ciabattari's motion to remand would be to place his lawsuit alone beyond the ken

16  of federal jurisdiction, while identical lawsuits are filed in federal district courts all over the

17  country.  This is exactly the result that CAFA forecloses.

18                          **FACTUAL BACKGROUND**

19      Ciabattari filed a putative class action against GDTNA and Toyota in Alameda County

20  Superior Court on September 12, 2005.  He alleges that the tires manufactured by GDTNA are

21  defective and wear out too fast.  According to Ciabattari's complaint ("Complaint"), his "class

22  action is brought on behalf of all current and former owners and lesses of 2004 and 2005 Toyota

23  Sienna models LE AWD and XLE AWD (all wheel drive) minivans equipped with 'run-flat'

24  Dunlop [GDTNA] SP™ Sport 4000 tires." Complaint ¶43.  The "purpose of [the] action is to obtain

25  damages for the plaintiff and the class to cover the cost of replacement of the Dunlop [GDTNA]

26  tires." Complaint ¶¶1, 3.  Ciabattari alleged cause of action for breach of implied warranty, breach

27  of express warranty, and violation of California B & P Code § 17200 *et seq*.  GDTNA was served

28  with the Complaint on September 23, 2005.

4

GDTNA timely removed Ciabattari's action to this Court on October 21, 2005, based on diversity jurisdiction as conferred by CAFA. GDTNA's Notice of Removal ("Removal") established that minimal diversity has been satisfied (as GDTNA, a limited liability company organized under the laws of Ohio with its principal place of business in New York, is a citizen of those two states, while Mr. Ciabattari appears to be, and at least some of the proposed class undoubtedly are, of California citizenship) and the $5,000,000 minimum amount in controversy requirement has also been satisfied. *See* Removal ¶¶ 6-10.

On October 31, 2005, a nearly identical class action against GDTNA and Toyota, styled as "Stanley Monk, on behalf of himself and all other persons similarly situated, v. Toyota Motor Sales U.S.A., Inc, Toyota Motor North America, Inc., and Dunlop Tire Corporation" was filed in New York state court (the "New York Action"). The New York Action, for breach of implied and express warranty and misleading business practices, was brought on behalf "of the class of all persons who reside in New York State and purchased or leased a Toyota Sienna equipped with Dunlop SP Sport 4000 run-flat tires [the same tires over which Ciabattari sues]." New York Action "Class Action Complaint," ¶ 1 prec.; attached as **Exhibit A** Declaration of Anntim J. Vulchev in support of GDTNA's Request for Judicial Notice ("Vulchev Decl.").

On November 10, Ciabattari filed his motion for remand and attorney's fees and costs. Ciabattari does not dispute that there is minimum diversity or that the amount of controversy has been met. Rather, his sole basis for remand is the "local controversy exception" to CAFA found at 28 USC 1332(d)(4)(A). Plaintiff argues that he fulfills all the requirements of that exception. One of these requirements is that "during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons." 28 USC 1332 (d)(4)(A)(ii). Ciabattari represented to the Court that "Plaintiff has not been informed through any source that any other class action is on file on behalf of California Sienna owners."

On November 14, 2005, GDTNA filed a declination to proceed before a magistrate judge, and all calendar dates, including the hearing on Ciabattari's motion to remand, were vacated by the Court. Ciabattari thereafter filed a new notice of motion to remand on November 17, 2005. The next day, on November 18, 2005, Mr. Ciabattari's attorneys and their co-counsel filed three class actions, which pleadings were dated November 17, 2005, against GDTNA and Toyota, all based on the same set of facts and bearing the same allegations.

Moving northward along the Atlantic seaboard, an action styled as "Kyle Bressler, M.D., on behalf of himself and all other similarly situated, v. Toyota Motor Sales USA, Inc., Goodyear Dunlop Tires North America, Ltd.," case no. 2:05-cv-00544-JES-DNF (the "Florida Action") was filed in the United States District Court for the Middle District of Florida. The complaint in the Florida Action is filed on behalf of that somewhat familiar class of "all current and former owners and lesses of 2004 and 2005 Toyota Sienna models LE AWD and XLE AWD (all wheel drive) minivans sold or leased to Florida residents and equipped with 'run-flat' Dunlop [GDTNA] SP Sport 4000 DSST tires." Florida Action "Class Action Complaint," ¶ 33; Vulchev Decl., **Exhibit B.**

On the same day, an action styled as "Jess Collinson, Scott M. Pollack, and Thomas Hunt, on behalf of themselves and all other similarly situated, v. Toyota Motor Sales USA, Inc., Goodyear Dunlop Tires North America, Ltd., and Bridgestone/Firestone North America Tire, LLC," case No. 2:05-cv-05471 HAA-MF (the "New Jersey Action"), was filed in the United States District Court for the District of New Jersey. The complaint in the New Jersey Action is filed on behalf of the New Jersey equivalent to the California, New York and Florida classes, but also includes owners and lesses of 2004 and 2005 Toyota Sienna models LE AWD and XLE AWD minivans Sienna equipped with B380RFT Bridgestone tires. New Jersey Action "Class Action Complaint"; Vulchev Decl., **Exhibit C.**

Lastly, following the above pattern, a complaint styled as "Thomas F. Pear, on behalf of himself and all other similarly situated, v. Toyota Motor Sales USA, Inc., Goodyear Dunlop Tires North America, Ltd.," case no. 3:05-cv-01778-JBA (the "Connecticut Action") was filed in the

1  United States District Court for the District of Connecticut.   Connecticut Action "Class Action

2  Complaint"; Vulchev Decl., **Exhibit D.**

3         Ciabattari's attorney, Mark Anderson, is co-counsel of record in the Florida and New Jersey

4  Actions.  His co-counsel in those actions are counsel of record in the Connecticut and the

5  previously filed New York Actions.  GDTNA is not aware of Ciabattari filing a "Notice of

6  Pendency of Other Action or Proceeding" in accordance with Civil L.R. 3-13.   The tires and

7  vehicles identified in Ciabattari's complaint and the other four class action complaints are the same.

8  *See* Vulchev Decl., ¶¶ **Exhibits A-D.**

9                                          **LEGAL ARGUMENT**

10        The operative statutory language upon which Ciabattari's motion to remand rises or falls is

11  28 USC 1332 (d)(4), the "local controversy exception" to CAFA :

12        (4) A district court shall decline to exercise jurisdiction under paragraph (2)--
             (A) (i) over a class action in which--
13        (I) greater than two-thirds of the members of all proposed plaintiff classes in the
                  aggregate are citizens of the State in which the action was originally filed;
14        (II) at least 1 defendant is a defendant--
                  (aa) from whom significant relief is sought by members of the plaintiff class;
15                (bb) whose alleged conduct forms a significant basis for the claims asserted by the
                       proposed plaintiff class; and
16                (cc) who is a citizen of the State in which the action was originally filed; and
          (III) principal injuries resulting from the alleged conduct or any related conduct of each
17                defendant were incurred in the State in which the action was originally filed; and
          (ii) during the 3-year period preceding the filing of that class action, no other class action
18             has been filed asserting the same or similar factual allegations against any of the
               defendants on behalf of the same or other persons;

19

20  The conditions are conjunctive, and each must be satisfied for federal jurisdiction to be defeated.

21        Plaintiff argues, without a single citation to authority of any kind, that his action meets the

22  "local controversy exception."  His motion to remand is largely directed at a red herring: burden of

23  proof in cases removed based on CAFA.  Because this action has now clearly become removable,

24  GDTNA addresses this contention last, and rather first addresses the gorilla in the bathtub: namely,

25  that the alleged conduct of GDTNA and Toyota is national and interstate, affecting citizens

26  nationwide, some of whom have now filed lawsuits identical to Ciabattari's.

27

28

**A.** **The Injuries Arising From the Conduct Alleged in Ciabattari's Complaint Are Not Limited to California, and Therefore the Local Controversy Exception is Unsatisfied.**

If the "principal injuries resulting from the alleged conduct or any related conduct of each defendant were" NOT "incurred in the State in which the action was originally filed," 28 USC § (d)(4)(A)(i)(III), the local controversy exception is unsatisfied and Ciabattari's motion to remand must fail. This requirement puts Ciabattari's attorneys in the rather awkward position of arguing to this Court that the injuries consumers allegedly suffer because of defects in GDTNA's tires are not taking place outside of California. For several reasons, whether this Court consults legislative history or not, regardless of who bears "the burden of proof to establish federal jurisdiction," Ciabattari Motion to Remand, pg. 7; lns. 4-5, it is, strictly speaking, impossible for Ciabattari to establish this element. *Cf. F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 163 (2004)("For those who find legislative history useful, the House Report's account should end the matter. Others, by considering carefully the amendment itself and the lack of any other plausible purpose, may reach the same conclusion.")

GDTNA knows of only one federal court decision interpreting the "local controversy exception": *William Kearns v. Ford Motor Company et al.*, Case No. CV 05-5644 GAF, slip op. (C.D. Cal., Nov. 22, 2005)(*Kearns*), attached as **Exhibit E** to the Declaration of Anntim J. Vulchev. Judge Feess discusses the "local controversy exception" at the end of his opinion, and finds that where Ford Motor Company had sold certain vehicles nationwide, the exception did not defeat federal jurisdiction over a California-only class of auto-owners. Judge Feess based his analysis on the ambiguity of the term "principal injuries" and thus resorted to the Senate Report in order to deny plaintiff's motion to remand. The facts in *Kearns* are, for purposes of Ciabattari's motion to remand, indistinguishable from those before the Court.

1. Ciabattari's Motion to Remand Finds No Support in the Plain Text of the "Local Controversy Exception" to CAFA

The GDTNA tires and Toyota minivans at the center of this litigation are manufactured goods marketed and sold nationally. There are now plaintiffs representing putative classes in four other states (including the third and fourth most populous states in the Union) who allege the same or similar factual allegations and grievances against GDTNA and Toyota as Ciabattari does. As far as GDTNA can determine from the six sentences Ciabattari devotes in his motion to remand to establish that the "principal injuries resulting from the alleged conduct or any related conduct" are "incurred" in California, Ciabattari is asking this Court to determine that the statute only requires that "the principal injuries <u>to the plaintiff class</u>…"were incurred <u>at least in part</u> in California. But that of course is not how the statute is written. "Had Congress intended the narrow construction [defendant] urges, it could have expressly so provided. It did not, and it would be improper for [courts] to introduce an additional requirement on [their] own." *United States v. Hunter*, 101 F. 3d 82, 85 (9th Cir. 1996) (rejecting the argument that a statute enhancing penalties for a perpetrator of violent crime who "uses or carries a firearm" applies only if the firearm was operable, as defendants urged).

The clause "principal injuries" is not cabined by reference to any specific injured party. The conduct alleged by Ciabattari is the nationwide marketing and sale of vehicles and tires. As Ciabattari's attorneys will assuredly tell the Court (or, at any rate, other federal courts), citizens outside of California are being injured by this conduct. Were Ciabattari to argue that the "alleged conduct" in his complaint is actually limited entirely to California, his argument would fail for two reasons. **First**, his statutory interpretation would allow plaintiffs to defeat federal jurisdiction by qualifying their factual allegations *ad absurdum*. Ciabattari alleges that he bought his vehicle in California and that defendants' "inability to repair the defects alleged in the complaint occurred in this state." Motion to Remand, pg. 10. For his own purposes, Ciabattari may indeed view much of GDTNA's and Toyota's conduct as occurring locally in reference to him; that is undoubtedly true for most every consumer plaintiff, regardless of how truly national or interstate defendants' conduct is. But this solipsism renders CAFA meaningless. The exception would trump the rule of CAFA because truly national conduct, such as that by GDTNA and Toyota, could always be broken down to arrive upon a multitude of "local controversies." **Second**, plaintiff's argument would go no

further than the next three words in the statute. The "principal injuries" are tethered to "alleged conduct *or related conduct*" 28 USC § (d)(4)(A)(i)(III) (emphasis added). With the additional clause, plaintiffs are definitively prevented from stymieing federal jurisdiction by stilted pleading that ties all "alleged conduct" to one state, even though the conduct occurs in many states. Courts are empowered to inquire into the full geographic extent of the factual allegations in the complaint, and where identical lawsuits are filed in several states, that inquiry ends with a conclusive answer.

Lastly, it is also irrelevant whether Ciabattari's claims are couched only in terms of violations of California law, an argument apparently made by plaintiff in *Kearns*. *Kearns*, at *21 ("Plaintiff asserts that the fact that the CPO program is a national one is not important, because the proposed class is composed only of Californians because they "have only suffered harm here because of conduct made actionable only under California consumer statutes."). Judge Feess found that "[t]his assertion has no merit" as "[a] comparison of the California codes under which Plaintiff seeks relief with consumer protection statutes in other states quickly turns up several large states with apparently equivalent protections." *Id.* The other class actions against GDTNA and TOYOTA are similarly based on statutes that are the same as or equivalent to the California provisions upon which Ciabattari bases his complaint (e.g., breach of warranty and deceptive or misleading business practices).

2.      Ciabattari's Interpretation of the "Local Controversy Exception" Undermines the Purpose of CAFA and Leads to Untenable Results

"The language of a statute must be interpreted in its context to effectuate legislative intent." *Sink v. Aden Enters.*, 352 F.3d 1197, 1200 (9th Cir. 1998) In addition to interpreting statutes according to context, *Pension Benefits Guar. Corp. v. Carter & Tillery Enters.*, 133 F.3d 1183, 1186 (9th Cir. 1998), "as a matter of related principle," courts should not interpret a statute "in a matter inconsistent with the policies of other provisions of [the same Act]." *Ninilchik Traditional Council v. United States*, 227 F.3d 1186, 1192 (9th Cir. 2000) (interpreting a provision of the Alaska National Interests Lands Conservation Act, 16 U.S.C. § 3101, *et seq.*, in reference to Congress's statement of the Act's purposes). Ciabattari's interpretation of the "local controversy exception" would allow plaintiffs to defeat federal jurisdiction by the artifice of pleading single-

state injuries arising from national conduct.    According to this logic, plaintiff lawyers could file identical class actions, based on issues on national importance, on behalf of in-state classes in each of the 50 states, and the first-filed lawsuit against a non-diverse co-defendant would always remain a "local controversy" that could never be removed to federal court (the other actions would assumely be removable because the first filed action was filed "during the 3-year period preceding the filing of [the other actions]." 28 USC (d)(4)(A)(ii)).

This conjectural first-filed exception to CAFA manifestly defeats the purpose of CAFA, which is to "restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction." 109 PL 2, § 2 (b)(2).  See also *Id.*, Sec. (2)(a)(4) ("Abuses in class actions undermine the national judicial system, the free flow of interstate commerce, and the concept of diversity jurisdiction as intended by the framers of the United States Constitution, in that State and local courts are (A) keeping cases of national importance out of Federal court; (B) sometimes acting in ways that demonstrate bias against out-of-State defendants").[1]   It also allows the exception to "swallow [the statute's]rule… rendering [the statute] a virtual nullity." *Leslie v. Commissioner*, 146 F.3d 643, 649 (9th Cir. 1998) (declining, in a different statutory context, **"**to adopt such an awkward and acontextual reading of [the exception]").  Lastly, it abrogates common sense, and "there is no canon against using common sense in construing laws as saying what they obviously mean" *Roschen v. Ward*, 279 U.S. 337, 339 (1929) (Holmes, J.), cited in *Koons Buick Pontiac GMC, Inc. v. Nigh* 543 US 50, 125 S. Ct. 460, 469 (2004) (rejecting party's statutory interpretation as leading to "passing strange" results).

    3.   <u>Congress Clearly Intended for Federal Courts to Exercise Jurisdiction Over Actions Like Ciabattari's.</u>

If any uncertainty regarding interpretation of the "local controversy exception" remains by this point, "the [Senate Report] should end the matter." *F. Hoffmann-La Roche Ltd.*, 542 U.S. at 163.  As Judge Feess reiterates in *Kearns*, "When conducting [an examination of legislative

GDTNA's Opposition to Remand

189593.1                                         CASE NO. C05-04289 SC

1  history], Committee Reports are the authoritative source for finding the Legislature's intent."

2  *Kearns*, at *10-11, citing *Berry v. Am. Express Publ'g*, 381 F. Supp. 2d 1118, 1121 (C.D. Cal. 2005)

3  and *Garcia v. United States*, 469 U.S. 70, 76 (1984) (internal quotations omitted); *Mount Graham*

4  *Red Squirrel v. Madigan*, 954 F.2d 1441, 1453 (9th Cir. 1992)( "In other instances, however, the

5  language of the statute is uncertain or ambiguous, and legislative statements, particularly committee

6  reports, can be extremely helpful in understanding what Congress intended - in determining what

7  the statute means.").   For all practical purposes, consultation of legislative history, especially when

8  confronting a novel issue of statutory interpretation, is a parallel exercise to textual interpretation.

9  *See e.g. Dinkel v. GMC*, 2005 U.S. Dist. LEXIS 27237, *13-15 (D. Me. 2005) ("My conclusion

10  flows from CAFA's plain language and removal principles generally. But CAFA's legislative

11  history also strongly supports it."); *United States v. American Trucking Assns., Inc*., 310 U.S. 534,

12  543-544 (1940) ("When aid to construction of the meaning of words, as used in the statute, is

13  available, there certainly can be no 'rule of law' which forbids its use, however clear the words may

14  appear on 'superficial examination'" (footnote omitted)).

15      Two statements from the Senate Report suffice to conclusively establish the propriety of this

16  Court retaining jurisdiction over Ciabattari's action.

17      First, the Senate Committee's discussion of the Local Controversy Exception specifically

18  denotes that cases such as Ciabattari's should not be remanded:

19

20      The third criterion [of the local controversy exception] is that the principal
     injuries resulting from the actions of all the defendants must have occurred in the
21      state where the suit was filed. By this criterion, the Committee means that all or
     almost all of the damage caused by defendants' alleged conduct occurred in the
22      state where the suit was brought. The purpose of this criterion is to ensure that this
     exception is used only where the impact of the misconduct alleged by the
23      purported class is localized. For example, a class action in which local residents
     seek compensation for property damage resulting from a chemical leak at a
24      manufacturing plant in that community would fit this criterion, provided that the
     property damage was limited to residents in the vicinity of the plant. **However, if**
25      **the defendants engaged in conduct that could be alleged to have injured**
     **consumers throughout the country or broadly throughout several states, the**
26      **case would not qualify for this exception, even if it were brought only as a**

27  _____

28  1 GDTNA notes that these provisions, though not codified, are part and parcel of the statute passed by Congress and
   approved by the President, and are thus dispositive statements of Congressional intent.  1 USC § 204 (a) (The Statutes at
   Large provide "legal evidence of laws," whether codified or not.).

**single-state class action.**

109 S. Rpt. 14, 33. (emphasis added)

Second, the Committee provides a remarkably prescient example to illustrate Congressional intent regarding the working of the "local controversy exception":

> A class action is brought in Florida against an out-of-state automobile manufacturer and a few in-state dealers, alleging that a certain vehicle model is unsafe because of an allegedly defective transmission. The vehicle model was sold in all fifty states but the class action is only brought on behalf of Floridians. This case would not fall within the "Local Controversy Exception" for two reasons. First, the automobile dealers are not defendants whose alleged conduct forms a significant basis of the claims or from whom significant relief is sought by the class. Even if the plaintiffs are truly seeking relief from the dealers, that relief is just small change compared to what they are seeking from the manufacturer. Moreover, the main allegation is that the vehicles were defective. In product liability cases, the conduct of a retailer such as an automobile dealer does not form a significant basis for the claims of the class members. Second, the case falls outside the "Local Controversy Exception because the 'principal injuries resulting from the alleged conduct,'--i.e., selling a vehicle with a defective transmission--were incurred in all fifty states. The fact that the suit was brought as a single-state class action does not mean that the principal injuries were local. **In other words, this provision looks at where the principal injuries were suffered by everyone who was affected by the alleged conduct--not just where the proposed class members were injured.** Thus, any defendant could remove this case to federal court.

109 S. Rpt. 14, 34 (emphasis added)

Based upon the Senate Committee's report, since Toyota and GDTNA engaged in conduct that has been alleged to affect customers nationwide, this case does fall under the "local controversy exception." *See also* 109 S. Rep 14, pg. 37 ("By contrast, [the "mass-action exception" at 28 USC 1332 (d)(11)(B)(ii)] would not apply to a product liability or insurance case. The sale of a product to different people does not qualify as an event. And the alleged injuries in such a case would be spread out over more than one state or contiguous states—even if all the plaintiffs in the particular case come from one state.").

While legislative history indeed is not a substitute for statutory language, each of the cases cited by Ciabattari for his proposition that the Senate Report is inapposite are distinguishable: the issue in those cases was one where case law was set against legislative history. As evidenced by the lack of a single case citation in that portion of Ciabattari's brief addressing the "local controversy exception" to CAFA, this Court must now adjudicate the novel substantive provisions of the act.

See e.g. *Harvey v. Blockbuster, Inc.,* 384 F. Supp. 2d 749, 752 (D.N.J. 2005)( "The Court -- in view of the lack of case law addressing Section 1332(d) -- will refer to the underlying Senate Report and Congressional Record for guidance.")  The one district court that has spoken on the issue found authoritative guidance in the Senate Report.  *Kearns*, at *21-22.   As the above-cited passages from the Senate Report show, the Senate Committee has with pinpoint precision designated Mr. Ciabattari's class action as precisely the type of action which is not affected by the "local controversy exception."

**B.  Because Ciabattari's Claims for Breach of Express Warranty Are Directed at GDTNA Only, the "Local Controversy Exception" Does Not Apply.**

Ciabattari fails a second, independent, prong of the "local controversy exception": namely, that Toyota's "alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class." 28 USC § 1332(d)(4)(A)(i)(II)(bb).  Affording words their plain meaning, the word "the" is a definite article, denoting all claims asserted by the proposed plaintiff class. *See Bunnell v. Sullivan*, 947 F.2d 341, 350 (9th Cir. 1991) (Kozinski, J., concurring) (quoting *Bates v. Sullivan*, 894 F.2d 1059, 1066 (9th Cir. 1990) ("Significantly, the language of the statute uses a definite article, referring to 'the pain' alleged. It does not refer to 'some of the pain' alleged by the claimant, nor does it refer to medical impairments expected to produce 'a certain amount of pain,' nor to 'excess pain.'")).  Were it Congress's intent that "claims" should be interpreted as only *certain* or *some* claims, the statutory language should more properly have been expressed as "some, "most," "a",  "any," etc.  This is significant, because as Toyota points out to the Court in its FRCP 12(b)(6) motion to dismiss, there is no Toyota express warranty covering GDTNA tires, and thus Ciabattari's claims for breach of express warranty are precluded (CAFA clearly authorizes judicial inquiry into underlying facts for purposes of determining jurisdiction, and courts have long been empowered to consider plaintiffs' claims against individual parties, *e.g.,* "determinations of fraudulent joinder.").

If this Court finds that Ciabattari cannot allege that Toyota's conduct forms any basis for his breach of express warranty claims,  Toyota's conduct would not form a basis for "the claims asserted by the proposed plaintiff class," but would at best only form a basis for some of "the

1  claims asserted."  Under such circumstances, Ciabattari's claims against GDTNA for breach of

2  express warranty are indisputably within CAFA's purview.

3    This provision of the "local controversy exception" should be interpreted in light of CAFA's

4  purpose, and any ambiguity  should be resolved by reference to the Senate Report.  See *Berry v.*

5  *Am. Express Publ'g*, 381 F. Supp. 2d 1118, 1121 (C.D. Cal. 2005).  According to these sources,

6  federal jurisdiction is to be construed broadly:

7    Overall, new section 1332 (d) is intended to expand substantially federal court
  jurisdiction over class actions.  Its provisions should be read broadly, with a

8    strong preference that interstate class actions should be heard in a federal court if
  properly removed by any defendant.

9

10    109 S. Rpt. 14, 34.

11  And  only "truly local" disputes are to remain in state court:

12    [The "local controversy exception"] was carefully drafted to ensure that it does
  not become a jurisdictional loophole.  Thus the Committee wishes to stress that in

13    assessing whether each of the criteria is satisfied by a particular case, a federal
  court should bear in mind that the purpose of each of these criteria is to identify a

14    **truly local controversy—a controversy that uniquely affects a particular**
  **locality to the exclusion of all others.**

15

16    *Id.* at 32 (emphasis added)

17  Given the strong statements of intent in CAFA's language and the Senate Report, it should not be

18  possible for plaintiffs to wage a significant class action against an out-of-state defendant and

19  prohibit removal by "contaminating" the action with a claim (valid or not) against an in-state

20  defendant, thereby nullifying CAFA's protections for parties such as GDTNA.

21    **C.  The Burden of Proof In Removal Disputes Has Shifted to Plaintiffs**

22    GDTNA respectfully refers the Court to the district court decisions within and without the

23  Ninth Circuit which have found that, in light of the authoritative Senate Report, CAFA has shifted

24  the burden to Ciabattari to establish that removal was improper.  *See Berry v. Am. Express Publ'g*,

25  381 F. Supp. 2d 1118, 1121 (C.D. Cal. 2005); *Harvey v. Blockbuster, Inc.*, 384 F. Supp. 2d 749, 752

26  (D.N.J. 2005)**;** *In re Textainer P'ship Sec. Litig.*, 2005 U.S. Dist. LEXIS 26711, at * 11, 15 (C.D. Cal.

27  2005).   GDTNA also submits to the Court that this inquiry may be of limited relevance where the

28  alleged conduct is clearly national.  *See e.g. Heaphy v. State Farm Mut. Auto. Ins. Co.*, 2005 U.S.

Dist. LEXIS 25651 (W.D. Wash. 2005) ("It is clear that Congress intended CAFA as an expansion of this court's jurisdiction, and a vehicle for directing class action lawsuits to federal court. Furthermore, whichever side has the burden of proof, the factual context of the removal issue is not actually in dispute.")

### D. The Request for Attorneys Fees is Inappropriate

Finally, Ciabattari cites *Circle Industries USA, Inc. v. Parke Const. Group, Inc.*, 183 F.3d 105, 109 (2d Cir. 1999) in support of his quest for attorney's fees. But in that case removal was proper, and the issue the court decided (relying on the legislative history of 28 USC § 1447") was *not* whether to grant plaintiffs their fees and costs, but whether the district court was correct in awarding fees and costs to *defendants* for their work in opposing plaintiff's motion to remand. Ciabattari's other cited authority, *Moore v. Permanente Med. Group, Inc.*, 981 F.2d 443, 446 (9th Cir. 1992), does address plaintiffs' request for attorney's fees, but is inapposite because the removing defendant had "experimented" with state court jurisdiction, removing after the state court denied a motion to dismiss.

Ciabattari's request follows the form of the rest of his motion and is supported neither by case authority nor common sense, especially because the issues raised by GDTNA's removal are novel. *Harvey v. Blockbuster, Inc.*, 384 F. Supp. 2d 749, 757 (D.N.J. 2005); *Ind. State Dist. Council of Laborers & Hod Carriers Pension Fund v. Renal Care Group, Inc.*, 2005 U.S. Dist. LEXIS 24210, 6-7 (M.D. Tenn. 2005)("Given that there is no case law interpreting the relevant exception to the Class Action Fairness Act, the court cannot find that [an award of attorneys fees] would be 'fair and equitable under all the circumstances.'")

GDTNA's Opposition to Remand

189593.1                                                           CASE NO. C05-04289 SC

**CONCLUSION**

For all of the foregoing reasons, this Court should deny Plaintiff's motion to remand and motion for attorney's fees and costs.

Dated: December 16, 2005

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By:   /s/  Ralph W. Robinson
          Ralph W. Robinson
          Anntim J. Vulchev
          Attorneys for Defendant,
          GOODYEAR DUNLOP TIRES NORTH AMERICA, LTD.